2025 Hudson #8

# Lease Agreement

THIS LEASE AGREEMENT (hereinafter this "LEASE"), made effective the 23rd day of May, 2025, by and between NEWBERRY CHRISTIAN COMMUNITY SCHOOL, INC., a Florida not-for-profit corporation (hereinafter referred to as "LANDLORD") and Frazer School a Florida Inc. (hereinafter referred to as "TENANT").

**WITNESSETH:**

In consideration of the mutual covenants and agreements hereinafter contained, made by each party in consideration of the covenants and agreements of the other, the parties agree as follows:

1. **LEASED PREMISES.** LANDLORD agrees to lease to TENANT, and TENANT agrees to rent from LANDLORD, those certain classrooms, and only those certain classrooms, as indicated on the attached **Exhibit "A"**, the terms of which are incorporated herein by reference (hereinafter referred to as the "PREMISES"), located at the real property owned by LANDLORD at 4700 NW 89th Blvd, Gainesville, Alachua County, Florida 32606 (hereinafter referred to as the "PROPERTY"), subject to the terms and conditions of this LEASE, including rules and regulations for the use thereof promulgated by LANDLORD as hereinafter provided.

2. **USE.** The PREMISES shall be used by TENANT for educational services, and no other use shall be made of the PREMISES without LANDLORD'S prior written consent. TENANT shall not use or permit the PREMISES or any portion of the PREMISES to be improved, developed, used, or occupied in any manner or for any purpose that is in any way in violation of any valid law, ordinance or regulation of any federal, state, county or local governmental agency, body or entity. Further, TENANT shall not maintain, commit or permit the maintenance or commission of any nuisance as now or hereafter defined by any statutory or decisional law or suffer any waste to the PREMISES.

3. **TERM OF LEASE.** The term of this LEASE (hereinafter referred to as the "TERM"), shall commence on May 23, 2025 and will be for a period of twenty (20) years, subject to the provisions of this LEASE.

4. **RENT.** TENANT agrees to pay LANDLORD rent for the PREMISES in the sum of One Hundred & Fifty Thousand and 00/100 Dollars ($150,000.00) per month. Rent shall be due and payable as of the first (1st) day of each month of the TERM. For any rent payment not paid within (10) calendar days after same is due, LANDLORD shall charge, and TENANT shall pay, a ten percent (10%) late fee as additional rent. TENANT further will include with each rent installment the then-current Florida state sales tax due on the installment.

5. **INSURANCE.** Throughout the TERM hereof, and any extension or renewal thereof, the LANDLORD shall, at LANDLORD'S expense, maintain fire insurance with extended coverage endorsements (including but not limited to sinkhole coverage) on the PREMISES and all other structures on the PROPERTY equal to at least ninety percent (90%) of

the insurable value of said PREMISES and other structures on the PROPERTY, and shall deliver to TENANT a certificate or certificates of such coverage. If this LEASE shall continue after any damage to or destruction of the PREMISES, LANDLORD shall hold the proceeds of any such insurance as a trust fund, to be applied first to the cost of repair or restoration to each such policy of insurance whereby the insurer waives any right of subrogation against TENANT on any claim that LANDLORD or any other party having an interest in such insurance policy, or the proceeds thereof, may have against TENANT. In addition, LANDLORD and TENANT agree that all rights of legal or equitable subrogation are waived to the extent that any loss, injury, or damage, is covered by insurance described herein.

The LANDLORD further agrees to maintain, and at its expense and except as provided herein, a public liability insurance policy covering the PROPERTY, including the PREMISES, in combined single limits of not less than $1,000,000.00 for personal injury and $100,000.00 for property damage, and shall cause TENANT to be included as a named insured thereunder and shall provide TENANT a certificate or certificates evidencing such insurance coverage.

The TENANT agrees to maintain, at its expense, a public liability insurance policy covering its use of the PREMISES and all events and activities connected with TENANT'S operations on the PROPERTY. The insurance to be maintained by TENANT shall be combined single limits of not less than $1,000,000.00 for personal injury and $100,000.00 for property damage, and shall cause the LANDLORD to be included as a named insured thereunder and shall provide LANDLORD a certificate or certificates evidencing such insurance coverage.

TENANT agrees further that it will maintain, at its expense, public liability insurance for buses or other vehicles owned by TENANT.

