RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 3678453 25 PG(S)
3/10/2026 1:49 PM
BOOK 5260 PAGE 1
J.K. JESS IRBY, ESQ.
Clerk of the Court, Alachua County, Florida
ERECORDED Receipt # 1314953
Doc Stamp-Mort: $5,173.00
Doc Stamp-Deed: $0.00
Intang. Tax: $2,955.98

This Instrument Prepared By
And After Recording Return To:

Richard I. Withers, Esq.
Withers Harvey, P.A.
1120 NW 8th Avenue
Gainesville, Florida 32601

# SECOND MORTGAGE AND SECURITY AGREEMENT

THIS SECOND MORTGAGE AND SECURITY AGREEMENT (the "Second Mortgage"), dated as of March 3, 2026, is executed and delivered by NEWBERRY CHRISTIAN COMMUNITY SCHOOL, INC., a Florida not-for-profit corporation (the "Mortgagor"), having an address of 1520 NW 34th Street, Gainesville, Florida 32605, to JAMES R. SCHRADER and RACHEL E. SCHRADER, husband and wife, residents of the State of Florida (collectively, the "Mortgagee"), having an address of 13226 SW 1st Place, Newberry, Florida 32669, under the circumstances summarized in the following recitals:

A. Mortgagor executed that certain Promissory Note dated as of May 23, 2025, in favor of CAPITAL CITY BANK, a Florida corporation (the "Original Lender") in the amount of Four Million and 00/100 Dollars ($4,000,000.00) (the "Original Note") and as secured by that certain Mortgage made by Mortgagor in favor of Original Lender dated as of May 23, 2025, and recorded in Official Records Book 5215, Page 1500 (Instrument #3626209), of the Public Records of Alachua County, Florida (the "Original Mortgage").

B. On even date herewith, Mortgagor executed that certain Promissory Note and Security Agreement (the "Second Note") in favor of Mortgagee in the amount of One Million Four Hundred Seventy-Seven Thousand Nine Hundred Ninety-One and 00/100 Dollars ($1,477,991.00) (the "Second Loan").

C. This Second Mortgage secures the payment of the unpaid principal balance of the Second Note, together with interest as therein provided and all modifications, amendments, replacements, renewals and extensions of the Second Note and any other obligations of the Mortgagor pursuant to said Second Note, this Second Mortgage and any other documents or instruments evidencing or securing the Second Loan and any partial or total extensions, renewals, modifications, amendments, restatements or substitutions thereof or therefor (collectively referred to herein as the "Second Loan Documents").

**Note to Recording Clerk:** This Mortgage and Security Agreement (this "**Mortgage**") secures that certain Promissory Note and Security Agreement dated on or about the date hereof, executed by Mortgagor in favor of Mortgagee (as each is defined this Mortgage), in the original principal amount of $1,477,991.00. Accordingly, Florida documentary stamp taxes in the amount of $5,173.00 and Florida non-recurring intangible taxes in the amount of $2,955.99 are being paid upon the recordation of this Mortgage.

D. It is intended that this Second Mortgage may secure unpaid balances of advances made after this Second Mortgage is delivered to the Clerk of the Circuit Court of Alachua County, Florida.

NOW, THEREFORE, in consideration of the Second Loan made by Mortgagee to Mortgagor, as evidenced by the Second Note, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and for the purpose of securing: (i) all payments to be made by the Mortgagor pursuant to the Second Note, the Second Mortgage and/or any other Second Loan Document, (ii) any future or additional advances made at the option of Mortgagee as contemplated herein, (iii) any amounts advanced or costs incurred by the Mortgagee for the protection of the Mortgaged Property (as hereinafter defined) or the enforcement of this Second Mortgage, the Second Note and/or any other Second Loan Document, (iv) any other cost or expense which, by the terms of this Second Mortgage, the Second Note and/or any other Second Loan Document, may be the subject of reimbursement to Mortgagee by Mortgagor, and (v) the performance and observance of each covenant and agreement of the Mortgagor contained in this Second Mortgage, the Second Note and/or any other Second Loan Document, the Mortgagor does hereby grant, bargain, sell, convey, mortgage, assign, grant a security interest in and transfer unto the Mortgagee, its successors and assigns, the following property whether now owned or hereafter acquired (the "Mortgaged Property"):

(a) The land legally described in **Exhibit "A"** attached hereto and incorporated herein (the "Land"), together with all buildings, structures, additions, improvements, facilities and fixtures and other property, now or hereafter located in, upon or under or based at, such land (the "Premises");

(b) All easements, rights of way or use, licenses, privileges, franchises, servitudes, tenements, hereditaments and appurtenances now or hereafter belonging or in any way appertaining thereto, including, without limitation, all right, title and interest of the Mortgagor in any street, alley, sidewalk, open or proposed, and in front of, adjoining or adjacent or contiguous thereto, and all rights and estates in reversion or remainder;

(c) All leases, rentals, revenues, payments, repayments, income, charges, moneys, issues and profits thereof;

(d) The proceeds from any insurance or condemnation award pertaining thereto, or compensation in lieu thereof, including but not limited to any award or compensation for the alteration of the grade of any street or any other injury to or decrease in the value of the Mortgaged Property;

(e) All of Mortgagor's right, title, interest, estate, claim or demand, either at law or in equity, in and to all architectural, engineering and similar plans, specifications, drawings, renderings, profiles, studies, shop drawings, reports, plats, permits, surveys and the like, and all sewer taps, permits and allocations, agreements for utilities, bonds, sureties and the like, relating to the Premises or appurtenant facilities erected or to be erected upon or about the Land;

(f) All proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, the proceeds of insurance;

(g) All contracts and other agreements for the sale of any of the Mortgaged Property or any part thereof or interest therein now or hereafter entered into by Mortgagor, and all right, title and interest of Mortgagor thereunder, including, without limitation, all right, title and interest of Mortgagor in cash or securities deposited thereunder to secure performance by the contract purchasers of their obligations thereunder, and including, without limitation, the right to receive and collect the proceeds thereof;

(h) All of Mortgagor's rights, powers and privileges (but not the burdens and obligations) under any construction contract or architect's (or engineer's) agreement now or hereafter entered into by Mortgagor relating to the Mortgaged Property, and all bonds and surety agreements related thereto;

(i) All contracts and other agreements, if any, relating to the sale, lease, brokerage, development, management, maintenance and/or operation of the Mortgaged Property (or of any part thereof or interest therein) or otherwise pertaining thereto, including without limitation franchise agreements;

(j) All rights of Mortgagor under any commitment for any other loan secured by the Mortgaged Property or any part thereof or interest of Mortgagor therein;

(k) All right, title and interest of Mortgagor in all tradenames, trademarks and/or servicemarks hereinafter used exclusively in connection with the Mortgaged Property and all contract rights and contracts, franchise agreements, general intangibles, actions and rights of action, deposits, prepaid expenses, permits, licenses owned by Mortgagor and used in connection with or related to the Mortgaged Property;

(l) All proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, the proceeds of insurance;

(m) All machinery, apparatus, equipment, fittings, fixtures, inventory, appliances, furniture and articles of personal property of every kind and nature whatsoever, other than consumable goods, now or hereafter located in or upon said Premises or any part thereof owned by Mortgagor and used or useable in connection with any present or future operation of said Premises (herein collectively called "Equipment"), including, but without limiting the generality of the foregoing, all heating, lighting, laundry, incinerating, plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, communications, air conditioning and air cooling equipment or apparatus, engines, pipes, pumps, tanks, motors, conduits, switchboards, elevators, escalators, shades, awnings, screens, storm doors and windows, stoves, wall beds, refrigerators, attached cabinets, partitions, ducts and compressors, and all of the right, title and interest of the Mortgagor in and to any Equipment which may be subject to any conditional bill of sale, chattel mortgage or security interest superior to the lien or security interest established by this Second Mortgage; and

(n) All proceeds, additions, replacements and substitutions of and to any of the foregoing.