6. **COMMON AREA RULES AND REGULATIONS.** All common areas, parking areas, service roads, sidewalks and other areas and improvements shall at all times be subject to the exclusive ownership, management and control of LANDLORD. The use thereof shall be subject always to the Common Area Rules and Regulations from time to time promulgated by LANDLORD.

7. **LANDLORD'S OBLIGATIONS FOR COMMON AREAS.** LANDLORD agrees to cause all parking areas, roads, sidewalks, landscaping, facilities, playgrounds, athletic fields, and common area lighting on the PROPERTY to be properly maintained, operated, managed and maintained during the TERM of this LEASE. LANDLORD shall, at all times, keep the parking, landscape, roadways, sidewalks, and service areas reasonably free and clean of debris, and shall adequately illuminate the same during each day from sunset until sunrise.

8. **MAINTENANCE.**

A. The LANDLORD shall maintain and make all structural repairs to the interior and exterior of the PREMISES, to the extent such repairs are not necessitated by the negligent or willful act of TENANT, its agents or employees, or its or their failure to carry out the terms of this LEASE. The LANDLORD shall maintain the PREMISES in compliance with

all applicable fire, health, and occupancy codes as well as the maintenance of all safety equipment, including but not limited to, fire extinguishers, emergency lights, and Exit signs.

**B.** The TENANT shall maintain and make all necessary repairs to the PREMISES which are not the responsibility of LANDLORD or which are not necessitated by defective workmanship by the LANDLORD'S architect, contractor, sub-contractors or material men, the neglect or willful act of LANDLORD, its agents or employees or its failure to carry out the terms of this LEASE. On the termination of the TENANT'S occupancy, the PREMISES shall be surrendered to LANDLORD in the condition in which the TENANT is required to maintain the same, reasonable wear and tear excepted.

**9. UTILITIES; PROPERTY TAXES.** LANDLORD shall pay all charges of Gainesville Regional utilities for heat, air-conditioning, electricity, and water for the PROPERTY. In no event shall LANDLORD be liable for any interruption or failure in the supply of any utilities to the PREMISES, unless such interruption or failure is occasioned by the willful act or negligence of LANDLORD. TENANT agrees to pay all telephone and internet access charges for its operations on the PREMISES. LANDLORD shall be responsible for paying all ad valorem real property taxes and non-ad valorem assessments for the PREMISES. TENANT shall be responsible for paying any and all taxes levied or assessed on TENANT'S fixtures, equipment, and personal property in and on the PREMISES.

**10. DEPOSIT.** LANDLORD acknowledges receipt of One Hundred & Fifty Thousand and 00/100 Dollars ($150,000.00), which LANDLORD retains as a security deposit for TENANT'S faithful performance of this LEASE. LANDLORD is not obliged to apply the security deposit on rents or other charges in arrears or on damages for TENANT'S failure to perform this LEASE. However, LANDLORD may so apply the security deposit at LANDLORD'S option, and LANDLORD'S right to possession of the premises for nonpayment of rent or for any other reason shall not in any event be affected by reason of the fact that LANDLORD holds this security deposit. The security deposit, if not applied toward payment of arrearages or damages, will be returned to the TENANT when this LEASE is terminated, after TENANT has vacated the premises and delivered possession to LANDLORD. LANDLORD shall not account to TENANT for any interest on the security deposit. If LANDLORD repossesses the PREMISES because of TENANT'S default or breach, LANDLORD may apply the security deposit on all damages suffered to the date of the repossession and may retain the remainder to apply on any damages that may be suffered after by reason of the default or breach. LANDLORD shall not be obliged to keep the security deposit as a separate fund.

**11. TENANT IMPROVEMENTS.** TENANT may from time to time, at its sole expense, paint and decorate the interior of the PREMISES, subject to LANDLORD'S prior written approval, and may make such alterations, additions, fixtures and improvements as will better adapt the same for the purposes of the operation of a school education program, subject to LANDLORD'S prior written approval. TENANT shall not make any structural addition or alteration without LANDLORD'S prior written approval, and LANDLORD shall not unreasonable withhold such approval after receiving information reasonably necessary for identifying the proposed alterations and additions. All alterations, additions, fixtures and

improvements which may be made to the PREMISES by TENANT, except movable office furniture, shall become the property of LANDLORD and remain on the PREMISES as a part of them, and will be surrendered with the PREMISES at the termination of this LEASE. All alterations, changes, or improvements shall be prepared or performed by licensed, bonded, and fully insured professionals, in full compliance with any plans and specifications previously approved by LANDLORD, in full compliance with all applicable governmental rules or regulations, and in a professional workmanlike manner. When completed, all work must be free and clear of all claims for lien for unpaid labor, services, or materials.