TO HAVE AND TO HOLD the Mortgaged Property unto the Mortgagee, its successors and assigns, forever;

AND, IT IS HEREBY COVENANTED that this Second Mortgage is given and the Mortgaged Property is to be held upon and subject to the terms, provisions and conditions herein set forth.

Section 1. Representations and Warranties. The Mortgagor represents and warrants that (i) the Mortgagor is lawfully seized with good and marketable title in fee simple absolute to the Mortgaged Property free and clear of all liens and encumbrances whatsoever, except for the first-position lien and security interest of Original Mortgage, taxes and assessments general and special not delinquent, zoning ordinances and except for those easements, restrictions, encumbrances, and matters, if any, appearing as of record as of the date of this Second Mortgage, and such other matters, if any, approved in writing by Mortgagee (hereinafter "Permitted Prior Encumbrances"), and has good and marketable title to all personal property included in the Mortgaged Property, subject only to the Permitted Prior Encumbrances; (ii) it has full right, power and authority to bargain, sell, mortgage and convey the Mortgaged Property as herein provided; and (iii) except as expressly provided above, it will warrant and defend to the Mortgagee such title to the Mortgaged Property and the lien and interest of the Mortgagee therein and thereon against all claims and demands whatsoever and will maintain the priority of the lien of, and the security interest granted by, this Second Mortgage upon the Mortgaged Property until the Mortgagor shall be entitled to defeasance as provided herein.

Section 2. After Acquired Property. All property of every kind affixed to the Premises or which may become fixtures acquired by the Mortgagor after the date hereof, and located at, on or under the Premises, shall, without further mortgage, conveyance or assignment, become subject to the lien of this Second Mortgage as fully as though now owned by the Mortgagor and specifically described herein. Nevertheless, the Mortgagor shall take such actions and execute and deliver such additional instruments as the Mortgagee shall reasonably require to further evidence or confirm the subjection to the lien of this Second Mortgage of any such property.

Section 3. Payment of Indebtedness. Mortgagor will pay the indebtedness secured hereby in the manner and at the times provided herein and/or in the Second Note or any other Second Loan Document, and, until the indebtedness secured hereby is fully paid, will comply with all the covenants, terms and provisions contained herein, and in any other Second Loan Documents.

Section 4. Loan Advances. This Second Mortgage secures the unpaid balances of any advances made under the Second Note, this Second Mortgage or any other Second Loan Document after this Second Mortgage has been delivered to the appropriate County officer for recordation. It is also expressly provided for and agreed that this Second Mortgage secures said future advances, whether such advances are obligatory or to be made at the option of Mortgagee or otherwise, to the same extent as if such future advances were made on the date of the execution of this Second Mortgage although there may be no advance made at the time of execution of this Second Mortgage or no indebtedness outstanding at the time any advance is made. The total amount of indebtedness that may be secured by this Second Mortgage may decrease or increase from time to time; provided, however, that the total unpaid balance secured at any time shall not exceed two (2) times the face amount of the Second Note, plus interest thereon, and advances made by Mortgagee pursuant to this Second Mortgage, with interest on

such advances at the Default Rate, including without limitation, for the payment of taxes, assessments, insurance premiums, costs for the protection of the Mortgaged Property, reasonable attorneys' fees (whether or not litigation has been commenced and in all trial, bankruptcy and appellate proceedings) and court costs incurred in the collection of any or all of such sums of money and interest thereon. It shall be an Event of Default hereunder if Mortgagor shall file a notice pursuant to Section 697.04(1)(b), Florida Statutes, limiting the amount of indebtedness that may be secured by this Second Mortgage. All future advances shall be made within twenty (20) years from the date hereof or such longer period of time as may be authorized by Florida law, and all indebtedness created by such future advances shall be secured hereby. All provisions of this Second Mortgage shall apply to any future advances made pursuant to the provisions of this Section. Nothing herein contained shall limit the amount secured by this Second Mortgage if such amount is increased by advances made by Mortgagee as herein elsewhere provided.

Section 5. Hazardous Substances.

(a) Mortgagor hereby warrants and represents that neither Mortgagor nor, to the best of Mortgagor's knowledge, after due inquiry, any other person or entity has ever generated, used or disposed of any Hazardous Substance (as defined below) from or in connection with the Mortgaged Property or used the Mortgaged Property as a storage facility for any Hazardous Substance.

(b) Mortgagor hereby agrees to indemnify Mortgagee and hold Mortgagee harmless from and against any and all losses, liabilities, including strict liability, damages, injuries, expenses, including reasonable attorneys' and paralegals' fees, costs of any settlement or judgment and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against, Mortgagee by any person or entity or governmental agency for, with respect to, or as a direct or indirect result of, the presence, usage, storage, generation or disposal on or under or in connection with the Mortgaged Property, or the escape, seepage, leakage, spillage, discharge, emission, discharging or release from the Mortgaged Property, of any Hazardous Substance (including, without limitation, any losses, liabilities, including strict liability, damages, injuries, expenses, including reasonable attorneys' and paralegals' fees, costs of any settlement or judgment or claims asserted or arising under the Comprehensive Environmental Response, Compensation and Liability Act, under any so called Federal, state or local "superfund" or "superlien" law, or under any statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to or imposing liability, including strict liability, or standards of conduct concerning any Hazardous Substance), regardless of whether within the control of Mortgagee.

(c) For purposes of this Section 5, "Hazardous Substance" shall mean and include those elements or compounds which are from time to time contained in the list of hazardous substances adopted by the United States Environmental Protection Agency ("EPA") and the list of toxic pollutants or contaminates designated by Congress or the EPA or defined by any other Federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct concerning, any hazardous, toxic or dangerous waste, substance or material as now or at any time hereafter in effect (including, without limitation, Chapters 252, 253, 373, 376 and 403 Florida Statutes).

(d) If Mortgagor receives any notice of (i) the happening of any event involving the spill, release, leak, seepage, discharge or cleanup of any Hazardous Substance on or in connection with the Mortgaged Property or in connection with operations thereon or (ii) any complaint, order, citation or notice with regard to air emissions, water discharges, or any other environmental, health or safety matter affecting or related to the Mortgaged Property (an "Environmental Complaint") from any person or entity (including without limitation the EPA), then Mortgagor shall immediately notify Mortgagee orally and in writing of said notice.

(e) Mortgagee shall have the right but not the obligation, and without limitation of Mortgagee's rights under this Second Mortgage, to enter onto the Mortgaged Property or to take such actions as Mortgagee deems necessary or advisable to cleanup, remove, resolve or minimize the impact of, or otherwise deal with, any such Hazardous Substance or Environmental Complaint following receipt of any notice from any person or entity (including without limitation the EPA) asserting the existence of any Hazardous Substance or any Environmental Complaint pertaining to the Mortgaged Property or any part thereof which, if true, could result in an order, suit or other action against Mortgagor and/or which, in the absolute and sole opinion of Mortgagee, could jeopardize Mortgagee's security under this Second Mortgage. All reasonable costs and expenses incurred by Mortgagee in the exercise of any such rights shall be secured by this Second Mortgage and shall be payable by Mortgagor within thirty (30) days of a written demand by Mortgagee which demand shall contain documentation reasonably reflecting the expenditure of such payments, costs and expenses by Mortgagee.