12. **SIGNS.** TENANT must obtain LANDLORD'S written approval prior to erecting any sign on the exterior of the PREMISES or at any location on the PROPERTY and must provide LANDLORD with such information respecting any proposed signage as to enable the LANDLORD, in its discretion, to determine if it meets the design criteria. TENANT'S signage shall comply with all applicable regulations of the City of Gainesville.

13. **TENANT'S DEFAULT.** TENANT shall be in default hereunder if:

**A.** TENANT fails to pay when due rent or any other payment under this LEASE and if such default shall continue for more than seven (7) days after written notice of default from LANDLORD to TENANT, or

**B.** TENANT fails to observe or perform any of the other terms, covenants, or conditions of this LEASE, and if such default shall continue for more than thirty (30) days after written notice of such default from LANDLORD to TENANT; provided, however, that TENANT shall not be in default if such default cannot reasonably be cured in thirty (30) days and TENANT has made a good faith effort to cure the default within such thirty (30) day period, and cures such default within a reasonable time thereafter.

14. **LANDLORD'S REMEDIES UPON DEFAULT.** In the event of default by TENANT, LANDLORD may act under any of the following alternatives:

**A.** Terminate this LEASE, immediately resume possession of the property for its own account, and recover immediately from TENANT prospective damages calculated under the following formula:

(1) Rent for the remainder of the term as fixed by the lease, reduced to present value,

(2) LESS fair rental value of the PREMISES for the remainder of the TERM (reduced to present value and reduced by the period of time PREMISES will likely remain vacant despite efforts of LANDLORD to re-lease) as determined by an independent licensed property appraiser.

**B.** Resume possession and release or rent the property for the remainder of the TERM for the account of the TENANT and recover from the TENANT at the end of the term for any time each payment of rent becomes due under this lease as the LANDLORD may

choose, the difference between the rent specified in this LEASE and the rent received on the re-leasing, or

C. Seek any and all remedies and relief available at law or equity.

**15. LANDLORD DEFAULT.** LANDLORD shall be in default hereunder if LANDLORD fails to observe or perform any of the terms, covenants, or conditions of this LEASE and such default continues for more than thirty (30) days after written notice of such default from TENANT to LANDLORD, unless such default cannot reasonably be cured in thirty (30) days, in which case LANDLORD shall not be in default if it has made a good-faith effort to cure the default within the thirty (30) day period and cures such default within a reasonable time thereafter.

**16. TENANT'S REMEDIES UPON DEFAULT.** In the event of default by LANDLORD, TENANT may forthwith terminate this LEASE, and thereupon shall have no other or further obligation hereunder, and in such case may recover from LANDLORD any loss, cost or expense incurred or experienced by TENANT as a consequence of such default and of such termination, or may seek any and all remedies and relief available at law or equity.

**17. DAMAGES TO PREMISES.** If, during the term of this LEASE, the PREMISES shall be damaged or destroyed by fire or other casualty, LANDLORD shall repair and restore the same at LANDLORD'S expense and as promptly as possible, except that if such damage or destruction: (a) shall be so extensive that the cost of repair or restoration would be in excess of 90 percent (90%) of the value of the PREMISES (exclusive of land) when restored or (b) shall occur at a time when the unexpired term of the LEASE shall be less than one (1) year, this LEASE shall forthwith terminate and rental due or paid hereunder shall be pro-rated to the time of such damage or destruction unless, within thirty (30) days after such damage or destruction, TENANT shall notify LANDLORD that it desires to have the PREMISES rebuilt and restored, which notice shall automatically operate to extend this LEASE for such additional period of time as may be necessary to provide a term of full occupancy by TENANT which is not greater in time than that provided herein. Rental shall be abated during the time reasonably required for such repair and restoration. If TENANT shall so notify LANDLORD, then LANDLORD shall repair and restore the PREMISES at LANDLORD'S expense and as promptly as reasonably possible.