(f) Mortgagee shall have the right, in its reasonable discretion, to require Mortgagor to periodically (but not more frequently than annually unless an Environmental Complaint is then outstanding or following the occurrence of an Event of Default under this Second Mortgage or to comply with any regulatory requirement) perform (at Mortgagor's expense) an environmental audit and, if deemed necessary by Mortgagee, an environmental risk assessment, each of which must be reasonably satisfactory to Mortgagee, of the Mortgaged Property, of hazardous waste management practices and/or hazardous waste disposal sites used in connection with operations conducted at the Mortgaged Property. Said audit and/or risk assessment must be performed by an environmental consultant reasonably satisfactory to Mortgagee. Should Mortgagor fail to perform said environmental audit and/or risk assessment within sixty (60) days of Mortgagee's written request, Mortgagee shall have the right but not the obligation to retain an environmental consultant to perform said environmental audit and/or risk assessment. All costs and expenses incurred by Mortgagee in the exercise of such rights shall be secured by this Second Mortgage and shall be payable by Mortgagor within thirty (30) days of a written demand by Mortgagor (which demand shall contain documentation reasonably reflecting the expenditure of such payments, costs and expenses by Mortgagee) or charged to Mortgagor's loan balance at the discretion of Mortgagee.

(g) Any breach of any warranty, representation or agreement contained in this Section 5 shall be an Event of Default under this Second Mortgage and shall entitle Mortgagee to exercise any and all remedies provided in this Second Mortgage or otherwise permitted by law. The provisions of this Section 5 shall survive satisfaction, release or foreclosure of this Second Mortgage and shall inure to the benefit of any transferee of title to the Mortgaged Property through foreclosure of the Second Mortgage or any Second Loan Document or through deed in lieu thereof (but only to the extent such transferee is Mortgagee, its successor, an assignee of the

Second Note, a participant of any of the foregoing or an affiliate or entity related to any of the foregoing).

Section 6. Commercial Code and Financing Statement. This Second Mortgage constitutes a security agreement, and creates a security interest, subject to the first-position lien and security interest of Original Mortgage, as to all or any part of the Mortgaged Property which is of a nature that a security interest therein can be created and perfected under the Uniform Commercial Code from time to time in effect in the State of Florida, and all replacements and additions thereto and substitutions and proceeds thereof. Mortgagee shall have all remedies of a secured party under the Uniform Commercial Code with respect to any property subject to the security interest created pursuant to this Section. This Second Mortgage also constitutes a financing statement with respect to any and all property included in the Mortgaged Property which is or may become fixtures. Mortgagor hereby authorizes Mortgagee to file carbon, photographic or other reproduction of a financing statement, and any such filing shall constitute a sufficient financing statement under the Uniform Commercial Code. Mortgagor specifically authorizes Mortgagee to file any financing statement contemplated by this Second Mortgage without Mortgagor's signature, including any financing statement to be filed in the filing office of the Secretary of State of the State of Florida or any other applicable jurisdiction.

Section 7. Maintenance and Use of Mortgaged Property. The Mortgagor at its expense, shall keep the Mortgaged Property in good order and in a clean and safe condition (ordinary wear and tear excepted) and shall make all necessary or appropriate repairs, replacements, restorations and renewals thereof, interior, exterior, structural and non structural, ordinary and extraordinary, foreseen and unforeseen. The Mortgagor will not do, or permit to be done, any act or thing which might impair the value or usefulness of the Mortgaged Property or any part thereof, will not commit or permit any waste of the Mortgaged Property or any part thereof, and will not permit any unlawful occupation, business or trade to be conducted on the Mortgaged Property or any part thereof. The Mortgagor shall also, at its expense, promptly comply with all rights of way, privileges, franchises, servitudes, licenses, easements, tenements, hereditaments, restrictions of record and appurtenances being a part of, or burdening, the Mortgaged Property. Mortgagor shall not amend, modify or otherwise change, or seek to amend, modify or otherwise change, the current zoning and/or land use designation of the Mortgaged Property without the prior written consent of Mortgagee (such consent not to be unreasonably withheld, conditioned or delayed).

Section 8. Compliance with Legal and Insurance Requirements. The Mortgagor, at its expense, shall promptly comply with all Legal Requirements and Insurance Requirements, and shall procure, maintain and comply with all permits, licenses and other authorizations required for the construction, installation, operation, maintenance and use of the Mortgaged Property. As used in this Section, "Legal Requirements" means all laws, statutes, codes, acts, ordinances, resolutions, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorizations, directions and requirements of all governmental entities, departments, commissions, boards, courts, authorities, agencies, officials and officers, foreseen and unforeseen, ordinary or extraordinary, which now or at any time hereafter may be applicable to the Mortgaged Property or any part thereof, or any use or condition of the Mortgaged Property or any part thereof, and "Insurance Requirements" means all provisions of any insurance policy covering or applicable to the Mortgaged Property or any part thereof, all requirements of the

issuer of any such policy, and all orders, rules, regulations and other requirements of the National Board of Fire Underwriters (or any other body exercising similar functions) applicable to or affecting the Mortgaged Property or any part thereof, or any use or condition thereof. The Mortgagor may, at its expense and after prior written notice to the Mortgagee, contest in good faith by appropriate legal proceedings any Legal Requirement and postpone compliance therewith pending the resolution or settlement of such contest provided that (i) such postponement does not, in the reasonable opinion of the Mortgagee, adversely affect the condition, or value of, or the lien of this Second Mortgage as to, any part of the Mortgaged Property, and (ii) if requested by Mortgagee, the Mortgagor shall deposit in escrow with the Mortgagee pending such contest moneys sufficient in amount to cover the cost of compliance with Legal Requirement so contested.

Section 9. Alterations, Additions and Demolition. The Mortgagor may, at its expense, make from time to time any additions, modifications or improvements to the Mortgaged Property provided that such additions, modifications or improvements (i) are related to the normal operation of a school, and (ii) do not (x) involve an expenditure in excess of $50,000 and (y) adversely affect the structural integrity or strength of any improvements constituting a part of the Mortgaged Property or materially interfere with the use and operation thereof (each a "**Permitted Improvement**"). All additions, modifications and/or improvements, which do not constitute a Permitted Improvement, shall only be made with the prior written consent of the Mortgagee (which shall not be unreasonably conditioned, delayed or denied). If so requested, Mortgagor shall submit to the Mortgagee the opinion of a licensed engineer satisfactory to Mortgagee. All additions, modifications and improvements so made by the Mortgagor shall become or be deemed to constitute a part of the Mortgaged Property. Notwithstanding the foregoing, any building or improvement currently located on the Mortgaged Property or any part thereof may be removed or demolished without the prior written consent of the Mortgagee.

Section 10. Substitutions and Removals. If any item of personal property constituting a part of the Mortgaged Property becomes inadequate, obsolete, worn-out, unsuitable, undesirable or unnecessary or should be replaced, the Mortgagor may remove such item provided that the Mortgagor shall either:

(a) prior to or simultaneously with such removal, substitute and install as part of the Mortgaged Property property having equal or greater value (but not necessarily the same function) in the operation of the Mortgaged Property, which such substituted property shall be free from all liens and encumbrances (other than Permitted Prior Encumbrances) and shall become part of the Mortgaged Property; or

(b) In the case of removal of property without substitution, promptly pay to the Mortgagee an amount equal to (i) the proceeds of such sale or the scrap value thereof, if the removed property is sold or scrapped, or (ii) if the removed property is used as a trade in for property not to be installed as part of the Mortgaged Property, the trade in credit received by the Mortgagor, or (iii) in the case of the retention of such removed property by the Mortgagor for other purposes, the fair market value of such property, as determined by a licensed engineer satisfactory to Mortgagee.

The Mortgagor shall promptly report to the Mortgagee each such removal, sale or other disposition and shall pay to the Mortgagee such amounts as are required by the provisions of the preceding subsection (b) of this Section promptly after the sale, trade in or other disposition requiring such payment; provided that no such report and payment need be made until the amount to be paid to the Mortgagee on account of all such sales, trade ins or other dispositions not previously reported aggregates at least $5,000 in any consecutive twelve month period. The Mortgagee shall apply such moneys to the payment of principal installments on the Second Note as provided therein.