**18. QUIET ENJOYMENT.** So long as the TENANT pays the rent and performs and observes all covenants and conditions hereof upon its part to be performed, TENANT shall have peaceable and quiet enjoyment and possession of the PREMISES, without any hindrance from the LANDLORD or any person or entities lawfully claiming through the LANDLORD.

**19. SURVIVAL OF TERM.** The covenants, conditions and stipulations contained in this LEASE shall bind and inure to the benefit of the LANDLORD and the TENANT and their respective successors-in-interest, sub-lessees, assigns, heirs, executors and legal representatives, except as provided in this LEASE.

20. **SUBORDINATION TO MORTGAGES.** This LEASE, at the option of the LANDLORD, may be, and at all times after notice thereof shall be, subject and subordinate to the lien of any present or future mortgage or mortgages upon the PREMSIES or upon any property of which the PREMISES are a part, irrespective of the time of execution or the time of recording of any such mortgage or mortgages; provided, however, that with respect to any present or future mortgage or mortgages, the holder of any such mortgage or mortgages shall enter into a written agreement with TENANT to provide (a) that, in the event of foreclosure or other action taken under the mortgage by the holder of the mortgage, this LEASE and the rights of TENANT under it shall not be disturbed, but shall continue in full force and effect so long as TENANT shall not be in default, and (b) that the lien of such mortgage shall not cover any of TENANT'S fixtures, alterations or improvements which, by law or the terms of this LEASE, TENANT is permitted to remove from the PREMISES at the conclusion or termination otherwise of the TERM hereof. The word "mortgage" as used in the LEASE includes mortgages, deeds of trust or other similar instruments and their modifications, extensions, renewals and replacements and any advances under such instruments.

21. **MECHANIC'S LIENS.**

**A.** All persons are hereby put on notice that TENANT does not have or claim the power to subject the interest of LANDLORD in the PROPERTY or any part thereof, including the PREMISES, to any mechanic's liens of any kind.

**B.** All persons who hereafter, during the term of this LEASE, furnish work, services or materials to the PREMISES upon the request of TENANT or any person claiming under, by or through TENANT, must look only to the interest of TENANT and not to that of LANDLORD.

**C.** TENANT shall not permit or suffer any claim of lien or liens of any kind by any person claiming under, by, through or against TENANT to be filed or claimed against the interest of LANDLORD in the PROPERTY or any part thereof, including the PREMISES, during the TERM of this LEASE. If any such claim of lien ifs filed, TENANT shall release the claim of lien within thirty (30) days after it or an action on it has been filed, either through payment, transfer of security or otherwise.

22. **WAIVER.** The failure of either party to insist upon compliance by the other party with any obligation or to exercise any remedy provided herein does not waive the right to do so in the event of a continuing or subsequent delinquency or default. A party's waiver of one or more defaults does not constitute a waiver of any other delinquency or default. Neither payment nor acceptance of rent shall constitute waiver of any delinquency or default on the part of the other party.

23. **RIGHT OF ENTRY.** LANDLORD, or any of LANDLORD'S agents, shall have the right to enter the PREMISES during all reasonable hours, to examine the PREMISES and to make any repairs, additions or alterations as may be deemed necessary for the safety, comfort or preservation of the PREMISES.

24. **TIME IS OF THE ESSENCE.** It is understood and agreed between the parties to this LEASE that time is of the essence and this applies to all terms and conditions contained herein.

25. **NOTICES.** Any notice or demand which, under the terms of this LEASE or of any statute or ordinance, must or may be given or made by one party hereto to another, shall be in writing and be sent certified mail, return receipt requested, or such equivalent as may be available at the time to the following addresses, respectively:

As to LANDLORD, Newberry Christian Community School, Inc., 3536 NW 8th Ave Gainesville, Florida 32605, Attn: James R Schrader, Authorized Member;

As to TENANT, Frazer School Inc, 4700 NW 89th Blvd, Gainesville, Florida 32606, Attn: James R. Schrader, Owner;

Or to such other address as such party may, from time to time, designate by notice.