Section 11. Payment of Taxes and Other Governmental Charges. The Mortgagor shall pay promptly when due all taxes, assessments (whether general or special), and other governmental charges of any kind whatsoever, foreseen or unforeseen, ordinary or extraordinary, that now or may at any time hereafter be imposed, assessed or levied against or with respect to the Mortgaged Property or any part thereof (including, without limitation, any taxes levied upon or with respect to the revenues, income or profits of the Mortgagor from the Mortgaged Property) or upon the Mortgagee's interest therein (without regard to any law heretofore or hereafter enacted imposing payment of the whole or any part thereof upon the Mortgagee); provided, however, that as to real estate taxes, payment shall be made by Mortgagor not later than March 31 immediately following the date said taxes are due. Within five (5) Business Days (as defined herein) of the written request of Mortgagee and after receipt of evidence of payment of real estate taxes or assessments relating to the Mortgaged Property, Mortgagor shall deliver to Mortgagee evidence of such payment in form and substance satisfactory to Mortgagee. If at any time any agency of the State of Florida shall determine that the documentary stamps affixed to the Note or the intangible personal property taxes affixed to the Second Mortgage are insufficient or if no documentary stamps or intangible personal property taxes have been affixed and that such stamps or taxes should thereafter be affixed, the Mortgagor shall pay one-half of the same, together with one-half of any interest or penalties imposed in connection with such determination and the amount of one-half the money needed to pay for such stamps and taxes and penalties shall, until such stamps and taxes are purchased and affixed, be a portion of the indebtedness secured hereby and bear interest from the date of such determination at the rate set forth in the Note applicable to a period when default exists thereunder.

The Mortgagor may, at its expense and after prior notice to the Mortgagee, by appropriate proceedings diligently prosecuted, contest in good faith the validity or amount of any such taxes, assessments and other charges and, during the period of such contest, permit the items so contested to remain unpaid. However, if at any time the Mortgagee shall notify the Mortgagor that, in its reasonable opinion, by nonpayment of any such items the lien of the Mortgage as to any part of the Mortgaged Property will be adversely affected, or the nonpayment of any such items will result in the creation of a lien upon the Mortgaged Property, the Mortgagor shall promptly pay such taxes, assessments or charges. During the period when the taxes, assessments or other charges so contested remain unpaid, the Mortgagor shall deposit in escrow with the Mortgagee moneys equal in amount to the amount of such contested taxes, assessments or charges.

Section 12. Required Insurance Coverage.

(a) The Mortgagor shall keep any buildings, structures, additions, facilities, fixtures or other improvements included in the Mortgaged Property (collectively, the "Insurable Improvements"), continuously insured for the benefit of the Mortgagee against loss or damage by fire and other hazards included in a standard fire insurance policy with an extended coverage endorsement, including theft, vandalism, malicious mischief, collapse and debris removal coverage and such other coverage(s) as Mortgagee may reasonably require, duly endorsed to show the interest of the Mortgagee under a standard non contributing mortgagee clause, in an amount equal to the replacement value of the Insurable Improvements without regard to depreciation. If any of the Insurable Improvements are located within a hazardous flood area as designated by any governmental authority, Mortgagor shall obtain and continuously maintain flood insurance coverage to the maximum amount available under the National Flood Insurance Program with appropriate endorsements thereto providing for Mortgagee's interest in the same manner as the standard fire insurance.

(b) The Mortgagor shall obtain and continuously maintain single limit comprehensive general accident and public liability insurance in minimum amounts of $1,000,000 per occurrence and $2,000,000 in the aggregate, and naming the Mortgagee as an additional insured.

(c) All insurance required to be obtained and maintained pursuant to this Second Mortgage shall be obtained from generally recognized, responsible insurance companies qualified or licensed to transact such business in the State of Florida with an AM Best Rating of A-/VIII or better or with the same insurance companies as insured the Insurable Improvements as of the date of this Second Mortgage or otherwise satisfactory to the Mortgagee. Each policy of insurance shall not be subject to cancellation or substantial modification without at least thirty (30) days prior written notice to the Mortgagee. The loss deductible provision for any such insurance shall not exceed $10,000 (except with respect to any windstorm policy, for which the loss deductible shall not exceed 5%).

(d) Mortgagor shall deposit with the Mortgagee all such policies of insurance or, at the option of the Mortgagee, binders, certificates or other evidence satisfactory to the Mortgagee that (i) the insurance required hereby has been obtained and is in full force and effect, and (ii) all premiums thereon have been paid in full. Prior to the expiration of any such insurance, the Mortgagor shall furnish the Mortgagee with evidence satisfactory to the Mortgagee that such insurance has been renewed or replaced and that all premiums thereon have been paid in full, and all insurance policies required hereby are in full force and effect.

(e) Subject to the right of Original Lender under the Original Note and the Original Mortgage, and Subject to Section 17 hereof, Mortgagor hereby assigns to the Mortgagee all of the Mortgagor's right, title and interest in and to all such policies of insurance and in and to any insurance proceeds resulting therefrom to the full extent of the indebtedness secured hereby, authorizes the Mortgagee to collect, adjust and compromise any claims under any such insurance policies, and further authorizes and directs the insurer to pay any and all such proceeds directly to the Mortgagee. The Mortgagee may, at its option, collect, adjust and compromise any claims under any such insurance policies. In the event of a foreclosure of this Second Mortgage, the purchaser of the Mortgaged Property shall succeed to all the rights of the Mortgagor (including any right to unearned premiums) in and to all policies of insurance assigned to the Mortgagee pursuant hereto.

(f) Mortgagor shall maintain or cause to be maintained in connection with the Mortgaged Property any workers' compensation coverage required by the laws of the State of Florida. If the Mortgaged Property is used for (1) manufacturing purposes, or (2) any purpose involving the use of machinery, mobile or production equipment, tank storage, or the production of any gases, chemicals, or any use other than general office, apartment living or storage purposes only, Mortgagor shall also maintain liability insurance coverage to insure against any liability risks not covered by workers' compensation coverage.

Section 13. Taxes and Insurance Premiums. In order to more fully protect the security of this Second Mortgage, if the Mortgagee shall so elect at any time after the occurrence of an Event of Default, Mortgagor shall pay to Mortgagee, together with and in addition to each payment of principal and interest required by the Note, one twelfth (1/12th) of the amount (as estimated by the Mortgagee) of the annual taxes and annual insurance premiums next becoming due and payable with respect to the Mortgaged Property and the policies of insurance referred to in this Second Mortgage, and Mortgagor shall also pay to the Mortgagee within thirty (30) days of a written demand therefor the amount by which the actual taxes and insurance premiums exceed payments actually made pursuant hereto. Any unpaid balance of advances by Mortgagee for taxes and/or insurance premiums shall bear interest at the Default Rate (as hereinafter defined) and, together with such interest, shall be secured by this Second Mortgage. The Mortgagee shall not be considered to be a fiduciary with respect to any amounts paid to or received by it pursuant to the terms of this Section and shall not be liable for the payment of interest on all or any part of such funds.

Section 14. Disposition of Mortgaged Property; Liens and Encumbrances. Mortgagor shall not sell, convey, assign, transfer (other than Permitted Transfers), or dispose of all or any part of the Mortgaged Property, or any interest therein, in each case without the prior written consent of the Mortgagee, which shall not be unreasonably conditioned, delayed or denied. Mortgagor shall not directly or indirectly create or permit to remain, and will promptly discharge, any mortgage, lien, encumbrance or charge on, pledge of, security interest in or conditional sale or other title retention agreement with respect to all or any part of the Mortgaged Property, or any interest therein, or any revenues, income or profit or other sums arising from the Mortgaged Property or any part thereof (including, without limitation, any lien, encumbrance or charge as a result of operation of law) other than: (i) the first-position lien and security interest of Original Mortgage, (ii) the lien and security interest of this Second Mortgage; (iii) liens for taxes, assessments and other governmental charges which are not at the time required to be paid pursuant to Section 11 hereof; (iv) liens of mechanics', materialmen, suppliers or vendors or rights thereto to the extent permitted by Section 15 hereof; and (v) the Permitted Prior Encumbrances specified in Section 1 hereof, if any. "Permitted Transfers" means (a) gifts and other transfers for estate planning purposes of any direct or indirect interests in Mortgagor, to a spouse, parent, sibling or any lineal descendant of such individual or to a trust for the benefit of any one or more of such spouse, parent, sibling or lineal descendants (collectively, "Sponsor Transferees") so long as there is no change as to management of Mortgagor.