26. **INDEMNIFICATION.** TENANT agrees to indemnify and save the LANDLORD harmless from all injury, loss, claims or damage (including attorney's fees and disbursements) to any person, or property, arising from, related to or in connection with the TENANT'S use or occupancy of the PREMISES, but only to the extent any such injury, loss, claim or damage exceeds or is outside the coverage of the insurance to be maintained by LANDLORD pursuant to the terms of this LEASE, and provided such injury, loss, claim or damage did not result from the willful or negligent act or omission of LANDLORD, its agents, or servants.

27. **ENFORCEDMENT COSTS.** If either LANDLORD or TENANT shall at any time be in default under the terms of this LEASE, and the party deems it necessary to engage attorneys to enforce its rights hereunder, the determination of such necessity is to be the sole discretion of that party, and the prevailing party shall be entitled to recover reasonable expenses incurred thereby, including but not limited to court-costs and reasonable attorneys' fees.

28. **REPRESENTATIONS AND WARRANTIES.** To induce TENANT to enter into this LEASE, LANDLORD has made the following representations and warranties, all of which are true as of the date hereof and shall be true as of the commencement date of the term of this LEASE:

**A.** The PREMISES are not in violation of any governmental zoning ordinances, building regulations, or any applicable private restrictive covenants.

**B.** All permits or licenses relative to the PREMISES which were in the past required or are presently required with respect to the improvements, have been obtained.

**C.** The PREMISES is not and shall not be in violation of building, zoning, health, occupancy or fire regulation, rule, ordinance of law or statute.

**D.** There is no present litigation involving the PREMISES or the right or power of LANDLORD to make the agreements and undertakings described herein.

E. LANDLORD has received no notice of any violation of applicable federal, state or local laws pertaining to environmental matters or of building codes, and to the best of the LANDLORD'S knowledge, said use of the PREMISES is not in violation of any environmental laws, building codes, zoning laws or other municipal and county requirements. If at any time during the term of this LEASE, any amendment to building codes, zoning laws, or any other law, ordinance or regulation comes into effect, which prohibits the operation of all or any part of the present uses of the PREMISES, TENANT shall have the right, but not the obligation, to cancel and terminate this LEASE without further obligation hereunder.

29. **PARKING.** LANDLORD warrants and represents that the PROPERTY is in compliance with all ordinances of the City of Gainesville regarding parking.

30. **ENTIRE AGREEMENT MODIFICATIONS.** This Agreement contains the entire agreement of the parties with respect to the subject matter thereof. No change or additions are to be made to this LEASE except by written agreement executed by the parties with the same formalities observed in execution of this LEASE.

31. **SUBLETING.** TENANT agrees that it will not sublet the PREMISES during the TERM of this LEASE unless, upon TENANT'S request, LANDLORD provides its prior written approval to the subletting of the PREMISES by TENANT.

32. **RADON GAS.** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

33. **GOVERNING LAW.** It is the intent of the parties hereto that all questions with respect to the construction of this LEASE and the rights and the liabilities of the parties hereto shall be determined in accordance with the laws of the State of Florida, and that all disputes arising hereunder shall be heard and decided in the local jurisdiction where the PREMISES is located.

34. **TRANSFER BY LANDLORD.** LANDLORD hereunder shall have the right to freely assign this LEASE without notice to or the consent of TENANT.

35. **SEVERABILITY.** If any term or provision of this LEASE, or the application thereof to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this LEASE, or the application of such term or provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this LEASE shall be valid and shall be enforced to the fullest extent permitted by law.

36. **RECORDING.** Neither this LEASE nor any memorandum hereof may be recorded without the express written consent of LANDLORD.

37. **COUNTERPARTS.** This LEASE may be executed in one or more counterparts, all of which taken together shall be deemed one original. Fax or digitally copied signatures shall be treated as original signatures.

**IN WITNESS WHEREOF**, the undersigned have executed this Lease Agreement effective as of the date and year first above written.

WITNESSES:

**"LANDLORD"**

NEWBERRY CHRISTIAN COMMUNITY SCHOOL, INC., a Florida not-for-profit corporation

By: ______________________
James R. Schrader, Authorized Member

______________________
Print Name: Tara Iams

______________________
Print Name: Debra J. Henanger
*(two witnesses as to Landlord)*

**"TENANT"**

FRAZER SCHOOL INC., a Florida Inc.

By: ______________________
James R. Schrader, Owner

______________________
Print Name: Tara Iams

______________________
Print Name: Debra J. Henanger
*(two witnesses as to Tenant)*