Section 15. Construction and Other Liens. The Mortgagor shall not permit any construction, mechanics' or other liens to be filed or to exist against the Mortgaged Property or any part thereof, and the Mortgagor shall, within thirty (30) days after notice of the filing of any

such lien, cause the same to be discharged of record by payment, deposit, bond, order of a Court of competent jurisdiction or otherwise.

Section 16. No Claims Against Mortgagee. Nothing contained in this Second Mortgage shall be construed as a request by the Mortgagee, expressed or implied, for the performance of any labor or services or the furnishing of any materials or other property with respect to the Mortgaged Property or any part thereof, or be construed to give the Mortgagee any right, power or authority to contract for or permit the performance of any labor or services or the furnishing of any materials or other property with respect to the Mortgaged Property or any part thereof, or be construed to give the Mortgagor any right, power or authority to contract for or permit the performance of any labor or services or the furnishing of any material or other property on behalf of Mortgagee, or in such manner as to provide the basis for any claim either against the Mortgagee or that any lien based on the performance of such labor or services or the furnishing of any such material or other property is prior to the lien of this Second Mortgage.

Section 17. Damage, Destruction, Eminent Domain.

(a) Mortgagor shall promptly notify Mortgagee in writing of any damage to or destruction of any part of the Mortgaged Property, including a description of the nature, extent and date of the damage, the estimated cost of repair, and estimated net proceeds of insurance. Mortgagor shall promptly notify Mortgagee in writing of any proposed, threatened or actual taking or injury to any part of the Mortgaged Property pursuant to use of the power of eminent domain, including a description of the nature, extent and date of the taking or proposed taking and the estimated net proceeds of the condemnation award, or price for conveyance under threat of condemnation.

(b) Mortgagor hereby assigns to Mortgagee all of Mortgagor's right, title and interest in and to any and all such proceeds of insurance and/or eminent domain awards (including any amount paid for a conveyance under threat of condemnation), and all such proceeds shall be paid to Mortgagee for application to the Mortgagee's costs of collection, any amounts then due pursuant to the Second Note or this Second Mortgage, and then to the prepayment without premium of principal; provided, however, that, subject to paragraph (c) below, and so long as no Event of Default, has occurred, the Mortgagee shall permit all or any part of such insurance proceeds to be used for the purpose of repairing, replacing, restoring and rebuilding the Mortgaged Property as nearly as practicable to the value, condition and character thereof immediately prior to such damage or destruction, with such changes or alterations, however, as the Mortgagor may deem necessary for proper use or operation of the Mortgaged Property and as may be approved by the Mortgagee, in accordance with Section 17(e) hereof.

(c) All prepayments of principal pursuant to paragraph (b) of this Section shall be made without premium or penalty in the inverse order of the maturity thereof.

(d) Mortgagor shall, regardless of the adequacy or availability of insurance proceeds, if any, promptly commence and complete the restoration, repair, replacement and rebuilding of the Mortgaged Property as nearly as practicable to the value, condition and character thereof immediately prior to such damage or destruction. Mortgagor shall, regardless of the adequacy or availability of proceeds of condemnation therefor, if any, promptly commence and complete the

restoration, repair, replacement and rebuilding of the Mortgaged Property as nearly as practicable to the value, condition and character thereof immediately prior to such taking. Subject to the satisfaction of the conditions set forth in paragraph (b) of this Section, Mortgagee shall make any insurance proceeds available for any such repair or restoration, and shall disburse such funds as work progresses in accordance with and subject to Mortgagee's then normal and customary construction loan disbursement practices and procedures, provided that Mortgagee may require Mortgagor either to deposit with Mortgagee, for disbursement prior to the disbursement of any such insurance proceeds, the amount in addition to such available net proceeds of insurance that will be required (in Mortgagee's judgment) to complete such repair or restoration, or to provide Mortgagee with evidence satisfactory to Mortgagee that such additional funds are available for such purposes.

Section 18. Leases. The Mortgagor shall not enter into any lease of all or any part of the Mortgaged Property ("Lease") except with the prior written consent of the Mortgagee, which consent may be withheld at the sole and absolute discretion of the Mortgagee, and pursuant to lease terms in form and substance satisfactory to the Mortgagee. Unless otherwise provided by written instrument signed by the Mortgagee, any and all Leases shall be subordinated to this Second Mortgage. This Second Mortgage constitutes an absolute and present assignment of all rentals, income and other revenues payable under or derived from any and all Leases, subject only to the conditional license granted by the Mortgagee to the Mortgagor to collect such rentals, income and revenues during such times as no Event of Default shall have occurred hereunder.

The Mortgagor will perform, fulfill, comply with and observe each and every covenant, agreement and condition to be performed, fulfilled, complied with and observed by the Mortgagor as lessor under the Leases, and will not suffer or permit any default of the Mortgagor as lessor thereunder to occur (except defaults which are duly cured within the time provided in the Leases for the curing thereof).

Section 19. Inspection. Mortgagee, its agents and employees shall have the right to enter upon and inspect the Mortgaged Property at any and all reasonable times for the protection of its interest in the Mortgaged Property and for such other purposes as may in Mortgagee's reasonable discretion be necessary or desirable in connection with the exercise of its rights hereunder or any other Loan Document.

Section 20. Reserved.

Section 21. Indemnification. The Mortgagor hereby protects, indemnifies and saves harmless the Mortgagee, its officers, directors, agents and employees, from and against any and all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation, reasonable attorneys' fees and expenses whether or not litigation has been commenced and in all trial, bankruptcy and appellate proceedings) imposed upon, incurred by or asserted against the Mortgagee or any of such persons by reason of (a) ownership of any interest in the Mortgaged Property or any part thereof, (b) any action or proceeding instituted pursuant to Chapter 697.10 Florida Statutes, (c) any accident, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property or any part thereof or the adjoining sidewalks, curbs, vaults and vault space, if any, streets or ways, (d) any use, disuse or condition of the Mortgaged Property or any part thereof, or the adjoining

sidewalks, curbs, vaults and vault space, if any, or any streets or ways, (e) any failure on the part of the Mortgagor to perform or comply with any of the terms hereof or any other Second Loan Document, or any inaccuracy in any representation or warranty made by Mortgagor herein or in any other Second Loan Document, (f) any defense of the right, title or interest conveyed by this Second Mortgage, (g) the performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof, (h) any subsidence or erosion of any part of the surface of the Mortgaged Premises, including any shoreline or any bank of any river, stream, creek, canal, lake, ocean or other water source, or (i) the location or existence of asbestos or any toxic or hazardous waste, chemicals, materials or substance on, at, in or under the Mortgaged Property or any part thereof. If any action, suit or proceeding is brought against the Mortgagee, or any of its officers, directors, agents or employees, for any such reason, the Mortgagor, upon the request of such party, will at the Mortgagor's expense, cause such action, suit or proceeding to be resisted and defended by counsel satisfactory to the Mortgagee or such person. Any amounts payable to an indemnified party under this Section which are not paid within thirty (30) days after written demand therefor shall bear interest at the Default Rate from the date which is thirty (30) days of such demand, and such amounts, together with such interest, shall be indebtedness secured by this Second Mortgage. The obligations of the Mortgagor under this Section shall survive any defeasance of the Mortgage.

Section 22. Events of Default. Any one or more of the following events shall be an "Event of Default" under this Second Mortgage:

(a) Failure by the Mortgagor to pay to Mortgagee any principal or interest under the Second Note or any other indebtedness secured hereby as and when the same becomes due and payable, or the entire indebtedness secured hereby upon the maturity of the Second Note;

(b) Failure by the Mortgagor to observe or perform any other term, covenant or agreement contained herein, in the Second Note or in any other Second Loan Document after any applicable notice and grace periods;

(c) The Mortgagor shall: (i) become insolvent or generally not pay, or be unable to pay, or admit in writing its inability to pay its debts generally as they become due; (ii) commence a proceeding under any Federal or state bankruptcy, insolvency, reorganization or other similar code or law, or have such a proceeding commenced against it and either have an order of insolvency or reorganization entered against it or have the proceeding remain undismissed for sixty (60) days; (iii) make an assignment for the benefit of its creditors; (iv) have a receiver or trustee or custodian appointed for it or for the whole or any substantial part of its property or for all or any part of the Mortgaged Property; or (v) adopt a plan of liquidation of its assets;

(d) If the Mortgagor shall cease to exist or to be qualified to do or transact business in the State of Florida or be dissolved or shall be a party to a merger or consolidation, shall issue stock of any type or series (if a corporation), or shall sell all or substantially all of its assets, or if any individual being Mortgagor should die, become incapacitated or adjudged incompetent;

(e) Excluding any Permitted Transfers, if Mortgagor is a corporation, any shares of stock of Mortgagor are issued, sold, transferred, conveyed, assigned, mortgaged, pledged, or otherwise disposed of, whether voluntarily or by operation of law, and whether with or without

consideration, or any agreement for any of the foregoing is entered into; or, if Mortgagor is a partnership, any general or limited partnership interest or other equity interest in such partnership is sold, transferred, assigned, conveyed, mortgaged, pledged or otherwise disposed of, whether voluntarily or by operation of law, and whether with or without consideration, or an agreement for any of the foregoing is entered into, or, if Mortgagor is a limited liability company, any membership or other equity interest in such limited liability company is sold, transferred, assigned, or conveyed or otherwise disposed of, whether voluntary or by operation of law, and whether with or without consideration;

(f) An action for foreclosure or marshalling of liens is commenced against all or any part of the Mortgaged Property; or

(g) A default occurs under Original Note and/or the Original Mortgage and the same is not cured within any applicable grace period.

Section 23. Mortgagee's Right to Cure. If the Mortgagor shall fail to make any payment or perform any act required to be made or performed under this Second Mortgage or any other Second Loan Document, the Mortgagee, without demand upon the Mortgagor and without waiving or releasing any obligation or default, may (but shall be under no obligation to) make such payment or perform such act for the account and at the expense of the Mortgagor and may enter upon the Mortgaged Property or any part thereof for such purpose and take all such action thereon as, in its sole opinion, may be necessary or appropriate therefor, all without prejudice to any other rights or remedies available to Mortgagee. All payments so made by the Mortgagee and all costs, fees and expenses incurred in connection therewith or in connection with the performance by the Mortgagee of any such act, together with interest thereon at the Default Rate from the date of payment or incurrence, shall constitute additional indebtedness secured by this Second Mortgage and shall be paid by the Mortgagor to the Mortgagee within thirty (30) days of a written demand, which demand shall contain documentation reasonably reflecting the expenditure of such payments, costs and expenses by Mortgagee.

Section 24. Remedies.

(a) If an Event of Default shall have occurred, subject to the first-position lien and security interest of Original Mortgage, the Mortgagee may exercise any or all or any combination of the remedies conferred upon or reserved to it under this Second Mortgage or any other Second Loan Document, or now or hereafter existing at law or in equity or by statute or other applicable law. Without limitation, the Mortgagee may (i) declare the entire unpaid principal balance of the indebtedness secured hereby to be immediately due and payable, without notice or demand, the same being expressly waived by the Mortgagor, and upon such declaration the entire indebtedness secured hereby shall become immediately due and payable and shall thereafter bear interest at the Default Rate (as such term is defined in the Second Note); (ii) proceed at law or equity to collect all indebtedness secured by this Second Mortgage then due hereunder, whether at maturity or by acceleration; (iii) subject to the first-position lien and security interest of Original Mortgage, foreclose the lien of this Second Mortgage as against all or any part of the Mortgaged Property; and (iv) subject to the first-position lien and security interest of Original Mortgage, exercise any rights, powers and remedies it may have as a secured party under the Uniform Commercial Code of the State of Florida, including, without limitation,

the option of proceeding as to both personal property and fixtures in accordance with the Mortgagee's rights with respect to real property. The Default Rate is and shall be the rate of interest which applies to any judgment debt upon the obligations contained in this Second Mortgage.

(b) Notwithstanding any contrary provisions contained in this Second Mortgage or any other Second Loan Document, if Mortgagor shall (i) file for protection with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 United States Code ("USC"), as amended, (ii) be the subject of any order for relief issued under said Title 11 USC, as amended, (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act, code, law or statute relating to bankruptcy, insolvency or other relief for debtors, (iv) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator or liquidator, or (v) be the subject of any other order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against Mortgagor for any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act, code, law or statute relating to bankruptcy, insolvency or relief for debtors, Mortgagee shall thereupon immediately be entitled to relief from any automatic stay (on or against the exercise of any rights and remedies otherwise available to Mortgagee) imposed by Section 362 of Title 11 USC, as amended, to commence or continue any action necessary to foreclose this Second Mortgage and otherwise assert any legal remedies available to Mortgagee pursuant to this Second Mortgage or any other Second Loan Document and as otherwise provided by law or equity. This entitlement shall be irrespective of any of the requirements of said Section 362 of Title 11 USC, as amended, and Mortgagee shall not be obligated to satisfy any such requirements in order to obtain stay relief. Mortgagor further agrees that it will not assert any defenses to or otherwise defend any motion brought by Mortgagee pursuant to this Section 24(b). Mortgagor agrees that this Section 24(b) is a material inducement to Mortgagee agreeing to make the Loan.

Section 25. Waiver of Appraisement, Valuation. The Mortgagor hereby waives, to the full extent that it may lawfully do so, the benefit of all appraisement, valuation, stay and extension laws now or hereafter in force and all rights of marshalling of assets in the event of any sale of the Mortgaged Property, any part thereof or any interest therein, and any court having jurisdiction to foreclose the lien hereof may sell the Mortgaged Property (real or personal, or both) as an entirety or in such parcels, lots, manner or order as the Mortgagee in its sole discretion may elect.

Section 26. Appointment of Receiver. If an Event of Default shall have occurred, the Mortgagee shall be entitled, to the extent permitted by law, as a matter of right and without regard to the value or condition of the Mortgaged Property or the adequacy thereof as security with notice to the Mortgagor, to seek the appointment of a receiver for all or any part of the Mortgaged Property, whether such receivership is incidental to a proposed sale of the Mortgaged Property or otherwise.

Section 27. Possession, Management and Income; Assignment. If an Event of Default shall have occurred, the Mortgagee, to the extent permitted under applicable law, and without notice to the Mortgagor, but subject to the first-position lien and security interest of Original

Mortgage, may enter upon and take possession of the Mortgaged Property or any part thereof by summary proceedings, ejectment or otherwise, and may remove Mortgagor and all other persons and any and all property therefrom and may hold, operate and manage the same and receive all revenues, income or profits accruing with respect thereto or any part thereof. The Mortgagee shall have no liability for or by reason of any such taking of possession, entry, removal or holding, operation or management, or for the failure to do so, except for grossly negligent or intentional misconduct.

Section 28. Remedies Cumulative. Each right, power and remedy of the Mortgagee provided for in this Second Mortgage, in the Second Note, in any other Second Loan Document or now or hereafter existing at law or in equity or by statute or otherwise, shall be cumulative and concurrent and shall be in addition to every other such right, power or remedy, and the exercise or beginning of the exercise or partial exercise by the Mortgagee of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise by the Mortgagee of any or all such other rights, powers or remedies.

Section 29. Provisions Subject to Applicable Law. All rights, powers and remedies provided herein may be exercised only to the extent that the exercise thereof does not violate any applicable law, and are intended to be limited to the extent necessary so that they will not render this Second Mortgage invalid, unenforceable or not entitled to be recorded, registered or filed under any applicable law.

Section 30. No Waiver by Mortgagee. No failure by the Mortgagee to insist upon the strict performance of any term hereof or to exercise any right, power or remedy consequent upon a breach thereof shall constitute a waiver of any such term or of any such breach. No waiver of any breach shall affect or alter this Second Mortgage, which shall continue in full force and effect with respect to any other then existing or subsequent breach.

Section 31. Right to Sue for Installments. Mortgagee shall have the right from time to time to sue for any sums required to be paid pursuant to the terms of this Second Mortgage (whether principal, interest, taxes, insurance premiums, or otherwise) as the same become due, without regard to whether or not the principal or any other sums secured hereby shall then be due and payable, and without prejudice to the right of the Mortgagee to accelerate the indebtedness secured hereby or to commence an action for foreclosure or any other action for a default or defaults by the Mortgagor existing at the time such earlier action was commenced.

Section 32. Additional Security. Without impairment of the lien and rights created by this Second Mortgage, the Mortgagee may accept additional security for the indebtedness secured by this Second Mortgage from the Mortgagor or (without notice to or the consent of the Mortgagor) from any other person or persons. Mortgagee may release or subordinate any part of the security for the indebtedness secured by this Second Mortgage without in any way impairing or affecting the validity or priority of this Second Mortgage as to the Mortgaged Property not specifically released. Mortgagee may resort to the security created by this Second Mortgage or to any such additional security in such manner and order as Mortgagee may elect, in each case without affecting the lien hereof and the rights conferred hereunder.

Section 33. Notices. Any notice, demand or request required or permitted by this Second Mortgage shall be in writing and shall be deemed to have been sufficiently given at the earlier of when personally delivered or at 5:00 P.M. on the second Business Day after deposit in the United States certified or registered mail, postage prepaid, and addressed to the address of the party to whom such notice is directed as such address as is set forth at the beginning of this Second Mortgage, or at such other address as any party may from time to time notify the other by notice in writing as aforesaid. A "Business Day" is any day other than a Saturday, Sunday or any day on which federal savings banks are authorized or required to be closed.

Section 34. Reimbursement of Attorneys' Fees and Expenses. If the Mortgagee becomes a party to any action wherein the Mortgagee must establish or defend the validity or priority of this Second Mortgage, or if the Mortgagee should incur expenses in connection with the collection or enforcement of this Second Mortgage, the Second Note, any other Second Loan Document or any other instrument or document collateral thereto, the Mortgagor shall reimburse the Mortgagee within thirty (30) days of a written demand for any and all such costs or expenses incurred by Mortgagee, including, without limitation, attorneys' fees in all trial, bankruptcy and appellate proceedings, and whether or not litigation has been commenced, together with interest thereon at the Default Rate from the date such costs and expenses are incurred, and all of said amounts, including interest, shall constitute indebtedness secured by this Second Mortgage to the extent permitted by law. Such written demand by Mortgagee shall contain documentation reasonably reflecting the expenditure of such payments, costs and expenses by Mortgagee.

Section 35. Discharge of Mortgage. If the Second Note and all other sums payable under this Second Mortgage and any other Second Loan Document shall have been fully paid and the Mortgagor shall have complied with all the terms, conditions and requirements hereof, and all other Second Loan Documents, then this Second Mortgage shall be null and void and of no further force and effect, except provisions herein or in any other Second Loan Document which expressly survive the satisfaction and release of this Second Mortgage. Thereupon, and upon the written request and at the expense of the Mortgagor, the Mortgagee will execute and deliver such proper instruments of release and discharge as may reasonably be requested to evidence such defeasance, release and discharge.

Section 36. Recordation. The Mortgagor, at its expense, shall cause this Second Mortgage, any instruments supplemental hereto, and financing statements, including all necessary amendments, supplements and appropriate continuation statements, to be recorded, registered and filed, and to be kept recorded, registered and filed, in such manner and in such places as may be required in order to establish, preserve and protect the lien of this Second Mortgage as a valid mortgage lien on all real property and fixtures included in the Mortgaged Property and a valid, security interest in all fixtures included in the Mortgaged Property (including in each such case, without limitation, any such properties acquired after the execution hereof).

Section 37. Further Assurances. Mortgagor will properly execute and deliver, or cause to be executed and delivered from time to time, at the request of Mortgagee, all such further instruments and documents as Mortgagee shall reasonably require to evidence this Mortgage, and to confirm unto the Mortgagee the mortgaging of the Mortgaged Property.

Section 38. Reserved.

Section 39. Amendments, Changes and Modifications. Except as otherwise provided in this Second Mortgage, this Second Mortgage may not be effectively amended, changed, modified, altered or terminated without the prior written consent of the Mortgagee. If the payment of the indebtedness secured by this Second Mortgage, or any part thereof, be extended or varied, or if any part of the security or guaranties therefor be released, then all persons now or at any time hereafter liable therefor, or interested in the Mortgaged Property, shall be held to assent to such extension, variation or release and their liability and the lien of this Second Mortgage and all provisions hereof shall continue in full force and effect. The right of recourse against all such persons is expressly reserved by Mortgagee, notwithstanding any such extension, variation or release. Any person, firm or corporation taking a junior mortgage, or other lien upon the Mortgaged Property or any part thereof or any interest therein, shall take said lien subject to the rights of Mortgagee to amend, modify, extend or release this Second Mortgage, the Loan Documents or any other document or instrument evidencing, securing or guarantying the indebtedness secured by this Second Mortgage, in each and every case without obtaining the consent of the holder of such junior lien and without the lien of this Second Mortgage losing its priority over the rights of any such junior lien. Any acceptance by the Mortgagee of part payment of any installment of principal or interest, or both, or part performance of any covenant, or delay by Mortgagee for any period of time in exercising the option to accelerate any indebtedness evidenced by the Note or secured by this Second Mortgage shall not operate as a waiver of the right to exercise such option to accelerate such indebtedness.

Section 40. Governing Law; Venue. This Second Mortgage shall be deemed to be made under the laws of the State of Florida and for all purposes shall be governed by and construed in accordance with the laws of the State of Florida. Mortgagor hereby irrevocably submits to the non-exclusive jurisdiction of any Florida or Federal court sitting in Alachua County, Florida (or any county in Florida where any portion of the Mortgaged Property is located) over any suit, action or proceeding arising out of or relating to this Agreement.

Section 41. Binding Effect. This Second Mortgage shall inure to the benefit of and be binding upon the Mortgagor, its successors and assigns, and the Mortgagee, its successors and assigns, provided that Mortgagor may not assign (a) any of Mortgagor's rights and benefits under this Second Mortgage; or (b) any of the Mortgaged Property, without the prior written consent of the Mortgagee.

Section 42. Severability. If any term or provision of this Second Mortgage, or the operation thereof, shall be held to be invalid, illegal or unenforceable, the validity of the remaining provisions hereof, and the operation thereof, shall in no way be affected thereby, each of which shall be deemed to be effective to the full extent permitted by law.

Section 43. Captions. The captions or headings herein shall be solely for convenience of reference and in no way define, limit or describe the scope or intent of any provisions or sections of this Second Mortgage.

Section 44. Counterparts. This Second Mortgage may be executed in any number of counterparts, each of which shall be regarded as an original and all of which shall constitute but

one and the same instrument; it shall not be necessary in proving this Second Mortgage to produce or account for more than one such counterpart, or a copy hereof certified by the appropriate recording officer.

Section 45. Joint and Several Liability. If Mortgagor consists of more than one party, each of the undersigned shall be jointly and severally liable for the performance of all of the obligations, covenants and agreements of the Mortgagor contained herein.

Section 46. No Setoffs. Mortgagor acknowledges that the indebtedness secured hereby was incurred in good faith for full value received, and the Mortgagor has no defenses, setoffs or counterclaims thereto.

Section 47. Definitions. Whenever in this instrument the context so admits or requires, the terms "Mortgagor" and "Mortgagee" shall be construed as including their respective heirs, legal representatives, successors and assigns, as the case may be (provided, however, that nothing herein shall be construed to permit the assignment of this Second Mortgage by Mortgagor); and the pronoun as used herein to refer to either Mortgagor or Mortgagee in the third person, singular number and masculine gender, shall be construed as meaning the person, number and gender appropriate to the first designation to the respective parties hereto.

Section 48. Subrogation. Mortgagee is hereby subrogated (a) to the lien(s) of each and every mortgage, lien or other encumbrance on all or any part of the Premises which is fully or partially paid or satisfied out of the proceeds of the Loan, and (b) to the rights of the owner(s) and holder(s) of any such mortgage, lien or other encumbrance. The respective rights under and priorities of all such mortgages, liens or other encumbrances shall be preserved and shall pass to and be held by Mortgagee as security for the Loan, to the same extent as if they had been duly assigned by separate instrument of assignment and notwithstanding that the same may have been cancelled and satisfied of record.

Section 49. Additional Financing. There shall be no additional, secondary, or junior financing on the Mortgaged Property or the direct or beneficial ownership interests in Mortgagor without the consent of Mortgagee, which consent may be withheld at the sole and absolute discretion of the Mortgagee. Notwithstanding anything in this Second Mortgage to the contrary, transfers of direct or indirect interests in the Mortgagor between the direct and indirect members of the Mortgagor shall be permitted.

Section 50. Waiver of Jury Trial. EACH OF THE UNDERSIGNED WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, ANY ASPECT OF THE TRANSACTION IN CONNECTION WITH WHICH THIS DOCUMENT IS BEING GIVEN OR ANY DOCUMENT EXECUTED OR DELIVERED IN CONNECTION WITH SUCH TRANSACTION. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY EACH OF THE UNDERSIGNED AND EACH OF THE UNDERSIGNED ACKNOWLEDGES THAT NO ONE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. EACH OF THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING BEEN REPRESENTED IN CONNECTION WITH THE TRANSACTION WITH RESPECT TO WHICH THIS

DOCUMENT IS BEING GIVEN AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED BY EACH OF THE UNDERSIGNED'S OWN FREE WILL, AND THAT EACH OF THE UNDERSIGNED HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL. EACH OF THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING READ AND UNDERSTOOD THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION.

[***The remainder of this page is intentionally left blank; Signature pages follow***]

IN WITNESS WHEREOF, the Mortgagor and the Mortgagee have executed and delivered this instrument as of the date first above written.

Signed, sealed and delivered in the presence of:

Print Name: David Lopez
Address: 2504 NW 106 Way
Gainesville Fl 32606

Print Name: Tara Tams
Address: 19723 NW CR 236
High Springs FL 32643

**MORTGAGOR**:

NEWBERRY CHRISTIAN COMMUNITY SCHOOL, INC., a Florida not-for-profit corporation

By: Martin D. Pickard
Print Name: MARTIN D. PICKARD
Title: Chairman, Board of Directors

STATE OF FLORIDA

COUNTY OF ALACHUA

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 3rd day of March, 2026, by ______________________, as ____________ of NEWBERRY CHRISTIAN COMMUNITY SCHOOL, INC., a Florida not for profit corporation, on behalf of such entity, who is personally known to me or produced N/A as identification.

(SEAL)

DEBORAH CASON
Notary Public
State of Florida
Comm# HH343516
Expires 1/15/2027

Deborah Cason
Notary Public – State of Florida
Print Name: Deborah Cason
My Commission Expires: 1/15/2027

Signed, sealed and delivered in the presence of:

Print Name: Tara Fams
Address: 19723 NW CR 236
High Springs FL 32643

**Print Name:** BENJAMIN ARMSTRONG.
**Address:** 8720 SW 60th St.
DUNNELLON, FL 34471

**MORTGAGEE:**

James R. Schrader, husband

STATE OF FLORIDA

COUNTY OF ALACHUA

The foregoing instrument was acknowledged before me by means of [__] physical presence or [__] online notarization, this 3rd day of March, 2026, by JAMES R. SCHRADER, a resident of the State of Florida, who is personally known to me or produced N/A as identification.

(SEAL)

DEBORAH CASON
Notary Public
State of Florida
Comm# HH343516
Expires 1/15/2027

Notary Public – State of Florida
Print Name: Deborah Cason
My Commission Expires: 1/15/2027

Signed, sealed and delivered
in the presence of:

______________________________
Print Name: Tara Iams
Address: 19723 NW CR 236
High Springs FL 32643

______________________________
**Print Name:** Benjamin J. Armstrong
**Address:** 18720 SW 60th St.
Dunnellon FL 34431

**MORTGAGEE:**

______________________________
Rachel E. Schrader, wife

STATE OF FLORIDA

COUNTY OF ALACHUA

The foregoing instrument was acknowledged before me by means of [X] physical presence or [__] online notarization, this 3rd day of March, 2026, by RACHEL E. SCHRADER, a resident of the State of Florida, who is personally known to me or produced N/A as identification.

(SEAL)

DEBORAH CASON
Notary Public
State of Florida
Comm# HH343516
Expires 1/15/2027

______________________________
Notary Public – State of Florida
Print Name: Deborah Cason
My Commission Expires: 1/15/2027

# Exhibit "A"

## Legal Description

**TPN: 06041-002-003 (A PORTION OF)**

A PARCEL OF LAND LYING IN SECTION 20, TOWNSHIP 9 SOUTH, RANGE 19 EAST, ALACHUA COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

**COMMENCE** AT THE NORTHWEST CORNER OF SAID SECTION 20 AND RUN SOUTH 00°40'50" EAST, ALONG THE WEST LINE OF SAID SECTION 20, A DISTANCE OF 2402.64 FEET TO A POINT LYING NORTH 00°40'50" WEST, A DISTANCE OF 647.33 FEET FROM THE SOUTHWEST CORNER OF PARCEL 3 AS DESCRIBED IN OFFICIAL RECORDS BOOK 5060, PAGE 2141, PUBLIC RECORDS OF ALACHUA COUNTY, FLORIDA; THENCE DEPARTING SAID WEST LINE OF SAID SECTION 20, RUN SOUTH 88°42'52" EAST, A DISTANCE OF 181.81 FEET; THENCE RUN NORTH 01°17'08" EAST, A DISTANCE OF 15.17 FEET TO THE **POINT OF BEGINNING**; THENCE RUN NORTH 01°17'08" EAST, A DISTANCE OF 95.82 FEET; THENCE RUN NORTH 73°53'50" EAST, A DISTANCE OF 101.79 FEET; THENCE RUN NORTH 16°09'39" WEST, A DISTANCE OF 33.59 FEET; THENCE RUN NORTH 73°50'21" EAST, A DISTANCE OF 47.63 FEET; THENCE RUN NORTH 56°58'52" EAST, A DISTANCE OF 231.63 FEET; THENCE RUN SOUTH 78°02'59" EAST, A DISTANCE OF 131.29 FEET; THENCE RUN SOUTH 11°56'57" WEST, A DISTANCE OF 202.52 FEET; THENCE RUN SOUTH 57°03'23" WEST, A DISTANCE OF 133.54 FEET; THENCE RUN NORTH 78°00'39" WEST, A DISTANCE OF 172.71 FEET; THENCE RUN SOUTH 76°05'02" WEST, A DISTANCE OF 140.18 FEET TO THE **POINT OF BEGINNING.**