11/4/2025 2:24:26 PM Instrument #2025206948 #1 Book:8775 Page:2318
Doc Stamps $1,750.00 Intang Tax $1,000.00

Prepared by and return to:
Zach Simpson, Esq.
The General Counsel Law Firm, PLLC
4489 N Michigan Ave
Miami Beach, FL 33140

# MORTGAGE, SECURITY AGREEMENT AND FIXTURE FILING (SECURING PRESENT AND FUTURE ADVANCES)

## INTRODUCTION

This instrument ("Mortgage"), dated as of the 11th day of July, 2025, is a mortgage, security agreement and fixture filing from **JAMES R. SCHRADER** and **RACHEL SCHRADER,** husband and wife, in their individual capacities as Florida residents with an address of 13226 SW 1st Place, Gainesville, Florida 32669 (herein called the "Mortgagor", "Debtor" and "Obligor") to **DECISION MATRIX, INC.,** a South Dakota corporation, located at 10794 SW 36th Place, Gainesville, Florida 32608 (together with its successors and assigns, herein referred to as "Mortgagee", "Agent" and "Secured Party").

INITIALLY CAPITALIZED TERMS USED HEREIN AND NOT OTHERWISE DEFINED HEREIN SHALL HAVE THE MEANINGS RESPECTIVELY ASCRIBED TO THEM AS SET FORTH IN THE LOAN DOCUMENTS (AS DEFINED BELOW).

THIS MORTGAGE COVERS GOODS THAT ARE OR ARE TO BECOME FIXTURES ON ALL OR ANY PORTION OF THAT CERTAIN PARCEL OF REAL PROPERTY LOCATED IN THE CITY OF DAYTONA BEACH, IN THE COUNTY OF VOLUSIA, IN THE STATE OF FLORIDA, AND WHICH IS MORE PARTICULARLY DESCRIBED ON EXHIBIT A ATTACHED HERETO. THE MORTGAGOR IS THE RECORD OWNER OF SUCH REAL PROPERTY. THIS MORTGAGE SECURES A LOAN AND THE OTHER HEREINAFTER DEFINED DEBT.

**FLORIDA DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $1,750.00 AND INTANGIBLE TAXES IN THE AMOUNT OF $1,000.00, AND RECORDING FEE IN THE AMOUNT OF $316.00 ARE BEING PAID UPON RECORDATION OF THIS INSTRUMENT BY MORTGAGOR WHO IS ALSO REQUIRED TO RECORD THIS MORTGAGE WITHIN FIVE (5) DAYS OF EXECUTING THIS MORTGAGE. SUCH AMOUNTS ARE BASED UPON THE AMOUNT OF $500,000 BEING THE AMOUNT OF THE INDEBTEDNESS ADVANCED AS OF THE DATE HEREOF AND SECURED HEREBY.**

## ARTICLE 1.

## IDENTIFICATION OF THE MORTGAGED PROPERTY

Section 1.1 Mortgage To Secure the Debt. To secure payment of principal, lawful interest and other elements of the Debt described and defined in Article 2 below, and in consideration of $500,000.00 and other valuable consideration paid to Mortgagor, who hereby acknowledges its receipt and that it is reasonably equivalent value for this Mortgage and all other security and rights given by Mortgagor, AND INTENDING TO BE LEGALLY BOUND, Mortgagor hereby grants, bargains, sells, conveys, transfers, assigns, mortgages, sets over, confirms, releases and delivers unto Mortgagee and to its successors and assigns, forever, all of the following property,

whether now owned or hereafter acquired by Mortgagor (singly and collectively, the "Mortgaged Property"):

a) Real Property. All of Mortgagor's right, title and interest in and to all of the real estate and premises located in the City of Daytona Beach, County of Volusia, State of Florida and which is more particularly described on **Exhibit A** attached hereto and made a part hereof, together with (i) all of Mortgagor's estate, right, title and interest in and to all easements and rights-of-way for utilities, ingress or egress to or from said property and (ii) all interests of Mortgagor in and to all streets, rights-of-way, alleys or strips of land adjoining said property (singly and collectively, the "Real Property" or "Property").

b) Buildings and Improvements. All right, title and interest of Mortgagor in and to all existing and all future buildings on the Real Property and all other improvements to or on it, all of which Mortgagor and Mortgagee hereby irrevocably declare to be real estate and part of the Real Property, including all water, sewage and drainage facilities, wells, treatment plants, supply, collection and distribution systems, paving, landscaping and other improvements (singly and collectively, the "Improvements").

c) Fixtures, Equipment and Supplies. All right, title and interest of Mortgagor in and to all fixtures, goods, equipment, supplies and other personal property now or hereafter attached to, or located on the Real Property or the Improvements, or now or hereafter used, or intended or acquired for use for, or in connection with, the construction, maintenance, operation or repair of the Real Property or Improvements, or for the present or future replacement or replenishment of used portions of it, and all related parts, filters and supplies, including, but not limited to, all heating, lighting, cooling, ventilating, air conditioning, environment control, refrigeration, plumbing, incinerating, water-heating, cooking, pollution control, gas, electric, solar, nuclear, computing, monitoring, measuring, controlling, distributing and other equipment and fixtures; and all renewals and replacements of any of the foregoing, all substitutions therefor and all additions and accessions thereto now or hereafter owned by Mortgagor (singly and collectively, the "Fixtures and Equipment"), all of which Mortgagor and Mortgagee hereby also irrevocably declare to be real estate and part of the Real Property.

d) Leases. All right, title and interest of Mortgagor for leases approved in writing by Mortgagee in and to all oral or written agreements between Mortgagor or Mortgagor's predecessor(s) in interest and another person or entity to use or occupy all or any portion of the Real Property or the Improvements, together with any guaranties and security (including without limitation any deposits and any letters of credit, the proceeds of any letters of credit and any letter of credit rights and supporting obligations) for the obligations of any tenant, lessee, lease guarantor, sublessee or other person or entity having the right to occupy, use or manage any part of the Real Property or the Improvements under any such written agreements (which agreements are herein referred to as a "Lease" or the "Leases")

and all of Mortgagor's right, title and interest in and to all rents, revenues, income and profits payable under each Lease now or at any time hereafter existing and all other Rents (as hereinafter defined) (including, without limitation, any amounts that are payable to the landlord as a result of the early termination or surrender of any Lease).

e) Utilities. All right, title and interest of Mortgagor in and to all wastewater, fresh water and other utilities capacity and facilities (the "Utilities Capacity") available or allocable to the Real Property and Improvements or, to the extent the same are assignable by Mortgagor, dedicated to or reserved for them pursuant to any system, program, contract or other arrangement with any public or private utility, and, to the extent the same are assignable by Mortgagor, all related or incidental licenses, rights and interests, whether considered to be real, personal or mixed property, including the right and authority to transfer or relinquish any or all such rights and the right to any credit, refund, reimbursement or rebate for utilities facilities construction or installation or for any reservation fee, standby fee or capital recovery charge promised, provided or paid for by Mortgagor or any of Mortgagor's predecessors or Affiliates (defined below), to the full extent now allocated or allocable to the Real Property or Improvements, plus all additional Utilities Capacity, if any, not dedicated or reserved to the Real Property or Improvements but which is now or hereafter owned or controlled by Mortgagor or by anyone (an "Affiliate", whether a natural person or an entity) who directly or through one or more intermediaries controls, is controlled by or is under common control with Mortgagor, to the full extent that such additional Utilities Capacity is necessary to allow development, marketing and use of the Real Property or Improvements for their highest and best use.

f) After-acquired Property. All estate, right, title and interest acquired by Mortgagor in or to the Real Property, Improvements, Fixtures and Equipment, Leases and Utilities Capacity after execution of this Mortgage.

g) Appurtenances. All right, title and interest of Mortgagor in and to any and all rights and appurtenances (the "Appurtenances") belonging, incident or appertaining to the Real Property, Improvements, Fixtures and Equipment, Leases or Utilities Capacity or any part of them.

h) Oil and Gas. All right, title and interest of Mortgagor in and to all existing and future minerals, oil, gas and other hydrocarbon substances in, upon, under or through the Real Property.

i) Reversions and Remainders. All right, title and interest of Mortgagor in and to any and all rights and estates in reversion or remainder to the Real Property, Improvements, Fixtures and Equipment, Leases, Utilities Capacity or Appurtenances or any part of them.

j) Contractual Rights. To the extent the same are assignable by Mortgagor, all right, title and interest of Mortgagor in and to all contracts (including contracts for the

management, sale or exchange of all or any portion of the Real Property or the Improvements), warranties, franchises, licenses, approvals and permits whether executed, granted or issued by a private person or entity or a governmental or quasi-governmental agency, which are directly or indirectly related to or connected with the Real Property or the Improvements, whether now or at any time hereafter existing, and all amendments and supplements thereto and renewals and extensions thereof at any time made, and all rebates, refunds, escrow accounts and funds, or deposits and all other sums due or to become due under and pursuant thereto and all powers, privileges, options and Mortgagor's other benefits thereunder.

k) Collateral. To the extent not described above in this Section, and to the extent the same is assignable by Mortgagor, all right, title and interest of Mortgagor in and to the Collateral (as hereinafter defined).

l) Other Estates and Interests. All other estates, easements, interests, licenses, approvals, permits, franchises, certificates, development rights, entitlements and other rights, titles, powers or privileges of every kind and character which Mortgagor now has, or at any time hereafter acquires, in and to or in connection with any of the foregoing, including the proceeds from condemnation, or threatened condemnation, and the proceeds of any and all insurance covering any part of the foregoing; and all related parts, accessions and accessories to any of the foregoing and all replacements or substitutions therefor, as well as all other Improvements, Fixtures and Equipment, Leases, Utilities Capacity and Appurtenances now or hereafter placed thereon or accruing thereto.

Section 1.2 Habendum and Title Warranty. To have and to hold the Mortgaged Property, together with every right, privilege, hereditament and appurtenance belonging or appertaining to it, unto the Mortgagee, its successors and assigns forever. Mortgagor represents that Mortgagor is the lawful owner of the Mortgaged Property with good right and authority to mortgage and convey it, and that the Mortgaged Property is free and clear of all liens, claims and encumbrances except only those expressly referred to or described in the owner's title policy delivered in connection with the Mortgagor's purchase of the property prior to the loan evidenced by the Note (as hereinafter defined) (the "Loan") and any other liens and security interests which are either granted or expressly permitted by this Mortgage or by any of the other Loan Documents (collectively, the "Permitted Encumbrances"). Mortgagor hereby binds Mortgagor and Mortgagor's successors and assigns to forever WARRANT and DEFEND the Mortgaged Property and every part of it unto the Mortgagee, its successors and assigns, against the claims and demands of every person whomsoever lawfully claiming or to claim it or any part of it other than holders of Permitted Encumbrances. Provided, however, that these presents are upon the condition that if Mortgagor shall pay or cause to be paid to the Agent, the principal and interest payable under the Note (as hereinafter defined) and all other Debt (as hereinafter defined) at the time and manner stipulated therein and herein, and shall keep, perform and observe all and singular the covenants and promises in the Note and the other Loan Documents (as hereinafter defined) and any renewal, extension or modification thereof, and in this Mortgage, expressed to be kept, performed and observed by and on the part of the Mortgagor,

then this Mortgage and the Loan Documents, and all the interests and rights hereby or therein granted, bargained, sold, aliened, remised, released, conveyed and confirmed, shall cease and terminate and be void, and in such event Mortgagee shall execute, at Mortgagor's reasonable expense, such release of the lien or liens set forth herein and therein and deliver same to Mortgagor; but otherwise this Mortgage shall remain in full force and effect.
This instrument is intended to take effect as a mortgage pursuant to Chapter 697, Florida Statutes and a security agreement pursuant to Chapter 679, Florida Statutes.

ARTICLE 2.

THE DEBT SECURED

Section 2.1 Mortgage to Secure Designated Obligations. This Mortgage secures all of the following present and future debt and obligations:

a) Note. All indebtedness now or hereafter evidenced and to be evidenced by:
   i. the Promissory Note issued by JAMES R. SCHRADER to Mortgagee, of even date herewith (the "Note") in the original face amount of **FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($500,000.00)**, bearing interest at the fixed rate or rates therein stated, principal and interest payable to the order of Mortgagee, on the dates therein stated, with final payment due on the **July 11, 2026** and
   ii. any and all past, concurrent or future modifications, extensions, renewals, rearrangements, replacements and increases of the Note.

b) Intentionally Omitted

c) Other Specified Obligations. All other obligations, if any, of Mortgagor described or referred to in any other place in this Mortgage.

d) Advances and Other Obligations Pursuant to this Mortgage's Provisions. Any and all sums and the interest which accrues on them as provided in this Mortgage which Mortgagee may advance or which Mortgagor may owe Mortgagee pursuant to this Mortgage on account of Mortgagor's failure to keep, observe or perform any of Mortgagor's covenants under this Mortgage.

e) Obligations under Loan Documents. All present and future debts and obligations of Mortgagor under or pursuant to (1) the Note, this Mortgage, the Loan Agreement and any and all other papers and documents (collectively, the "Loan Documents") now or in the future governing, evidencing, guaranteeing or securing or otherwise executed and delivered in connection with all or any part of the debt evidenced by the Note, and (2) all supplements, amendments, restatements, renewals, extensions, rearrangements, increases, expansions or replacements of them.

f) Future Advances. This Mortgage is given to secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or are to be made at the option of the Mortgagee, to the same extent as if such future advances were made on the date of the execution of this Mortgage. The total amount of indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid principal balance so secured at one time shall not exceed $500,000.00, plus interest thereon, and any disbursements made for the payment of taxes, levies, insurance or other liens on the Mortgaged Property, plus interest on such disbursements. The provisions of this paragraph shall not be construed to imply any obligation on Mortgagee to make any future advances to Mortgagor, it being the intention of the parties that any future advances shall be solely at the discretion and option of the Mortgagee in accordance with the terms of the Loan Documents.

g) Related Indebtedness. All other loans or advances not otherwise specifically described in this Section now or hereafter made by Mortgagee for the purpose of paying costs of developing, constructing, improving or operating all or any part of the Mortgaged Property.

It is understood and agreed that this Mortgage shall secure payment of not only the Debt evidenced by the Note but also any and all substitutions, replacements, renewals and extensions of the Note and any and all Debt and obligations arising pursuant to the terms of any of the other Loan Documents, all of which Debt is equally secured with and has the same priority as any amounts advanced as of the date hereof. It is agreed that any future advances made by Mortgagee to or for the benefit of Mortgagor from time to time under this Mortgage or under the other Loan Documents and whether or not such advances are obligatory, or otherwise, and all interest accruing thereon, shall be equally secured by this Mortgage and shall have the same priority as all amounts, if any, advanced as of the date hereof and shall be subject to all of the terms and provisions of this Mortgage.

Section 2.2 Debt Defined. The term "Debt" means and includes the Note and all other debt and obligations described or referred to in Section 2.1. The Debt includes interest and other obligations accruing or arising after commencement of any case under any bankruptcy or similar laws by or against Mortgagor or any other Person or entity now or hereafter primarily or secondarily obligated to pay all or any part of the Debt (Mortgagor and each such other Person or entity being herein called an "Obligor"). The Debt also includes all reasonable attorneys' fees and any other expenses reasonably incurred by Mortgagee in connection with the exercise or defense of any right or remedy of Mortgagee, or the enforcement of any obligation of Mortgagor, under this Mortgage or under any of the other Loan Documents (including, without limitation, the Environmental Indemnification Agreement). All liens, assignments and security interests granted, created, represented or continued by this Mortgage, both present and future, shall be first, prior and superior to any lien, assignment, security interest, charge, reservation of title or other interest heretofore, concurrently or subsequently suffered or granted by Mortgagor or Mortgagor's successors or assigns, except only statutory super priority liens for obligations such

as nondelinquent taxes and those other liens (if any) expressly identified and stated in this Mortgage to be senior.

Section 2.3Security for Future Advances and Future Obligations. It is contemplated that in the future the Mortgagee may make one or more advances of loan proceeds to be evidenced by the Note. This Mortgage shall secure all such future advances and future obligations to the same extent as if such future advances of loan proceeds and future obligations were made on the date of execution of this Mortgage.

ARTICLE 3.
SECURITY AGREEMENT

Section 3.1 Grant of Security Interest. Without limiting any of the provisions of this Mortgage, Mortgagor, as Debtor, and referred to in this Article as "Debtor" (whether one or more) hereby grants to Mortgagee, as Secured Party, and referred to in this Article as "Secured Party" (whether one or more), for its benefit, a security interest in all of Debtor's remedies, powers, privileges, rights, titles and interests (including all of Debtor's power, if any, to pass greater title than it has itself) of every kind and character now owned or hereafter acquired, created or arising in and to the following: (i) the Mortgaged Property (including both that now and that hereafter existing) to the full extent that the Mortgaged Property may be subject to the Uniform Commercial Code of the state or states where the Debtor is deemed located or the Mortgaged Property is situated (the "UCC"); (ii) all equipment, accounts, claims (including commercial tort claims), causes of action, general intangibles, payment intangibles, fixtures, goods, materials, supplies, furnishings, inventory, chattel paper (including electronic chattel paper), letters of credit, letter of credit rights, supporting obligations of every kind and description, instruments, notes, documents, bank deposits, deposit accounts, investment property and all other personal property used, intended or acquired for use on, or in connection with the ownership, leasing, use or operation of, the Mortgaged Property, or otherwise arising from or related in any way to the Mortgaged Property, or in which Debtor otherwise has rights, and all products and proceeds of any of the foregoing, including, without limitation, all security deposits under Leases now or at any time hereafter held by or for Debtor's benefit, all monetary deposits which Debtor has been required to give to any public or private utility with respect to utility services furnished to the Mortgaged Property, all funds, contract rights, accounts receivable, documents, trademarks, trade names (including all derivatives thereof), service marks and symbols now or hereafter used in connection therewith, all permits, licenses, franchises, certificates, development rights, entitlements and other rights, powers and privileges obtained in connection with the Mortgaged Property, and all guaranties and warranties obtained with respect to all improvements, equipment, furniture, furnishings, personal property and components of any thereof located on or installed at the Mortgaged Property; provided, however, that the security interest granted to the Secured Party in this Section, shall at all times have priority, over the rights and interest of Capital City Bank, its successors and assigns, in and to the Mortgaged Property and all such property and Collateral described herein associated with the Mortgaged Property until such time the loan has been paid in full; and (iii) the following described property (to the extent that a security interest therein may be granted by Debtor):

a) Contracts. To the extent the same are assignable by Mortgagor, all contracts and agreements now or hereafter entered into by and between Debtor and any other

party relating in any way to all or any part of the Mortgaged Property or the operation thereof and all revenue, income and other benefits therefrom, including, without limitation, all management agreements, franchise agreements, service contracts, maintenance contracts, equipment leases and personal property leases and all contracts or agreements now or hereafter entered into by and between Debtor and any other party relating to, as well as all right, title and interest of Debtor under any subcontracts providing for, the construction (original, restorative or otherwise) of any improvements to or on any of the Mortgaged Property or the furnishing of any materials, supplies, equipment or labor thereto.

b) Plans. To the extent the same are assignable by Mortgagor, all of the plans, specifications and drawings (including plot plans, foundation plans, floor plans, elevations, framing plans, cross-sections of walls, mechanical plans, electrical plans and architectural and engineering plans and architectural and engineering studies and analyses) heretofore or hereafter prepared by any architect, engineer or other design professional, in respect of any of the Mortgaged Property.

c) Design, etc. Agreements. To the extent the same are assignable by Mortgagor, all agreements now or hereafter entered into with any person or entity in respect of architectural, engineering, design, management, development or consulting services rendered or to be rendered in respect of planning, design, inspection or supervision of the construction, management or development of any of the Mortgaged Property.

d) Bonds. Any completion bond, performance bond and labor and material payment bond and any other bond relating to the Mortgaged Property or to any contract providing for construction of improvements to any of the Mortgaged Property.

e) Books and Records. All books and records describing, used in connection with, or pertaining in any way to the Mortgaged Property or the other Collateral, or otherwise maintained by or on behalf of Debtor or any manager or operator engaged by Debtor in connection with the Mortgaged Property including, without limitation, all files, correspondence, computer programs, printouts, tapes, discs and other records.

Together with all substitutions for, and proceeds of, any of the foregoing received upon the rental, sale, exchange, transfer, collection or other disposition or substitution of it and together with all general intangibles now owned by Debtor or existing or hereafter acquired, created or arising (whether or not related to any of the foregoing property).

All the property described or referred to in this Section is collectively referred to as the "Collateral". The Collateral is included in and is part of the Mortgaged Property.

Section 3.2 Debtor's Covenants Concerning Collateral. Debtor covenants and agrees with Secured Party that in addition to and cumulative of any other remedies granted in this Mortgage

to Secured Party, upon or at any time after the occurrence and during the continuance of any Event of Default (as defined in Article 6 hereof):

a) Secured Party is authorized, in any legal manner and without breach of the peace, to take possession of the Collateral (Debtor hereby WAIVING all claims for damages arising from, or connected with, any such taking to the extent not prohibited by applicable law) and of all books, records and accounts relating thereto and to exercise without interference from Debtor any and all rights which Debtor has with respect to the management, possession, operation, protection or preservation of the Collateral, including the right to sell or rent the same for the account of Debtor and to deduct from such sale proceeds or such rents all reasonable costs, expenses and liabilities of every character incurred by Secured Party in collecting such sale proceeds or such rents and in managing, operating, maintaining, protecting or preserving the Collateral and to apply the remainder of such sales proceeds or such rents to the Debt in such manner as Secured Party may elect. Before any sale, Secured Party may, at its option, complete the processing of any of the Collateral and/or repair or recondition the same to such extent as Secured Party may reasonably deem advisable and any sums reasonably expended therefor by Secured Party shall be reimbursed by Debtor. Secured Party may take possession of Debtor's premises to complete such processing, repairing and/or reconditioning, using the facilities and other property of Debtor to do so, to store any Collateral and to conduct any sale as provided for herein, all without compensation to Debtor. All reasonable costs, expenses, and liabilities incurred by Secured Party in collecting such sales proceeds or such rents, or in managing, operating, maintaining, protecting or preserving such properties, or in processing, repairing and/or reconditioning the Collateral if not paid out of such sales proceeds or such rents as hereinabove provided, shall constitute a demand obligation owing by Debtor and shall bear interest from the date of expenditure until paid at the lesser of the Default Rate (as defined in the Note) or the maximum interest rate allowed under Florida law, all of which shall constitute a portion of the Debt. If necessary to obtain the possession provided for above, Secured Party may invoke any and all legal remedies to dispossess Debtor, including specifically one or more actions for forcible entry and detainer. In connection with any action taken by Secured Party pursuant to this Section, Secured Party shall not be liable for any loss sustained by Debtor resulting from any failure to sell or let the Collateral, or any part thereof, or from other act or omission of Secured Party with respect to the Collateral unless such loss is caused by the willful misconduct or bad faith of Secured Party, nor shall Secured Party be obligated to perform or discharge any obligation, duty, or liability under any sale or lease agreement covering the Collateral or any part thereof or under or by reason of this instrument or the exercise of rights or remedies hereunder.

b) Secured Party may, without notice except as hereinafter provided, sell the Collateral or any part thereof at public or private sale (with or without appraisal or having the Collateral at the place of sale) for cash, upon credit, or for future delivery, and at such price or prices as Secured Party may reasonably deem best,

and Secured Party may be the purchaser of any and all of the Collateral so sold and may apply upon the purchase price therefor any of the Debt and thereafter hold the same absolutely free from any right or claim of whatsoever kind other than Permitted Encumbrances. Upon any such sale, Secured Party shall have the right to deliver, assign and transfer to the purchaser thereof the Collateral so sold. Each purchaser at any such sale and any purchaser at foreclosure shall hold the property sold absolutely free from any claim or right of whatsoever kind, including any equity or right of redemption, stay or appraisal which Debtor has or may have under any rule of law or statute now existing or hereafter adopted other than Permitted Encumbrances. To the extent notice is required by applicable law, Secured Party shall give Debtor written notice at the address set forth herein (which shall satisfy any requirement of notice or reasonable notice in any applicable statute) of Secured Party's intention to make any such public or private sale. Such notice (if any is required by applicable law) shall be personally delivered or mailed, postage prepaid, as required by law and in any event at least ten (10) calendar days before the date fixed for a public sale, or at least (10) calendar days before the date after which the private sale or other disposition is to be made, unless the Collateral is of a type customarily sold on a recognized market, is perishable or threatens to decline speedily in value. Such notice (if any is required by applicable law), in case of public sale, shall state the time and place fixed for such sale or, in case of private sale or other disposition other than a public sale, the time after which the private sale or other such disposition is to be made. Any public sale shall be held at such time or times, within the ordinary business hours and at such place or places, as Secured Party may fix in the notice of such sale. At any sale the Collateral may be sold in one lot as an entirety or in separate parcels as Secured Party may determine. Secured Party shall not be obligated to make any sale pursuant to any such notice. Secured Party may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at any time and place fixed for the sale, and such sale may be made at any time or place to which the same may be so adjourned. In case of any sale of all or any part of the Collateral on credit or for future delivery, the Collateral so sold may be retained by Secured Party until the selling price is paid by the purchaser thereof, but Secured Party shall incur no liability in case of the failure of such purchaser to take up and pay for the Collateral so sold, and in case of any such failure, such Collateral may again be sold upon like notice. Each and every method of disposition described in this Section shall constitute disposition in a commercially reasonable manner. Each Obligor, to the extent applicable, shall remain liable for any deficiency.

c) Secured Party shall have all the rights of a secured party after default under the UCC (whether or not the UCC otherwise applies to the affected Collateral) and in conjunction with, in addition to or in substitution for those rights and remedies:

    i. Secured Party may require Debtor to assemble the Collateral and make it available at a place Secured Party designates which is mutually

convenient to allow Secured Party to take possession or dispose of the Collateral; and

ii. it shall not be necessary that Secured Party take possession of the Collateral or any part thereof before the time that any sale pursuant to the provisions of this Article is conducted and it shall not be necessary that the Collateral or any part thereof be present at the location of such sale; and

iii. before application of proceeds of disposition of the Collateral to the Debt, such proceeds shall be applied to the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and the reasonable attorneys' fees and legal expenses incurred by Secured Party, each Obligor, to the extent applicable, to remain liable for any deficiency; and

iv. the sale by Secured Party of less than the whole of the Collateral shall not exhaust the rights of Secured Party hereunder, and Secured Party is specifically empowered to make successive sale or sales hereunder until the whole of the Collateral shall be sold; and, if the proceeds of such sale of less than the whole of the Collateral shall be less than the aggregate of the indebtedness secured hereby, this Mortgage and the security interest created hereby shall remain in full force and effect as to the unsold portion of the Collateral just as though no sale had been made; and

v. in the event any sale hereunder is not completed or is defective in the opinion of Secured Party, such sale shall not exhaust the rights of Secured Party hereunder and Secured Party shall have the right to cause a subsequent sale or sales to be made hereunder; and

vi. any and all statements of fact or other recitals made in any bill of sale or assignment or other instrument evidencing any foreclosure sale hereunder as to nonpayment of any indebtedness or as to the occurrence of any default, or as to Secured Party having declared all of such indebtedness to be due and payable, or as to notice of time, place and terms of sale and the Collateral to be sold having been duly given, or as to any other act or thing having been duly done by Secured Party, shall be taken as prima facie evidence of the truth of the facts so stated and recited; and

vii. Secured Party may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Secured Party, including the sending of notices and the conduct of sale, but in the name and on behalf of Secured Party; and

viii. demand of performance, advertisement and presence of property at sale are hereby WAIVED and Secured Party is hereby authorized to sell hereunder any evidence of debt it may hold as security for the secured indebtedness. All demands and presentments of any kind or nature are expressly WAIVED by Debtor. Debtor WAIVES the right to require Secured Party to pursue any other remedy for the benefit of Debtor and agrees that Secured Party may proceed against any Obligor

for the amount of the Debt owed to Secured Party or such liability of such Obligor if less than the Debt without taking any action against any other Obligor or any other person or entity and without selling or otherwise proceeding against or applying any of the Collateral in Secured Party's possession.

Section 3.3 UCC Rights Are Not Exclusive. It is the express understanding and intent of the parties that as to any personal property interests subject to Chapter 9 of the UCC of Florida, Secured Party, during the continuance of an Event of Default, may proceed under such UCC of Florida or may proceed as to both real and personal property interests in accordance with the provisions of this Mortgage and its rights and remedies in respect to real property, as permitted under Florida law, and treat both real and personal property interests as one parcel or package of security. Should Secured Party elect to exercise its rights under the UCC as to part of the personal property or fixtures described in this Mortgage, such election shall not preclude Secured Party from exercising any or all of the rights and remedies granted by other applicable law or the other Articles of this Mortgage as to the remaining personal property or fixtures.

Section 3.4 No Other Financing Statements on the Collateral. So long as any amount remains unpaid on the Debt, Debtor will not execute and there will not be filed in any public office any financing statements affecting the Collateral other than financing statements in favor of Secured Party under this Mortgage or in favor of Capital City Bank, its successors or assigns so long as such financing statements are subordinate to Secured Party's interests in the Mortgaged Property, and Collateral described herein , unless prior written specific consent and approval of Secured Party shall have been first obtained.

Section 3.5 Secured Party May File Financing and Continuation Statements. Secured Party is authorized to file this Mortgage as a financing statement, a separate financing statement or financing statements without the signature of Debtor and one or more continuation statements in any jurisdiction where Secured Party reasonably deems it necessary, and Debtor will pay the costs of filing or recording them, in all such public offices at any time and from time to time whenever filing or recording of this Mortgage, any financing statement or any continuation statement is reasonably deemed by Secured Party or its counsel to be necessary or desirable.

Section 3.6 Fixtures. Certain of the Collateral is, or will become, "fixtures" (as that term is defined in the UCC) related to the Real Property, and when this Mortgage is filed for record in the real estate records of the county where such fixtures are situated, it shall also automatically operate as a financing statement and fixture filing upon such of the Collateral which is, or may become, fixtures related to the Real Property. Pursuant to the UCC, the following information is set forth for the purpose of constituting this Mortgage a financing statement to be filed as a fixture filing:

A. Debtor: James R. Schrader and Rachel Schrader,
husband and wife
Address of Debtor: 13226 SW 1st Place,
Newberry, FL 32669
Debtor's Jurisdiction: Alachua County, Florida

B. Secured Party: Decision Matrix, Inc.
Address of Secured Party: 10794 SW 36th Place
Gainesville, Florida 32608
Attention: Dhananjay Sawant, President

C. This financing statement covers goods that are or are to become fixtures related to the Real Property described in the definition "Mortgaged Property."

Section 3.7 Assignment of Non-UCC Personal Property. To the extent that any of the Collateral is not subject to the UCC of the state or states where it is situated or the Debtor deemed located under the UCC, to the extent the same is assignable by Debtor, Debtor hereby assigns to Secured Party all of Debtor's right, title and interest in the Collateral to secure the Debt. Release of the lien of this Mortgage on all of the Mortgaged Property, or any portion thereof, shall automatically terminate this assignment as to the Collateral or as to the portion so released.

Section 3.8 Debtor's Warranties Concerning Collateral. Debtor warrants and represents to Secured Party that Debtor is the legal and equitable owner and, to Mortgagor's knowledge, holder of the Collateral free of any adverse claim and free of any security interest or encumbrance except only for the security interest granted hereby in the Collateral and those other security interests (if any) expressly referred to or described in this Mortgage. Debtor agrees to defend the Collateral and its proceeds against all claims and demands of any person at any time claiming the Collateral, its proceeds or any interest in either other than Permitted Encumbrances. Debtor also warrants and represents that Debtor has not heretofore signed or authorized the filing of any financing statement directly or indirectly affecting the Collateral or any part of it which has not been completely terminated of record, other than those statements in favor of Capital City Bank, its successor and assigns, which shall be subordinate to Secured Party's interests in the Mortgaged Property, and Collateral described herein which true and correct copies of Debtor has delivered or will deliver to Secured Party after they are recorded.

Section 3.9 Certain Powers of Secured Party. Without limiting any other provision of any of the Loan Documents, Debtor hereby authorizes and directs each account debtor and each other person or entity obligated to make payment in respect of any of the Collateral (each a "Collateral Obligor") to pay over to Secured Party, its officers, agents or assigns, upon demand by Secured Party given after and during the continuance of an Event of Default, all or any part of the Collateral without making any inquiries as to the status or balance of the Debt and without any notice to or further consent of Debtor. Debtor hereby releases each Collateral Obligor from all liability to Debtor related to or arising out of any payment it makes to Secured Party pursuant to this paragraph. To facilitate the rights of Secured Party hereunder, Debtor hereby authorizes Secured Party, its officers, employees, agents or assigns, upon the occurrence and during the continuance of any Event of Default:

a) to notify Collateral Obligors of Secured Party's security interest in the Collateral and to collect all or any part of the Collateral without further notice to or further consent by Debtor, and Debtor hereby constitutes and appoints Secured Party the

true and lawful attorney of Debtor (such agency being coupled with an interest), irrevocably, with power of substitution, in the name of Debtor or in its own name or otherwise, to take any of the actions described in the following clauses (b), (c), (d), (e) and (f);

b) to ask, demand, collect, receive, receipt for, sue for, compound and give acquittance for any and all amounts which may be or become due or payable under the Collateral and to settle and/or adjust all disputes and/or claims in good faith directly with any Collateral Obligor and to compromise, extend the time for payment, arrange for payment in installments, otherwise modify the terms of, or release, any of the Collateral, on such terms and conditions as Secured Party may reasonably determine (without thereby incurring responsibility to or discharging or otherwise affecting the liability of Debtor to Secured Party under this Mortgage or otherwise);

c) to direct delivery of, receive, open and dispose of all mail addressed to Debtor and to execute, sign, endorse, transfer and deliver (in the name of Debtor or in its own name or otherwise) any and all receipts or other orders for the payment of money drawn on the Collateral and all notes, acceptances, commercial paper, drafts, checks, money orders and other instruments given in payment or in part payment thereof and all invoices, freight and express bills and bills of lading, storage receipts, warehouse receipts and other instruments and documents in respect of any of the Collateral and any other documents necessary to evidence, perfect and realize upon the security interests and obligations of this Mortgage;

d) in its reasonable discretion to file any claim or take any other action or proceeding in good faith which Secured Party may deem reasonably necessary or appropriate to protect and preserve the rights, titles and interests of Secured Party hereunder;

e) to sign the name of Debtor to drafts against Collateral Obligors, assignments or verifications of any of the Collateral and notices to Collateral Obligors; and

f) to station one or more representatives of Secured Party on Debtor's premises for the purpose of exercising any rights, benefits or privileges available to Secured Party hereunder or under any of the Loan Documents or at law or in equity, including receiving collections and taking possession of books and records relating to the Collateral as applicable.

The powers conferred on Secured Party pursuant to this Section are conferred solely to protect Secured Party's interest in the Collateral and shall not impose any duty or obligation on Secured Party to perform any of the powers herein conferred. No exercise of any of the rights provided for in this Section shall constitute a retention of collateral in satisfaction of the indebtedness as provided for in the UCC.

By its acceptance of this Mortgage, Secured Party agrees that in the event Secured Party sends any notice to a Collateral Obligor to make payments to Secured Party after the occurrence of an

Event of Default, as provided above, promptly after any such Event of Default is cured, Secured Party will send written notice to such Collateral Obligor to resume such making payments to Debtor instead of Secured Party.

Section 3.10 Standard of Care. Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of any of the Collateral in its possession if it takes such action for that purpose as Debtor requests in writing, but failure of Secured Party to comply with such request shall not of itself be deemed a failure to exercise reasonable care, and no failure of Secured Party to take any action not so requested by Debtor shall be deemed a failure to exercise reasonable care in the custody or preservation of any such Collateral.

Section 3.11 Change Terms, Release Collateral. Secured Party may extend the time of payment, arrange for payment in installments, otherwise modify the terms of, or release, any of the Collateral, without thereby incurring responsibility to Debtor or discharging or otherwise affecting any liability of Debtor. Secured Party shall not be required to take steps necessary to preserve any rights against prior parties to any of the Collateral.

Section 3.12 Security Agreement. This Mortgage constitutes, and shall be deemed to be, a "security agreement" for all purposes of the UCC and Mortgagee shall be entitled to all of the rights and remedies of a "secured party" under the UCC.

## ARTICLE 4.
## MORTGAGOR'S COVENANTS

Section 4.1Covenants for the Benefit of Mortgagee. To better secure the Debt, Mortgagor covenants and agrees with the Mortgagee, its successors and assigns, with the intent that the Mortgagee may enforce these covenants, that:

a) Liens, etc. and Remedies Cumulative. No lien, assignment, security interest, guaranty, right or remedy in favor of Mortgagee granted in, secured by or ancillary to this Mortgage shall be considered as exclusive, but each shall be cumulative of all others which Mortgagee may now or hereafter have.

b) Mortgagor Waives Marshalling of Assets and Sale in Inverse Order of Alienation Rights. Mortgagor hereby irrevocably waives all rights of marshalling of assets so as to require the separate sales of any portion of the Mortgaged Property or a specific portion thereof or sale in inverse order of alienation in the event of foreclosure of the Mortgaged Property or any other security and Mortgagor consents and authorizes the sale of the Mortgaged Property as a single unit or parcel or as separate parcels. Notwithstanding the existence of interests in the Mortgaged Property other than that created by this Mortgage, and notwithstanding any other provision of this Mortgage, upon the occurrence and during the continuance of any Event of Default, Mortgagee shall have the right, in Mortgagee's sole discretion, to determine the order in which the Mortgaged Property shall be subjected to the remedies provided in this Mortgage and to

determine the order in which all or any part of the Debt secured by this Mortgage is satisfied from the proceeds realized upon the exercise of the remedies provided in this Mortgage or provided in any of the other Loan Documents. Mortgagor and any person who now has or hereafter acquires any interest in the Mortgaged Property with actual or constructive notice of this Mortgage waives any and all right to require a marshalling of assets or sale in inverse order of alienation in connection with the exercise of any of the remedies provided in this Mortgage or in any of the other Loan Documents or as otherwise provided by applicable law.

c) Mortgagor Will Correct Title Defects. If at any future time any defect (other than the Permitted Encumbrances or any other liens and security interests which are either granted or expressly permitted by this Mortgage or by any of the other Loan Documents) should be found to exist in the title to any of the Mortgaged Property, Mortgagor agrees to promptly commence and thereafter diligently proceed to cure the defect and to defend the title. If any lien or encumbrance (other than the Permitted Encumbrances or other liens and security interests which are either granted or expressly permitted by this Mortgage or by any of the other Loan Documents) junior, equal or superior in rank or priority to the lien of this Mortgage should be discovered or arise at any time in the future then, unless Mortgagee is the only holder of it, or Mortgagee has given specific prior written consent to it, Mortgagor agrees to promptly discharge and remove it from the Mortgaged Property. Mortgagor will notify Mortgagee in writing within five (5) days of the time that Mortgagor has actual knowledge of the filing of any mortgage, lien, security interest, financing statement or other security device whatsoever against the Mortgaged Property.

d) Insurance Requirements. The Mortgagor shall keep the Mortgaged Property insured for the benefit of the Mortgagee throughout the life of the loan against loss or damage by fire and available extended coverage risks, as may be reasonably required by the Mortgagee from time to time which shall include full replacement value. All insurance herein provided for shall be obtained by the Mortgagor (notwithstanding the procurement of other insurance policies by other persons or parties and relating to the Mortgaged Property) and carried in companies approved by the Mortgagee, and all policies, including additional and renewal policies, marked "premiums paid" and containing an agreement by the insurer that the policy shall not be canceled or materially changed without at least thirty (30) days' prior written notice to the Mortgagee (ten (10) days for cancellation due to failure to pay premiums), the policy, or any duplicate original policy, shall be delivered to the Mortgagee, and all renewal policies, including additional and renewals, modifications and extensions thereof, shall be deposited with the Mortgagee throughout the life of the loan and shall be payable, in case of loss or damage, to the Mortgagee as the first mortgagee, and shall contain the standard non-contributing mortgagee clause entitling the Mortgagee to collect all proceeds payable under all such insurance, as well as standard waiver of subrogation endorsement, and waiver of other endorsements, as the Mortgagee may require, all to be in form acceptable to the Mortgagee. In the event of any

loss, the Mortgagor will give immediate notice to the Mortgagee. The Mortgagor hereby authorizes the Mortgagee, at its option, to collect, adjust and compromise any losses under any of the insurance policies, to endorse the Mortgagor's name on any document or instrument in payment of any insured loss and, after deducting the costs of collection, to apply the proceeds, at the Mortgagee's sole option, as follows: (i) as a credit upon the indebtedness secured hereby, whether or not the same shall be then due and payable, in which event, the lien of this Mortgage shall be affected only by a reduction thereof in any amount equal to the amount so applied as a credit, or (ii) to repairing or restoring the Mortgaged Property or any part thereof, in which event, the Mortgagee shall not be obligated to see to the proper application thereof, nor shall the amount so released or used be deemed a payment on any indebtedness secured hereby. The Mortgagor shall obtain, carry and maintain Comprehensive General Liability Insurance covering the Mortgaged Property in an amount of no less than One Million Dollars ($1,000,000) bodily injury and/or property damage, per occurrence. Mortgagor shall provide Mortgagee with a Certificate of Insurance containing a provision designating the Mortgagee as an additional insured party and providing for not less than thirty (30) days written notice (ten (10) days for cancellation due to failure to pay premiums) to the Mortgagee prior to any material change or cancellation of Liability Insurance.

Notwithstanding the foregoing and provided no Event of Default is then existing, and further provided that Mortgagee is satisfied (in its commercially reasonable judgment) that there is no legal impediment to the building and improvements being rebuilt or repaired and that there are sufficient insurance proceeds or other funds available from Mortgagor for reconstruction, Mortgagee shall receive all insurance proceeds to be held to pay for the cost of the improvements on the Mortgaged Property in installments as the work progresses, the time and amount of each advance and upon such other terms relating to such reconstruction as are satisfactory to the Mortgagee in its reasonable discretion.

If the Real Property is located in an area designated by the Federal Emergency Management Agency or the Flood Disaster Protection Act of 1973 (P.L. 93-234) as being in a "special flood hazard area" or as having specific flood hazards, whether now or at any time hereafter, Mortgagor shall also furnish Mortgagee with flood insurance policies which conform to the requirements of said Flood Disaster Protection Act of 1973 and the National Flood Insurance Act of 1968, as either may be amended from time to time. The amounts of any such insurance coverages shall be in an amount equal to the full insurable value and shall be maintained thereafter at all times in an amount such that Mortgagor will not be deemed a co-insurer under applicable insurance laws, regulations, policies or practices. Renewals of such policies shall be so delivered before any such insurance shall expire in accordance with the Loan Documents. If Mortgagor shall fail to provide any such required insurance, or shall fail to replace any of the same within ten (10) days after being notified that the insuring company is no longer approved by Mortgagee, or if any such insurance is cancelled or lapses without replacement, Mortgagee may, at its option, procure the same in such amounts as Mortgagee may reasonably determine and the cost thereof together with interest thereon at the lesser of the Default Rate or the maximum interest rate allowed under Florida law, provided for in the Note per annum from the

date of expenditure by Mortgagee to the date of repayment by Mortgagor to Mortgagee shall be repaid by Mortgagor to Mortgagee on demand and shall be part of the Debt secured hereby.

e) Intentionally Omitted.

f) Intentionally Omitted.

g) Mortgagee Not Obligated to Require, Provide or Evaluate Insurance. Mortgagee shall have no duty to Mortgagor or anyone else to either require or provide any insurance or to determine the adequacy or disclose any inadequacy of any insurance.

h) Mortgagee May Elect to Insure Only its Own Interests. If Mortgagee elects at any time or for any reason to purchase insurance relating to the Mortgaged Property, it shall have no obligation to cause Mortgagor or anyone else to be named as an insured, to cause Mortgagor's or anyone else's interests to be insured or protected or to inform Mortgagor or anyone else that its interests are uninsured or underinsured.

i) Mortgagor Will Correct Defects, Provide Further Assurances and Papers. Upon Mortgagee's written request, Mortgagor will promptly correct any defect which hereafter may be discovered in the text (as is reasonably agreed to by Mortgagor and Mortgagee) or the execution or acknowledgment of the Note, this Mortgage or any other Loan Document or in the description of any of the Mortgaged Property, and will deliver such further assurances and execute such additional papers as in the opinion of Mortgagee or its legal counsel shall be reasonably necessary, proper or appropriate (1) to better convey and assign to the Mortgagee all the Mortgaged Property intended or promised to be conveyed or assigned or (2) to properly evidence or give notice of the Debt or its intended or promised security, provided that such requested further assurances and additional papers do not adversely alter the rights and obligations of Mortgagor that were intended to be provided under this Mortgage.

j) Mortgagor Will Pay Taxes and Impositions and Furnish Receipts. At Mortgagor's own cost and expense, Mortgagor agrees to pay and discharge all taxes, assessments, other governmental charges, water and sewer charges, maintenance charges, permit fees, impact fees, development fees, capital recovery charges, utility reservation and standby fees and all other similar and dissimilar impositions of every kind and character ("Impositions") charged, levied, assessed or imposed by any governmental agency or authority against any interest in any of the Mortgaged Property before they become delinquent. Upon request from Mortgagee, Mortgagor agrees to furnish due proof of such payment to Mortgagee promptly after payment and before delinquency.

k) Mortgagor to Pay Monthly Tax and Insurance Deposits on Request. To the extent that Mortgagor is required to do so pursuant to the terms of Article 8 hereof,

Mortgagor agrees to pay the monthly tax and insurance premium deposits required by Article 8 hereof and to provide Mortgagee any additional sums needed to pay the taxes and insurance premiums for the Mortgaged Property when due.

l) Mortgagor Will Maintain Mortgaged Property and Will Not Remove Improvements; Mortgagor Will Not Grant Any Liens, etc. Mortgagor agrees to keep, preserve and maintain all elements of the Mortgaged Property in a good state of repair and condition and to keep all equipment and stores of supplies needed for its proper and full operation on the Mortgaged Property and in good operating condition. Mortgagor will not tear down, damage or attempt to remove, demolish or materially alter or enlarge any elements of the Mortgaged Property, or construct any new Improvements, without Mortgagee's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed; provided. Mortgagor shall have the right, without such consent, to remove and dispose of, free from the lien, assignments and security interests of this Mortgage, such Fixtures and Equipment as from time to time become worn out or obsolete or surplus, provided that simultaneously with, or promptly after such removal any such equipment shall be replaced, if needed, with other equipment of a value at least equal to that of the replaced equipment and free from any title retention or security agreement or other encumbrance and from any reservation of title, and by such removal and replacement Mortgagor shall be deemed to have subjected such equipment to the lien, assignments and security interests of this Mortgage. Other than the security interest in favor of Capital City Bank, its successor and assigns which shall be subordinate to Secured Party's interests in the Mortgaged Property, and Collateral described herein, and in the Loan Agreement, Mortgagor shall not grant, join in or consent to any lien, security interest, easement, license, use or other charge or interest covering or affecting all or any part of the Mortgaged Property or initiate, join in and consent to the change in any private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Mortgaged Property or any part thereof without the prior written consent of Mortgagee.

m) Mortgagor Will Protect Mortgaged Property from Mechanic's Liens. Mortgagor agrees to promptly, prior to delinquency, pay all bills for labor and materials incurred in connection with the Mortgaged Property and to prevent the fixing of any lien against any part of the Mortgaged Property, even if it is inferior to this Mortgage, for any such bill(s) which may be legally due and payable.

n) Mortgagee's Inspection and Discussion Rights. Mortgagor agrees to permit Mortgagee and its agents, representatives and employees, at all reasonable times, upon reasonable notice and subject to the rights of tenants, to go upon, examine, inspect and remain on the Mortgaged Property, to assist and cooperate, and require Mortgagor's employees, agents and contractors as applicable to cooperate, with Mortgagee and to furnish to Mortgagee on reasonable request all pertinent information concerning the physical and economic condition, development and

operation of the Mortgaged Property. Mortgagee may discuss the Mortgaged Property directly with any of Mortgagor's authorized agents, representatives or employees.

o) Mortgagee May Grant Releases without Impairing Other Collateral or Rights. At all times, Mortgagee shall have the right to release any part of the Mortgaged Property or any other security from this Mortgage or any other security instrument or device without releasing any other part of the Mortgaged Property or any other security, without affecting Mortgagee's lien, assignment or security interest as to any property or rights not released and without affecting or impairing the liability of any maker, guarantor or surety on the Note or other obligation.

p) Legal Compliance, Governmental Notices. Mortgagor will operate the Mortgaged Property and conduct its business in compliance with all requirements of governmental and quasi-governmental authorities having jurisdiction over Mortgagor or the Mortgaged Property and Mortgagor will comply with and punctually perform all of the material covenants, agreements and obligations imposed upon it or the Mortgaged Property. Mortgagor will furnish to Mortgagee copies of all notices and reports received or sent by Mortgagor to or from any governmental or quasi-governmental authority within five (5) Business Days of the receipt thereof.

q) Notice of Condemnation and Other Proceedings. Promptly upon obtaining actual knowledge of the institution of any proceedings for the condemnation of the Mortgaged Property or any portion thereof, or any other proceedings arising out of injury or damage to the Mortgaged Property, or any portion thereof, Mortgagor will notify Mortgagee in writing of the pendency of such proceedings. Mortgagee may participate in any such proceedings, and Mortgagor shall from time to time deliver to Mortgagee all instruments requested by it to permit such participation. Mortgagor shall, at its expense, diligently prosecute any such proceedings, and shall consult with Mortgagee, its attorneys and experts, and cooperate with them in the carrying on or defense of any such proceedings.

Section 4.2 Mortgagor Agrees to Pay or Reimburse Mortgagee's Expenses. To the extent not prohibited by applicable law and to the extent provided in the Loan Documents, Mortgagor will pay all costs and expenses and reimburse Mortgagee for any and all expenditures of every character actually incurred or expended from time to time, regardless of whether an Event of Default shall have occurred.

Section 4.3 Intentionally Omitted

Section 4.4 Intentionally Omitted

Section 4.5Lease Approval. Mortgagee's approval shall be required for any lease which approval may be granted or withheld in Mortgagee's sole discretion, and Mortgagee's approval shall be required for any future leases or lease modifications (each an "Approved Lease").

Section 4.6 Intentionally Omitted.

Section 4.7 Intentionally Omitted.

Section 4.8 Intentionally Omitted.

Section 4.9 Intentionally Omitted.

## ARTICLE 5.
## MORTGAGOR'S REPRESENTATIONS AND WARRANTIES

To induce Mortgagee to extend financial accommodations, including credit under the Note, Mortgagor makes the warranties and representations set forth in this Article.

Section 5.1 Enforceability. Mortgagor has duly and validly executed, issued and delivered this Mortgage and any other Loan Documents to which Mortgagor is a party. This Mortgage and each other Loan Document to which Mortgagor is a party is in proper legal form for prompt enforcement and is Mortgagor's valid and legally binding obligation, enforceable in accordance with its terms.

Section 5.2 Title. Mortgagor has good and marketable title to the Mortgaged Property, free and clear of any lien or security interest except only for the Permitted Encumbrances and liens and security interests which are either granted or expressly permitted by this Mortgage or any other Loan Documents. Except as otherwise expressly permitted by this Mortgage, the lien and security interest of this Mortgage will constitute valid and perfected first and prior liens and security interests on the Mortgaged Property, subject to no other liens, security interests, charges or encumbrances whatsoever except for Permitted Encumbrances. The Mortgaged Property is free from damage caused by fire or other casualty.

Section 5.3 Incorporation by Reference. All representations and warranties set forth in the Loan Documents are hereby incorporated herein by reference.

## ARTICLE 6.
## RELEASE, DEFAULTS AND REMEDIES

Section 6.1Release for Full Payment and Performance. Subject to the automatic reinstatement provisions of Section 9.19 below, this Mortgage shall terminate and be of no further force or effect upon full payment of the Debt, complete performance of all of the obligations of the Obligors under the Loan Documents. Upon full payment and performance as aforesaid and upon written request of Mortgagor, Mortgagee shall fully release from this Mortgage (in recordable form), without recourse or warranty, the Mortgaged Property or portions thereof then held hereunder.

Section 6.2Events of Default. The occurrence of any of the following events shall constitute an "Event of Default" (herein so called) under this Mortgage:

a) any part of the Debt is not paid when due, whether by lapse of time or acceleration or otherwise, unless the default is fully cured within any applicable grace, notice or cure period agreed to by Mortgagee in the Loan Documents (if any).

b) Mortgagor fails to perform, observe or comply with, or defaults under, any of the terms, covenants, conditions or provisions of this Mortgage or any Loan Document (other than any such failure or default described in one of the other subparagraphs of this Article) unless the failure or default is fully cured within thirty (30) days after written notice thereof by Mortgagee to Mortgagor; provided, however with the exception of any default related to the payment of any amounts owed, that if such failure or default is capable of being cured but cannot reasonably be cured within such thirty (30) day period, no Event of Default shall be deemed to have occurred if the Mortgagor commences steps to cure such failure or default promptly within such thirty (30) day period and thereafter diligently prosecutes such cure to completion unless such amount is owed to Mortgagee, and in such case Mortgagor shall be in default pursuant to the terms of the loan.

c) Mortgagor shall claim, or any court shall find or rule, that Mortgagee does not have a valid lien on the Real Property, the Improvements, the Fixtures and Equipment, the Utilities Capacities or any other security which may have been provided by Mortgagor.

d) the occurrence of any other "Default" or any similar event (however denominated) under any Loan Document, including, without limitation, the occurrence of any "Event of Default" (as therein defined) under the Loan Documents and the continuance thereof beyond any applicable grace, notice and cure period.

Section 6.3 Remedies. During the continuance of any Event of Default, all Debt in its entirety shall, at the option of Mortgagee, become immediately due and payable without presentment, demand, notice of intention to accelerate or notice of acceleration, or other notice of any kind, all of which are hereby expressly waived, and the liens and security interests created or intended to be created hereby shall be subject to foreclosure, repossession and sale in any manner provided for herein or provided for by law, as Mortgagee may elect, and Mortgagee may exercise any and all other rights and remedies granted pursuant to this Mortgage, the Note or any of the other Loan Documents and any other rights that may be available to Mortgagee at law or in equity, in such order and in such manner as Mortgagee may, in its sole and exclusive judgment, determine.

Section 6.4 Remedies After Event of Default. During the continuance of any Event of Default, Mortgagee may proceed by suit or suits at law or in equity or by any other appropriate proceeding or remedy to: (a) enforce payment of the Note or the performance of any term hereof or any other rights; (b) foreclose this Mortgage and to sell, as an entirety or in separate lots or parcels, the Mortgaged Property under the judgment or decree of court or courts of competent jurisdiction; (c) collect all rents, issues, profits, revenues, income and other benefits from the

Mortgaged Property; (d) seek the appointment of a receiver to enter upon and take possession of the Mortgaged Property and to collect all rents, issues, profits, revenues, income and other benefits thereof and apply the same as the court may direct and such receiver shall have all rights and powers permitted under law; and (e) pursue any other remedy available to it including, but not limited to , taking possession of the Mortgaged Property without notice or hearing to Mortgagor to the extent allowed by law.

Section 6.5 Application of Foreclosure Sale Proceeds. The proceeds of any sale of the Mortgaged Property, and any rents and other amounts collected by Mortgagee from Mortgagee's holding, leasing, operating or making any other use of the Mortgaged Property, shall, except as may otherwise be required by applicable law, be applied by Mortgagee (or by the receiver, if one is appointed) to the extent that funds are available therefrom in the following order of priority:

a) To Expenses and Senior Obligation Payments. First, to the payment of the reasonable costs and expenses of taking possession of the Mortgaged Property and of holding, maintaining, using, leasing, repairing, equipping, manning, improving, marketing and selling it, including (i) receivers' fees, (ii) court costs, (iii) attorneys' and accountants' fees, (iv) costs of advertisement and brokers' commissions and (v) payment of any and all Impositions, liens, security interests or other rights, titles or interests superior to the lien and security interest of this Mortgage, whether or not then due and including any prepayment penalties or fees and any accrued or required interest (except, in the case of foreclosure proceeds, those senior liens and security interests, if any, subject to which the Mortgaged Property was sold and without in any way implying Mortgagee's consent to the creation or existence of any such prior liens);

b) To Other Obligations Owed to Mortgagee. Second, to the payment of all amounts, other than the principal balance and accrued but unpaid interest, which may be due to Mortgagee under the Note or any other Loan Document, together with interest thereon as provided therein;

c) To Accrued Interest on the Debt. Third, to the payment of all accrued but unpaid interest due on the Debt;

d) To Debt Principal. Fourth, to the payment of the principal balance on the Debt and the principal owing under this Mortgage and any other Loan Document, irrespective of whether then matured, and if it is payable in installments and not matured, then to the installments in such order as Mortgagee shall elect;

e) To Junior Lienholders. Fifth, to the extent funds are available therefor out of the sale proceeds or any rents and, to the extent known by Mortgagee, to the payment of any debt or obligation secured by a subordinate mortgage on or security interest in the Mortgaged Property; and

f) To Mortgagor. Sixth, to Mortgagor, its successors and assigns, or to whomsoever may be lawfully entitled to receive such proceeds.

Section 6.6 Foreclosure. During the continuance of any Event of Default, Mortgagee may institute, notwithstanding the provisions of any law or act of assembly to the contrary, any appropriate action or proceeding to foreclose this Mortgage as if any and all redemption periods had fully expired, and may proceed therein to judgment and execution for all sums secured by this Mortgage. Mortgagee may, with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien of this Mortgage for the balance of the Debt not then due.

Section 6.7 Mortgagee May Abandon and Recommence Sale. If Mortgagee should commence the foreclosure sale of the Mortgaged Property, Mortgagee may at any time before the sale is completed abandon the sale, and may at any time or times thereafter again commence foreclosure in accordance with applicable law; or, irrespective of whether foreclosure is commenced, Mortgagee may at any time after an Event of Default institute suit for collection of the Debt or foreclosure of this Mortgage. If Mortgagee should institute suit for collection of the Debt or foreclosure of this Mortgage, Mortgagee may at any time before the entry of final judgment dismiss it and sell the Mortgaged Property in accordance with the provisions of this Mortgage.

Section 6.8 Multiple Sales; Mortgage Continues in Effect. No single sale or series of sales hereunder and no foreclosure shall extinguish the lien under this Mortgage except with respect to the items of property sold, nor shall it extinguish, terminate or impair Mortgagor's contractual obligations under this Mortgage, but such lien shall exist for so long as, and may be exercised in any manner by law or in this Mortgage provided as often as, the circumstances require to give Mortgagee full relief under this Mortgage, and such contractual obligations shall continue in full force and effect until final termination and satisfaction of this Mortgage.

Section 6.9 Mortgagee May Bid and Purchase. Mortgagee shall have the right to become the purchaser at any foreclosure sale, being the highest bidder, and credit given upon all or any part of the Debt shall be the exact equivalent of cash paid for the purposes of this Mortgage.

Section 6.10 Specific Performance. Mortgagee may institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein or in the Note or any other Loan Document.

Section 6.11Judgment on the Note. To the extent permitted by applicable law, Mortgagee may recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage.

Section 6.12 Right to Enter. During the existence of an Event of Default or at any time after the acceleration of the Debt or at any time after commencement of any legal proceeding under this Mortgage during the existence of an Event of Default, and subject to applicable state law, Mortgagee shall have the right forthwith, at its election, and without further notice or demand (except as otherwise specifically provided in this Mortgage or the other Loan Documents) and without the commencement of any action to foreclose this Mortgage, to enter

immediately upon and take possession of the Mortgaged Property, or any part thereof, without further consent or assignment by Mortgagor, and to do, execute and perform any act, deed, matter or thing whatsoever that ought to be done, executed and performed in and about or with respect to the Mortgaged Property and the leasing, management, or operation thereof as fully as Mortgagor might do, including, without limitation, the right to institute summary proceedings against any lessee who shall fail to comply with the provisions of the applicable lease, with the right to lease the Mortgaged Property, or any part thereof, and to collect and receive all of the rents, issues and profits, and all other amounts past due or to become due to Mortgagor by reason of its ownership of the Mortgaged Property and to apply the same, after the payment of all necessary charges and expenses in connection with the operation of the Mortgaged Property (including, without limitation, any managing agent's commission, at the option of Mortgagee), on account of the Debt. If Mortgagor or any other person claiming by, through or under it (other than any lessee whose tenancy Mortgagee has agreed not to disturb or whose tenancy Mortgagee, in its sole and uncontrolled discretion, is willing not to disturb), are occupying all or any part of the Mortgaged Property, it is hereby agreed that Mortgagor and such other persons shall either immediately surrender possession of the Mortgaged Property to Mortgagee and vacate the premises so occupied or pay a reasonable rental for the use thereof, monthly in advance, to Mortgagee.

Section 6.13 Right to Receiver. During the existence of an Event of Default or at any time after the acceleration of the Debt or at any time after commencement of any legal proceedings under this Mortgage, Mortgagee may, at Mortgagee's election, make application to a court of competent jurisdiction for appointment of a receiver of the Mortgaged Property, as a matter of strict right, without notice to Mortgagor except as required by applicable law and without regard to the adequacy of the value of the Mortgaged Property for the repayment of the Debt, and Mortgagor hereby irrevocably consents to such an appointment. Any receiver shall have all the usual powers and duties of receivers in similar cases, including the full power to possess, rent, maintain, repair and operate the Mortgaged Property upon such terms and conditions as may be approved by the court, and shall apply the rents realized in the same manner and order as foreclosure proceeds in accordance with Section 6.5 above.

Section 6.14 Tenants at Will. Mortgagor agrees for itself and its successors and assigns, that if any of them shall hold possession of the Mortgaged Property or any part thereof subsequent to foreclosure hereunder, Mortgagor, or the parties so holding possession, shall become and be considered as tenants at will of the purchaser or purchasers at such foreclosure sale; and any such tenant failing or refusing to surrender possession upon demand shall be guilty of forcible detainer and shall be liable to such purchaser or purchasers for rental on said premises, and shall be subject to eviction and removal, forcible or otherwise, with or without process of law, all damages which may be sustained by any such tenant as a result thereof being hereby expressly waived.

Section 6.15 Payment of Rents. Upon receipt of notice from Mortgagee and during the continuance of an Event of Default, Mortgagor shall pay all rents, income and profits of any kind arising from Mortgagor's interest in the Leases and any renewals or extensions thereof for the use and occupation of all or any portion of the Real Property or the Improvements (including, without limitation, any amounts that are payable as a result of the early termination or surrender

of any Leases) (collectively, the "Rents") thereafter received by Mortgagor from the Mortgaged Property to Mortgagee and to the extent not paid shall hold such amounts as trust funds for the benefit of Mortgagee as applicable and such Rents shall be deemed "cash collateral" of Mortgagee under Title 11 of the United States Code.

Section 6.16 WAIVER OF JURY TRIAL. TO THE MAXIMUM EXTENT NOW OR HEREAFTER PERMITTED BY APPLICABLE LAW, IN CONNECTION WITH ANY ACTION, SUIT OR OTHER LEGAL PROCEEDING BY MORTGAGEE TO OBTAIN JUDGMENT FOR THE PRINCIPAL OF, OR INTEREST ON, THE NOTE AND OTHER SUMS REQUIRED TO BE PAID BY MORTGAGOR PURSUANT TO ANY PROVISIONS OF THE NOTE OR THIS MORTGAGE, OR OF ANY OTHER NATURE IN AID OF THE ENFORCEMENT OF THE NOTE, OR OF THIS MORTGAGE, MORTGAGOR AND MORTGAGEE (BY ITS ACCEPTANCE HEREOF) EACH WAIVES TRIAL BY JURY AND WILL ENTER ITS VOLUNTARY APPEARANCE IN SUCH ACTION, SUIT OR PROCEEDING.

Section 6.17 Non-exclusive Remedies. No remedy conferred upon or reserved to Mortgagee herein is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given thereunder or now or hereafter existing at law or in equity or by statute. No delay or omission of Mortgagee to exercise any right or power occurring upon any Event of Default shall impair any such right or power or shall be construed to be a waiver thereof or an acquiescence therein; and every power and remedy given by this Mortgage to Mortgagee may be exercised from time to time and as often as may be deemed expedient by Mortgagee. Nothing in this Mortgage or in the Note shall affect the obligation of Mortgagor to pay the principal of, and interest on, the Note in the manner and at the time and place therein respectively expressed.

Section 6.18 Treatment of Leases. Mortgagee may, at its option exercisable at any time, unilaterally subordinate (or cause to be subordinated) the lien of this Mortgage to the leasehold estate under any Lease. Except to the extent that the leasehold estate under a Lease is subordinate to this Mortgage and is terminated by its foreclosure, upon the issuance of any deed or deeds pursuant to a foreclosure of this Mortgage, all right, title and interest of Mortgagor in and to the Lease shall, by virtue of this instrument and such deed or deeds, thereupon vest in and become the absolute property of the grantee or grantees in such deed or deeds without any further act or assignment by Mortgagor. Mortgagor hereby irrevocably appoints Mortgagee as its agent and attorney-in-fact (which power of attorney is with full power of substitution and delegation and is coupled with an interest) to execute, acknowledge and deliver all instruments of assignment for further assurance in favor of such grantee or grantees in such deed or deeds as may be necessary or desirable for such purpose.

Section 6.19Assignment of Leases. The assignment of leases and rents if such property is ever leased or rented contained in this Mortgage is intended to, and does, constitute an assignment of rents contemplated in Florida Statutes, Section 697.07. Upon the occurrence and during the continuance of any Event of Default, Mortgagee shall be entitled to the remedies provided in said Florida Statutes, Section 697.07, in addition to all other rights and remedies,

whether procedural or substantive, in effect at the time of execution or enforcement of this Mortgage.

ARTICLE 7.
MORTGAGEE'S RIGHT TO PERFORM MORTGAGOR'S OBLIGATIONS

Section 7.1 Mortgagee May Elect to Perform Defaulted Obligations. During the continuation of any Event of Default, Mortgagee (in Mortgagor's name or in Mortgagee's own name) may perform the agreements, covenants or obligations of Mortgagor under this Mortgage, or cause them to be performed for Mortgagor's account and at Mortgagor's expense, but shall have no obligation to perform any of them or cause them to be performed. Any and all expenses thus incurred or paid by Mortgagee shall be Mortgagor's obligations to Mortgagee due and payable within ten (10) days after demand, and each shall bear interest from the date of demand until the date Mortgagor repays it to Mortgagee, at the lesser of (a) the maximum interest rate allowed under Florida law , or (b) the Default Rate. Upon making any such payment or incurring any such expense, Mortgagee shall be fully and automatically subrogated to all of the rights of the person, corporation or body politic receiving such payment. Any amounts owing by Mortgagor to Mortgagee pursuant to this or any other provision of this Mortgage shall automatically and without notice be and become a part of the Debt and shall be secured by this and all other instruments securing the Debt. The amount and nature of any such expense and the time when it was paid shall be fully established by the affidavit of Mortgagee or any of Mortgagee's officers or agents or by the affidavit of any original, substitute or successor Mortgagee acting under this Mortgage. Without notice to Mortgagor or any other person or entity, the Default Rate shall automatically fluctuate upward and downward as and in any amount by which the rate of interest permitted by such applicable law and the rate of interest as provided for in the Note for interest on past due principal fluctuates.

Section 7.2 Exercise of Rights is Not Waiver or Cure of Default. The exercise of the privileges granted to Mortgagee in this Article shall in no event be considered or constitute a cure of the default or a waiver of Mortgagee's right at any time after an Event of Default to declare the Debt to be at once due and payable, but is cumulative of such right and of all other rights given by this Mortgage, the Note and the other Loan Documents and of all rights given Mortgagee by law.

ARTICLE 8.
TAX AND INSURANCE DEPOSITS

Upon occurrence of any Event of Default, or if such proof is requested in writing by Mortgagee, Mortgagor fails to provide Mortgagee with proof of payment within thirty (30) days after the due date of any such taxes, Mortgagor agrees to deposit with Mortgagee in a Tax Escrow Account each month an amount equal to one-twelfth (1/12) of the aggregate of (i) the next succeeding premiums (or payments in respect of them, if premiums are financed) on all insurance policies which Mortgagor is required by or pursuant to this Mortgage to maintain on the Mortgaged Property, and (ii) the amount of the next succeeding annual tax payments, assessment installments, maintenance charges and other Impositions to become due and payable with respect to the Mortgaged Property, as reasonably estimated by Mortgagee, plus, with the first of such monthly deposits, an additional month's share (a twelfth) of such premiums, taxes and other

Impositions for each month less than twelve remaining before the next payment thereof falls due. At least fifteen (15) days before the date on which any such insurance premium (or payment in respect of it, if premiums are financed) or any of the Impositions must be paid to avoid delinquency, Mortgagor agrees to deliver to Mortgagee (promptly after Mortgagee's request) a statement or statements showing the amount of the premium (or payment in respect of it, if premiums are financed) or Impositions required to be paid and the name and mailing address of the concern or authority to which it is payable and, at the same time, Mortgagor agrees to deposit with Mortgagee such amounts as will, when added to the amount of such deposits previously made and then remaining available for the purpose, be sufficient to pay when due such insurance obligations or Impositions. Mortgagee shall have the right to and will, if, as and when requested by Mortgagor to do so, apply all funds in the Tax Escrow Account in payment of such insurance obligations and Impositions. Once Mortgagee applies such funds in the Tax Escrow Account in payment of insurance obligations and Impositions, in the event that there are excess funds remaining in the Tax Escrow Account and provided there exists no Default at the time in question, such excess funds shall be applied to (and thus shall reduce) the payments required under this Article 8 during the following calendar year.

## ARTICLE 9.
## GENERAL AND MISCELLANEOUS PROVISIONS

Section 9.1 Debt May be Changed without Affecting this Mortgage. Any of the Debt may be extended, rearranged, renewed, increased or otherwise changed in any way, and any part of the security described in this Mortgage or any other security for any part of the Debt may be waived or released without in any way altering or diminishing the force, effect or lien of this Mortgage, and the lien, assignment and security interest granted by this Mortgage shall continue as a prior lien, assignment and security interest on all of the Mortgaged Property not expressly so released, until the final termination and discharge of this Mortgage.

Section 9.2 Security is Cumulative. No other security now existing or hereafter taken to secure any part of the Debt or the performance of any obligation or liability whatever shall in any manner affect or impair the security given by this Mortgage. All security for any part of the Debt and the performance of any obligation or liability shall be taken, considered and held as cumulative.

Section 9.3 Usury Law. The Note and this Mortgage are subject to the express condition that at no time shall Mortgagor be obligated or required to pay interest or the principal balance due under the Note at a rate which could subject the Mortgagee to either civil or criminal liability as a result of being in excess of the maximum interest rate which Mortgagor is permitted by applicable law to contract or agree to pay. If by the terms of the Note or this Agreement, Mortgagor is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of such maximum rate, the *Applicable Interest Rate or the Default Rate*, as the case may be, shall be deemed to be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder.

Section 9.4 Mortgagor Waives All Stay, Extension, Appraisal and Redemption Rights. Mortgagor agrees that it will not at any time insist upon or plead or in any manner whatever claim or take the benefit or advantage of any stay or extension law now or at any time hereafter in force in any locality where the Mortgaged Property or any part thereof may or shall be situated, nor will Mortgagor claim, take or insist on any benefit or advantage from any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property or any part thereof before any sale or sales thereof to be made pursuant to any provision of this Mortgage, or to decree of any court of competent jurisdiction, nor after any such sale or sales made pursuant to any provision of this Mortgage, or to decree of any court of competent jurisdiction, nor after any such sale or sales will Mortgagor claim or exercise any right conferred by any law now or at any time hereafter in force to redeem the property so sold or any part of it, and, to the extent not prohibited by applicable law, Mortgagor hereby WAIVES all benefit and advantage of any such law or laws and WAIVES the appraisal of the Mortgaged Property or any part of it and covenants that Mortgagor will not hinder, delay or impede the execution of any power in this Mortgage granted and delegated to the Mortgagee, but that Mortgagor will suffer and permit the execution of every such power as though no such law or laws had been made or enacted.

Section 9.5Intentionally Omitted.

Section 9.6 Due on Sale. It shall be an Event of Default if any part of the Mortgaged Property should be directly or indirectly transferred, conveyed or mortgaged, voluntarily or involuntarily.

Section 9.7 Condemnation. If before final termination of this Mortgage, all or a portion of the Mortgaged Property is taken for public or quasi-public purposes, either through eminent domain or condemnation proceedings, by voluntary conveyance under threat of condemnation with Mortgagee's express written consent and joinder or otherwise, Mortgagor hereby agrees that any and all sums of money awarded or allowed as damages, payments in lieu of condemnation awards or otherwise to or for the account of the owner of the Mortgaged Property or any portion of it on account of such taking shall be paid and delivered to Mortgagee, and they are hereby assigned to Mortgagee, and shall be paid directly to Mortgagee. All proceeds of condemnation awards or proceeds of sale in lieu of condemnation with respect to the Mortgaged Property and all judgments, decrees and awards for injury or damage to the Mortgaged Property shall be applied, first, to reimburse Mortgagee for all costs and expenses, including reasonable attorneys' fees incurred in connection with collection of such proceeds and, second, the remainder of said proceeds shall be applied, as provided in the Loan Documents. Mortgagor agrees to execute such further assignments of all such proceeds, judgments, decrees and awards as Mortgagee may request. Mortgagee is hereby authorized, in the name of Mortgagor, to execute and deliver valid acquittances for, and to appeal from, any such judgment, decree or award. Mortgagee shall not be, in any event or circumstances, liable or responsible for failure to collect, or exercise diligence in the collection of, any such proceeds, judgments, decrees or awards.

Section 9.8 Mortgagee's Right to Obtain Appraisals. Mortgagee (by its officers, employees, directors or agents) may, at any time and from time to time, contract for the services of an appraiser approved by Mortgagee in its sole discretion to perform a written appraisal of the

Mortgaged Property (or such parts of it as are designated in Mortgagee's request). Any such appraisal may be performed at any time or times upon reasonable prior notice to Mortgagor, as long as it does not unreasonably interfere with Mortgagor's or the tenants' use of the Mortgaged Property. Specifically, any such appraiser is authorized to enter upon, and Mortgagor shall allow such appraiser access to, the Mortgaged Property as may be necessary in the opinion of such appraiser to perform its professional services, subject to the rights of the tenants under their leases. Mortgagor will also furnish such appraiser such historical and operational information regarding the Mortgaged Property as may be reasonably requested by such appraiser to facilitate preparation of an appraisal and will make available for meetings on reasonable prior notice with such appraiser appropriate personnel having knowledge of such matters. Mortgagor will permit Mortgagee and its agents, independent contractors, representatives, employees and officers at all reasonable times and upon reasonable prior notice to go upon, examine, inspect and remain on the Mortgaged Property for any lawful purpose and will furnish to Mortgagee on request all pertinent information in regard to the development, operation, use and status of the Mortgaged Property. Mortgagor shall only be responsible for the payment of the cost of such appraisals to the extent provided in the Loan Documents.

Section 9.9 Notices. All notices requests, reports or other communications (each, a "Notice") required hereunder or under the Note or any Other Security Document shall be in writing and shall be deemed to have been properly given (i) upon delivery, if delivered in person, (ii) one (1) Business Day after having been deposited for overnight delivery with any reputable overnight courier service, or (iii) three (3) Business Days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by certified mail, postage prepaid, return receipt requested, addressed as follows:

If to Mortgagor:
James R. Schrader and Rachel Schrader
13226 SW 1st Place
Newberry, Florida 32669

If to Mortgagee:
Decision Matrix, Inc.
10794 SW 36th Place
Gainesville, Florida 32608
Attn: Dhananjay Sawant, President
with copies by regular mail or such hand delivery or facsimile transmission to:
The General Counsel Law Firm
4489 N. Michigan Avenue
Miami Beach, Florida 33140
Attn: Zach Simpson, Esq.

Any such addressee may change its address and/or fax number for such notices to such other address in the United States as such addressee shall have specified by written notice given as set forth above. All periods of notice shall be measured from the deemed date of delivery.
In the case of any notice given to Mortgagor in connection with the Mortgage, the foregoing methods of giving notice shall not be exclusive, but instead any notice may be given to

Mortgagor in any manner permitted or recognized by applicable law and the affidavit of any person having knowledge of the facts concerning the giving of any such notice shall be conclusive evidence of the fact of service of such notice.

Section 9.10 Mortgagee and Mortgagor. The term "Mortgagee" as used in this Mortgage shall mean and include the Agent and its successors and assigns from time to time as agent under the Loan Documents and upon the appointment of any such successor agent other than the named Mortgagee, effective as of the time of such appointment, the term "Mortgagee" shall mean such successor agent. The term "Mortgagor, its successors and assigns" shall also include the heirs and legal representatives of each Mortgagor who is a natural person and the receivers, conservators, custodians and trustees of each Mortgagor, provided that except as permitted under the Loan Documents, Mortgagor may not assign or delegate any of its or his rights, interests or obligations under this Mortgage, the Note or any other Loan Document without Mortgagee's express prior written consent, and any attempted assignment or delegation without it shall be void or voidable at Mortgagee's election.

Section 9.11 Article, Section and Exhibit References, Numbers and Headings. References in this Mortgage to Articles, Sections and Exhibits refer to Articles, Sections and Exhibits in and to this Mortgage unless otherwise specified. The Article and Section numbers, Exhibit designations and headings used in this Mortgage are included for convenience of reference only and shall not be considered in interpreting, applying or enforcing this Mortgage.

Section 9.12 Exhibits Incorporated. All exhibits, annexes, appendices and schedules referred to any place in the text of this Mortgage are hereby incorporated into it at that place in the text, to the same effect as if set out there verbatim.

Section 9.13 "Including" is Not Limiting. Wherever the term "including" or a similar term is used in this Mortgage, it shall be read as if it were written, "including by way of example only and without in any way limiting the generality of the clause or concept referred to."

Section 9.14 Gender. The masculine and neuter pronouns used in this Mortgage each includes the masculine, feminine and neuter genders.

Section 9.15 Severability. If any provision of this Mortgage is held to be illegal, invalid or unenforceable under present or future laws, the legality, validity and enforceability of the remaining provisions of this Mortgage shall not be affected thereby, and this Mortgage shall be liberally construed so as to carry out the intent of the parties to it. Each waiver in this Mortgage is subject to the overriding and controlling rule that it shall be effective only if and to the extent that (a) it is not prohibited by applicable law and (b) applicable law neither provides for nor allows any material sanctions to be imposed against Mortgagee for having bargained for and obtained it.

Section 9.16 Any Unsecured Debt is Deemed Paid First. If any part of the Debt cannot lawfully be secured by this Mortgage, or if the lien, assignments and security interest granted pursuant to this Mortgage cannot be lawfully enforced to pay any part of the Debt, then and in

either such event, at the option of Mortgagee, all payments on the Debt shall be deemed to have been first applied against that part of the Debt.

Section 9.17 Noun, Pronoun and Verb Numbers. When this Mortgage is executed by more than one person, corporation, partnership, limited liability company, joint venture, trust or other legal entity, it shall be construed as though "Mortgagor" were written "Mortgagors" and as though the pronouns and verbs in their number were changed to correspond, and in such case, (a) each of Mortgagors shall be bound jointly and severally with one another to keep, observe and perform the covenants, agreements, obligations and liabilities imposed by this Mortgage upon the "Mortgagor", (b) a release of one or more Persons, corporations or other legal entities comprising "Mortgagor" shall not in any way be deemed a release of any other Person, corporation or other legal entity comprising "Mortgagor" and (c) a separate action hereunder may be brought and prosecuted against one or more of the Persons, corporations or other legal entities comprising "Mortgagor" without limiting any liability of or impairing Mortgagee's right to proceed against any other Person, corporation or other legal entity comprising "Mortgagor".

Section 9.18 Homestead Disclaimer. Mortgagor warrants and represents that at the time of execution and delivery of this Mortgage, no part of the Mortgaged Property forms any part of any property owned, used or claimed by Mortgagor or Mortgagor's spouse or children either as a residence or a business homestead, or as otherwise exempt from forced sale under any applicable law.

Section 9.19 Payments Returned. Mortgagor agrees that, if at any time all or any part of any payment previously applied by Mortgagee to the Debt is or must be returned by Mortgagee, or is recovered from Mortgagee, for any reason (including the order of any bankruptcy court), this Mortgage shall automatically be reinstated to the same effect as if the prior application had not been made, and, in addition, Mortgagor hereby agrees to indemnify Mortgagee against, and to save and hold Mortgagee harmless from, any required return by Mortgagee, or recovery from Mortgagee, of any such payment because of its being deemed preferential or is otherwise refundable to Mortgagor (or its estate) under applicable bankruptcy, receivership or insolvency or similar laws, or for any other reason.

Section 9.20 Amendments in Writing. This Mortgage shall not be changed orally but shall be changed only by agreement in writing signed by Mortgagor and Mortgagee. Any waiver or consent with respect to this Mortgage shall be effective only in the specific instance and for the specific purpose for which given.

Section 9.21Governing Law. This Mortgage and the obligations arising hereunder shall be governed by and construed in accordance with the laws of the State of Florida and any applicable laws of the United States of America, except that at all times the provisions for the creation, perfection and enforcement of the liens and the security interests created pursuant to this Mortgage shall be governed by the laws of the State of Florida.

Section 9.22Consent to Jurisdiction. AS PART OF THE CONSIDERATION FOR NEW VALUE RECEIVED, AND REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF MORTGAGOR, MORTGAGEE AND

MORTGAGOR HEREBY CONSENT AND AGREE THAT (EXCEPT AS OTHERWISE MANDATORILY REQUIRED BY APPLICABLE LAW IN ORDER TO ENFORCE MORTGAGEE'S RIGHTS UNDER THIS MORTGAGE) THE STATE COURTS OF ALACHUA COUNTY OR THE SUPERIOR COURT OF ALACHUA COUNTY, FLORIDA, OR AT MORTGAGOR'S OR MORTGAGEE'S OPTION, THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA, GAINESVILLE DIVISION, SHALL HAVE NON-EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN MORTGAGOR AND MORTGAGEE PERTAINING TO THIS MORTGAGE OR ANY OF THE OTHER LOAN DOCUMENTS OR TO ANY MATTER ARISING OUT OF OR RELATED THERETO. MORTGAGOR EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, MORTGAGOR HEREBY WAIVES ANY OBJECTION WHICH MORTGAGOR MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. NOTHING IN THIS MORTGAGE SHALL BE DEEMED OR OPERATE TO AFFECT THE RIGHT OF MORTGAGEE TO SERVE LEGAL PROCESS IN ANY MANNER PERMITTED BY LAW, OR TO PRECLUDE THE ENFORCEMENT BY MORTGAGEE OF ANY JUDGMENT OR ORDER OBTAINED IN SUCH FORUM OR THE TAKING OF ANY ACTION TO ENFORCE THIS MORTGAGE OR ANY SUCH JUDGMENT IN ANY OTHER APPROPRIATE FORUM OR JURISDICTION.

Section 9.23 Waiver. Mortgagor hereby waives and relinquishes unto, and in favor of, Mortgagee, all benefit under all laws, now in effect or hereafter passed, to relieve Mortgagor in any manner from the obligations assumed and the obligations for which this Mortgage is security or to reduce the amount of said obligations to any greater extent than the amount actually paid for the Mortgaged Property, in any judicial proceedings upon said obligations, or upon this Mortgage.

Section 9.24 Waiver of Right of Offset. No portion of the Debt secured by this Mortgage shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or crossclaim, whether liquidated or unliquidated, which Mortgagor may have or claim to have against Mortgagee.

Section 9.25 No Agricultural Property. Mortgagor represents and warrants to Mortgagee that none of the Mortgaged Property is or will be "agricultural property" or "agricultural personal property" as those terms may be defined under applicable law.

Section 9.26 Recording Fees and Mortgage Taxes. Except where otherwise prohibited by law, Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment, and subsequent release of this Mortgage and the Note, or any mortgage supplemental hereto, and any instrument of further assurance provided for in the Loan Documents; and Mortgagor will pay all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the same. Mortgagor shall

hold harmless and indemnify Agent, and their successors and assigns against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

Section 9.27 Modification. This Mortgage and all of the other Loan Documents are subject to modification. To the extent permitted by law, this Mortgage secures all modifications from the date upon which this Mortgage was originally recorded, including future loans and extensions of credit and changes in the interest rate, due date, amount or other terms and conditions of any of the Debt. This Mortgage may be modified from time to time without affecting the priority of the lien created hereby.

Section 9.28 Judicial Foreclosure. It shall be lawful for Mortgagee, at its election, upon the occurrence of an Event of Default, to commence an action for the foreclosure of this Mortgage and to proceed thereon to judgment and execution for the recovery of all sums payable by Mortgagor pursuant to the terms of this Mortgage without further stay, any law, usage or custom to the contrary notwithstanding.

Section 9.29 Rights with Respect to Junior Encumbrances. To the extent permitted by law, any person or entity purporting to have or take a junior deed of trust, mortgage or other lien upon the Mortgaged Property or any interest therein shall be subject to the rights of Mortgagee to amend, modify, increase, vary, alter or supplement this Mortgage, the Note and any of the other Loan Documents and to extend the maturity date of the Debt secured hereby and to increase the amount of the Debt secured hereby and to waive or forbear the exercise of any of their rights and remedies hereunder or under any of the other Loan Documents and to release any collateral or security for the Debt secured hereby, in each and every case without obtaining the consent of the holder of any such junior lien and without the lien or security interest of this Mortgage losing its priority over the rights of any such junior lien.

Section 9.30 No Credit for Taxes. Mortgagor will not claim or demand or be entitled to receive any credit or credits on the principal portion of the Debt, or on the interest payable thereon, for so much of the taxes assessed against the Mortgaged Property as is equal to the tax rate applied to the principal indebtedness due on this Mortgage or any part thereof, and no deduction shall be made or claimed from the taxable value of the Mortgaged Property by reason of this Mortgage.

Section 9.31 Final Agreement. This Mortgage is subject to the other Loan Documents (to which reference is hereby made) which together represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

Section 9.32 After-Acquired Property. To the extent permitted by law, all property acquired by Mortgagor after the date of this Mortgage which by the terms of this Mortgage shall be subject to the lien and the security interest created hereby, shall immediately upon the acquisition thereof by Mortgagor and without further conveyance, mortgage or assignment become subject to the liens and security interests created by this Mortgage. Nevertheless, Mortgagor shall execute, acknowledge, deliver and record or file, as appropriate, any and all such further deeds to secure debt, mortgages, security agreements, financing statements,

assignments and assurances as Agent shall reasonably require for accomplishing the purposes of this Mortgage.

Section 9.33 No Strict Construction. The Parties agree that this Agreement is the result of negotiations between the Parties and has been reviewed by counsel for each Party (or that each Party has had the opportunity to consult counsel and has knowingly waived such right). Accordingly, this Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the Party drafting an instrument or causing any instrument to be drafted.

[Mortgagor's Signature on Following Page]

IN WITNESS WHEREOF, Mortgagor has duly signed, sealed and executed this mortgage in the presence of the subscribing witnesses the day and year first above written.

"MORTGAGOR"

James R. Schrader

James R. Schrader, Husband

Rachel E. Schrader

Rachel Schrader, Wife

Address: 13226 SW 1st Place
Newberry, Florida 32669

WITNESS #1

Trisha-Ann Martin Trishann Martin

Address: 6519 W Newberry Rd.
Gainesville, FL 32605

WITNESS #2

LaLana Dillard LaLana Dillard

Address: 4525 Wolverine Lane
Keystone Heights, FL. 32656

STATE OF FLORIDA
COUNTY OF ALACHUA

The foregoing instrument was acknowledged before me this 11th day of July, 2025, by means of □ physical presence or □ online notarization, by JAMES R. SCHRADER and RACHEL SCHRADER, husband and wife. Said persons *(check one)* ☑ are personally known to me, or ☐ have produced a valid driver's license as identification.

Judith Hernandez

Notary Public, State and County Aforesaid

Name: Judith Hernandez

My Commission Expires: 8/1/2026

My Commission Number is: HH 296325

Notary Public State of Florida
Judith Hernandez
My Commission HH 296325
Expires 8/1/2026

**Exhibit A**
**Legal Description**

That certain property in MAP OF SEABREEZE PARK lying West of Halifax Avenue between the North and the South lines of the South 47.5 feet of Lot 21, Block 6, produced to the Halifax River. Said property refers to MAP OF SEABREEZE PARK SUBDIVISION, as per map recorded in Map Book 6, Page 2-A, Public Records of Volusia County, Florida.

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 3678453 25 PG(S)
3/10/2026 1:49 PM
BOOK 5260 PAGE 1
J.K. JESS IRBY, ESQ.
Clerk of the Court, Alachua County, Florida
ERECORDED Receipt # 1314953
Doc Stamp-Mort: $5,173.00
Doc Stamp-Deed: $0.00
Intang. Tax: $2,955.98

This Instrument Prepared By
And After Recording Return To:

Richard I. Withers, Esq.
Withers Harvey, P.A.
1120 NW 8th Avenue
Gainesville, Florida 32601

# SECOND MORTGAGE AND SECURITY AGREEMENT

THIS SECOND MORTGAGE AND SECURITY AGREEMENT (the "Second Mortgage"), dated as of March 3, 2026, is executed and delivered by NEWBERRY CHRISTIAN COMMUNITY SCHOOL, INC., a Florida not-for-profit corporation (the "Mortgagor"), having an address of 1520 NW 34th Street, Gainesville, Florida 32605, to JAMES R. SCHRADER and RACHEL E. SCHRADER, husband and wife, residents of the State of Florida (collectively, the "Mortgagee"), having an address of 13226 SW 1st Place, Newberry, Florida 32669, under the circumstances summarized in the following recitals:

A. Mortgagor executed that certain Promissory Note dated as of May 23, 2025, in favor of CAPITAL CITY BANK, a Florida corporation (the "Original Lender") in the amount of Four Million and 00/100 Dollars ($4,000,000.00) (the "Original Note") and as secured by that certain Mortgage made by Mortgagor in favor of Original Lender dated as of May 23, 2025, and recorded in Official Records Book 5215, Page 1500 (Instrument #3626209), of the Public Records of Alachua County, Florida (the "Original Mortgage").

B. On even date herewith, Mortgagor executed that certain Promissory Note and Security Agreement (the "Second Note") in favor of Mortgagee in the amount of One Million Four Hundred Seventy-Seven Thousand Nine Hundred Ninety-One and 00/100 Dollars ($1,477,991.00) (the "Second Loan").

C. This Second Mortgage secures the payment of the unpaid principal balance of the Second Note, together with interest as therein provided and all modifications, amendments, replacements, renewals and extensions of the Second Note and any other obligations of the Mortgagor pursuant to said Second Note, this Second Mortgage and any other documents or instruments evidencing or securing the Second Loan and any partial or total extensions, renewals, modifications, amendments, restatements or substitutions thereof or therefor (collectively referred to herein as the "Second Loan Documents").

**Note to Recording Clerk:** This Mortgage and Security Agreement (this "**Mortgage**") secures that certain Promissory Note and Security Agreement dated on or about the date hereof, executed by Mortgagor in favor of Mortgagee (as each is defined this Mortgage), in the original principal amount of $1,477,991.00. Accordingly, Florida documentary stamp taxes in the amount of $5,173.00 and Florida non-recurring intangible taxes in the amount of $2,955.99 are being paid upon the recordation of this Mortgage.

D. It is intended that this Second Mortgage may secure unpaid balances of advances made after this Second Mortgage is delivered to the Clerk of the Circuit Court of Alachua County, Florida.

NOW, THEREFORE, in consideration of the Second Loan made by Mortgagee to Mortgagor, as evidenced by the Second Note, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and for the purpose of securing: (i) all payments to be made by the Mortgagor pursuant to the Second Note, the Second Mortgage and/or any other Second Loan Document, (ii) any future or additional advances made at the option of Mortgagee as contemplated herein, (iii) any amounts advanced or costs incurred by the Mortgagee for the protection of the Mortgaged Property (as hereinafter defined) or the enforcement of this Second Mortgage, the Second Note and/or any other Second Loan Document, (iv) any other cost or expense which, by the terms of this Second Mortgage, the Second Note and/or any other Second Loan Document, may be the subject of reimbursement to Mortgagee by Mortgagor, and (v) the performance and observance of each covenant and agreement of the Mortgagor contained in this Second Mortgage, the Second Note and/or any other Second Loan Document, the Mortgagor does hereby grant, bargain, sell, convey, mortgage, assign, grant a security interest in and transfer unto the Mortgagee, its successors and assigns, the following property whether now owned or hereafter acquired (the "Mortgaged Property"):

(a) The land legally described in **Exhibit "A"** attached hereto and incorporated herein (the "Land"), together with all buildings, structures, additions, improvements, facilities and fixtures and other property, now or hereafter located in, upon or under or based at, such land (the "Premises");

(b) All easements, rights of way or use, licenses, privileges, franchises, servitudes, tenements, hereditaments and appurtenances now or hereafter belonging or in any way appertaining thereto, including, without limitation, all right, title and interest of the Mortgagor in any street, alley, sidewalk, open or proposed, and in front of, adjoining or adjacent or contiguous thereto, and all rights and estates in reversion or remainder;

(c) All leases, rentals, revenues, payments, repayments, income, charges, moneys, issues and profits thereof;

(d) The proceeds from any insurance or condemnation award pertaining thereto, or compensation in lieu thereof, including but not limited to any award or compensation for the alteration of the grade of any street or any other injury to or decrease in the value of the Mortgaged Property;

(e) All of Mortgagor's right, title, interest, estate, claim or demand, either at law or in equity, in and to all architectural, engineering and similar plans, specifications, drawings, renderings, profiles, studies, shop drawings, reports, plats, permits, surveys and the like, and all sewer taps, permits and allocations, agreements for utilities, bonds, sureties and the like, relating to the Premises or appurtenant facilities erected or to be erected upon or about the Land;

(f) All proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, the proceeds of insurance;

(g) All contracts and other agreements for the sale of any of the Mortgaged Property or any part thereof or interest therein now or hereafter entered into by Mortgagor, and all right, title and interest of Mortgagor thereunder, including, without limitation, all right, title and interest of Mortgagor in cash or securities deposited thereunder to secure performance by the contract purchasers of their obligations thereunder, and including, without limitation, the right to receive and collect the proceeds thereof;

(h) All of Mortgagor's rights, powers and privileges (but not the burdens and obligations) under any construction contract or architect's (or engineer's) agreement now or hereafter entered into by Mortgagor relating to the Mortgaged Property, and all bonds and surety agreements related thereto;

(i) All contracts and other agreements, if any, relating to the sale, lease, brokerage, development, management, maintenance and/or operation of the Mortgaged Property (or of any part thereof or interest therein) or otherwise pertaining thereto, including without limitation franchise agreements;

(j) All rights of Mortgagor under any commitment for any other loan secured by the Mortgaged Property or any part thereof or interest of Mortgagor therein;

(k) All right, title and interest of Mortgagor in all tradenames, trademarks and/or servicemarks hereinafter used exclusively in connection with the Mortgaged Property and all contract rights and contracts, franchise agreements, general intangibles, actions and rights of action, deposits, prepaid expenses, permits, licenses owned by Mortgagor and used in connection with or related to the Mortgaged Property;

(l) All proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, the proceeds of insurance;

(m) All machinery, apparatus, equipment, fittings, fixtures, inventory, appliances, furniture and articles of personal property of every kind and nature whatsoever, other than consumable goods, now or hereafter located in or upon said Premises or any part thereof owned by Mortgagor and used or useable in connection with any present or future operation of said Premises (herein collectively called "Equipment"), including, but without limiting the generality of the foregoing, all heating, lighting, laundry, incinerating, plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, communications, air conditioning and air cooling equipment or apparatus, engines, pipes, pumps, tanks, motors, conduits, switchboards, elevators, escalators, shades, awnings, screens, storm doors and windows, stoves, wall beds, refrigerators, attached cabinets, partitions, ducts and compressors, and all of the right, title and interest of the Mortgagor in and to any Equipment which may be subject to any conditional bill of sale, chattel mortgage or security interest superior to the lien or security interest established by this Second Mortgage; and

(n) All proceeds, additions, replacements and substitutions of and to any of the foregoing.

TO HAVE AND TO HOLD the Mortgaged Property unto the Mortgagee, its successors and assigns, forever;

AND, IT IS HEREBY COVENANTED that this Second Mortgage is given and the Mortgaged Property is to be held upon and subject to the terms, provisions and conditions herein set forth.

Section 1. Representations and Warranties. The Mortgagor represents and warrants that (i) the Mortgagor is lawfully seized with good and marketable title in fee simple absolute to the Mortgaged Property free and clear of all liens and encumbrances whatsoever, except for the first-position lien and security interest of Original Mortgage, taxes and assessments general and special not delinquent, zoning ordinances and except for those easements, restrictions, encumbrances, and matters, if any, appearing as of record as of the date of this Second Mortgage, and such other matters, if any, approved in writing by Mortgagee (hereinafter "Permitted Prior Encumbrances"), and has good and marketable title to all personal property included in the Mortgaged Property, subject only to the Permitted Prior Encumbrances; (ii) it has full right, power and authority to bargain, sell, mortgage and convey the Mortgaged Property as herein provided; and (iii) except as expressly provided above, it will warrant and defend to the Mortgagee such title to the Mortgaged Property and the lien and interest of the Mortgagee therein and thereon against all claims and demands whatsoever and will maintain the priority of the lien of, and the security interest granted by, this Second Mortgage upon the Mortgaged Property until the Mortgagor shall be entitled to defeasance as provided herein.

Section 2. After Acquired Property. All property of every kind affixed to the Premises or which may become fixtures acquired by the Mortgagor after the date hereof, and located at, on or under the Premises, shall, without further mortgage, conveyance or assignment, become subject to the lien of this Second Mortgage as fully as though now owned by the Mortgagor and specifically described herein. Nevertheless, the Mortgagor shall take such actions and execute and deliver such additional instruments as the Mortgagee shall reasonably require to further evidence or confirm the subjection to the lien of this Second Mortgage of any such property.

Section 3. Payment of Indebtedness. Mortgagor will pay the indebtedness secured hereby in the manner and at the times provided herein and/or in the Second Note or any other Second Loan Document, and, until the indebtedness secured hereby is fully paid, will comply with all the covenants, terms and provisions contained herein, and in any other Second Loan Documents.

Section 4. Loan Advances. This Second Mortgage secures the unpaid balances of any advances made under the Second Note, this Second Mortgage or any other Second Loan Document after this Second Mortgage has been delivered to the appropriate County officer for recordation. It is also expressly provided for and agreed that this Second Mortgage secures said future advances, whether such advances are obligatory or to be made at the option of Mortgagee or otherwise, to the same extent as if such future advances were made on the date of the execution of this Second Mortgage although there may be no advance made at the time of execution of this Second Mortgage or no indebtedness outstanding at the time any advance is made. The total amount of indebtedness that may be secured by this Second Mortgage may decrease or increase from time to time; provided, however, that the total unpaid balance secured at any time shall not exceed two (2) times the face amount of the Second Note, plus interest thereon, and advances made by Mortgagee pursuant to this Second Mortgage, with interest on

such advances at the Default Rate, including without limitation, for the payment of taxes, assessments, insurance premiums, costs for the protection of the Mortgaged Property, reasonable attorneys' fees (whether or not litigation has been commenced and in all trial, bankruptcy and appellate proceedings) and court costs incurred in the collection of any or all of such sums of money and interest thereon. It shall be an Event of Default hereunder if Mortgagor shall file a notice pursuant to Section 697.04(1)(b), Florida Statutes, limiting the amount of indebtedness that may be secured by this Second Mortgage. All future advances shall be made within twenty (20) years from the date hereof or such longer period of time as may be authorized by Florida law, and all indebtedness created by such future advances shall be secured hereby. All provisions of this Second Mortgage shall apply to any future advances made pursuant to the provisions of this Section. Nothing herein contained shall limit the amount secured by this Second Mortgage if such amount is increased by advances made by Mortgagee as herein elsewhere provided.

Section 5. Hazardous Substances.

(a) Mortgagor hereby warrants and represents that neither Mortgagor nor, to the best of Mortgagor's knowledge, after due inquiry, any other person or entity has ever generated, used or disposed of any Hazardous Substance (as defined below) from or in connection with the Mortgaged Property or used the Mortgaged Property as a storage facility for any Hazardous Substance.

(b) Mortgagor hereby agrees to indemnify Mortgagee and hold Mortgagee harmless from and against any and all losses, liabilities, including strict liability, damages, injuries, expenses, including reasonable attorneys' and paralegals' fees, costs of any settlement or judgment and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against, Mortgagee by any person or entity or governmental agency for, with respect to, or as a direct or indirect result of, the presence, usage, storage, generation or disposal on or under or in connection with the Mortgaged Property, or the escape, seepage, leakage, spillage, discharge, emission, discharging or release from the Mortgaged Property, of any Hazardous Substance (including, without limitation, any losses, liabilities, including strict liability, damages, injuries, expenses, including reasonable attorneys' and paralegals' fees, costs of any settlement or judgment or claims asserted or arising under the Comprehensive Environmental Response, Compensation and Liability Act, under any so called Federal, state or local "superfund" or "superlien" law, or under any statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to or imposing liability, including strict liability, or standards of conduct concerning any Hazardous Substance), regardless of whether within the control of Mortgagee.

(c) For purposes of this Section 5, "Hazardous Substance" shall mean and include those elements or compounds which are from time to time contained in the list of hazardous substances adopted by the United States Environmental Protection Agency ("EPA") and the list of toxic pollutants or contaminates designated by Congress or the EPA or defined by any other Federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct concerning, any hazardous, toxic or dangerous waste, substance or material as now or at any time hereafter in effect (including, without limitation, Chapters 252, 253, 373, 376 and 403 Florida Statutes).

(d) If Mortgagor receives any notice of (i) the happening of any event involving the spill, release, leak, seepage, discharge or cleanup of any Hazardous Substance on or in connection with the Mortgaged Property or in connection with operations thereon or (ii) any complaint, order, citation or notice with regard to air emissions, water discharges, or any other environmental, health or safety matter affecting or related to the Mortgaged Property (an "Environmental Complaint") from any person or entity (including without limitation the EPA), then Mortgagor shall immediately notify Mortgagee orally and in writing of said notice.

(e) Mortgagee shall have the right but not the obligation, and without limitation of Mortgagee's rights under this Second Mortgage, to enter onto the Mortgaged Property or to take such actions as Mortgagee deems necessary or advisable to cleanup, remove, resolve or minimize the impact of, or otherwise deal with, any such Hazardous Substance or Environmental Complaint following receipt of any notice from any person or entity (including without limitation the EPA) asserting the existence of any Hazardous Substance or any Environmental Complaint pertaining to the Mortgaged Property or any part thereof which, if true, could result in an order, suit or other action against Mortgagor and/or which, in the absolute and sole opinion of Mortgagee, could jeopardize Mortgagee's security under this Second Mortgage. All reasonable costs and expenses incurred by Mortgagee in the exercise of any such rights shall be secured by this Second Mortgage and shall be payable by Mortgagor within thirty (30) days of a written demand by Mortgagee which demand shall contain documentation reasonably reflecting the expenditure of such payments, costs and expenses by Mortgagee.

(f) Mortgagee shall have the right, in its reasonable discretion, to require Mortgagor to periodically (but not more frequently than annually unless an Environmental Complaint is then outstanding or following the occurrence of an Event of Default under this Second Mortgage or to comply with any regulatory requirement) perform (at Mortgagor's expense) an environmental audit and, if deemed necessary by Mortgagee, an environmental risk assessment, each of which must be reasonably satisfactory to Mortgagee, of the Mortgaged Property, of hazardous waste management practices and/or hazardous waste disposal sites used in connection with operations conducted at the Mortgaged Property. Said audit and/or risk assessment must be performed by an environmental consultant reasonably satisfactory to Mortgagee. Should Mortgagor fail to perform said environmental audit and/or risk assessment within sixty (60) days of Mortgagee's written request, Mortgagee shall have the right but not the obligation to retain an environmental consultant to perform said environmental audit and/or risk assessment. All costs and expenses incurred by Mortgagee in the exercise of such rights shall be secured by this Second Mortgage and shall be payable by Mortgagor within thirty (30) days of a written demand by Mortgagor (which demand shall contain documentation reasonably reflecting the expenditure of such payments, costs and expenses by Mortgagee) or charged to Mortgagor's loan balance at the discretion of Mortgagee.

(g) Any breach of any warranty, representation or agreement contained in this Section 5 shall be an Event of Default under this Second Mortgage and shall entitle Mortgagee to exercise any and all remedies provided in this Second Mortgage or otherwise permitted by law. The provisions of this Section 5 shall survive satisfaction, release or foreclosure of this Second Mortgage and shall inure to the benefit of any transferee of title to the Mortgaged Property through foreclosure of the Second Mortgage or any Second Loan Document or through deed in lieu thereof (but only to the extent such transferee is Mortgagee, its successor, an assignee of the

Second Note, a participant of any of the foregoing or an affiliate or entity related to any of the foregoing).

Section 6. Commercial Code and Financing Statement. This Second Mortgage constitutes a security agreement, and creates a security interest, subject to the first-position lien and security interest of Original Mortgage, as to all or any part of the Mortgaged Property which is of a nature that a security interest therein can be created and perfected under the Uniform Commercial Code from time to time in effect in the State of Florida, and all replacements and additions thereto and substitutions and proceeds thereof. Mortgagee shall have all remedies of a secured party under the Uniform Commercial Code with respect to any property subject to the security interest created pursuant to this Section. This Second Mortgage also constitutes a financing statement with respect to any and all property included in the Mortgaged Property which is or may become fixtures. Mortgagor hereby authorizes Mortgagee to file carbon, photographic or other reproduction of a financing statement, and any such filing shall constitute a sufficient financing statement under the Uniform Commercial Code. Mortgagor specifically authorizes Mortgagee to file any financing statement contemplated by this Second Mortgage without Mortgagor's signature, including any financing statement to be filed in the filing office of the Secretary of State of the State of Florida or any other applicable jurisdiction.

Section 7. Maintenance and Use of Mortgaged Property. The Mortgagor at its expense, shall keep the Mortgaged Property in good order and in a clean and safe condition (ordinary wear and tear excepted) and shall make all necessary or appropriate repairs, replacements, restorations and renewals thereof, interior, exterior, structural and non structural, ordinary and extraordinary, foreseen and unforeseen. The Mortgagor will not do, or permit to be done, any act or thing which might impair the value or usefulness of the Mortgaged Property or any part thereof, will not commit or permit any waste of the Mortgaged Property or any part thereof, and will not permit any unlawful occupation, business or trade to be conducted on the Mortgaged Property or any part thereof. The Mortgagor shall also, at its expense, promptly comply with all rights of way, privileges, franchises, servitudes, licenses, easements, tenements, hereditaments, restrictions of record and appurtenances being a part of, or burdening, the Mortgaged Property. Mortgagor shall not amend, modify or otherwise change, or seek to amend, modify or otherwise change, the current zoning and/or land use designation of the Mortgaged Property without the prior written consent of Mortgagee (such consent not to be unreasonably withheld, conditioned or delayed).

Section 8. Compliance with Legal and Insurance Requirements. The Mortgagor, at its expense, shall promptly comply with all Legal Requirements and Insurance Requirements, and shall procure, maintain and comply with all permits, licenses and other authorizations required for the construction, installation, operation, maintenance and use of the Mortgaged Property. As used in this Section, "Legal Requirements" means all laws, statutes, codes, acts, ordinances, resolutions, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorizations, directions and requirements of all governmental entities, departments, commissions, boards, courts, authorities, agencies, officials and officers, foreseen and unforeseen, ordinary or extraordinary, which now or at any time hereafter may be applicable to the Mortgaged Property or any part thereof, or any use or condition of the Mortgaged Property or any part thereof, and "Insurance Requirements" means all provisions of any insurance policy covering or applicable to the Mortgaged Property or any part thereof, all requirements of the

issuer of any such policy, and all orders, rules, regulations and other requirements of the National Board of Fire Underwriters (or any other body exercising similar functions) applicable to or affecting the Mortgaged Property or any part thereof, or any use or condition thereof. The Mortgagor may, at its expense and after prior written notice to the Mortgagee, contest in good faith by appropriate legal proceedings any Legal Requirement and postpone compliance therewith pending the resolution or settlement of such contest provided that (i) such postponement does not, in the reasonable opinion of the Mortgagee, adversely affect the condition, or value of, or the lien of this Second Mortgage as to, any part of the Mortgaged Property, and (ii) if requested by Mortgagee, the Mortgagor shall deposit in escrow with the Mortgagee pending such contest moneys sufficient in amount to cover the cost of compliance with Legal Requirement so contested.

Section 9. Alterations, Additions and Demolition. The Mortgagor may, at its expense, make from time to time any additions, modifications or improvements to the Mortgaged Property provided that such additions, modifications or improvements (i) are related to the normal operation of a school, and (ii) do not (x) involve an expenditure in excess of $50,000 and (y) adversely affect the structural integrity or strength of any improvements constituting a part of the Mortgaged Property or materially interfere with the use and operation thereof (each a "**Permitted Improvement**"). All additions, modifications and/or improvements, which do not constitute a Permitted Improvement, shall only be made with the prior written consent of the Mortgagee (which shall not be unreasonably conditioned, delayed or denied). If so requested, Mortgagor shall submit to the Mortgagee the opinion of a licensed engineer satisfactory to Mortgagee. All additions, modifications and improvements so made by the Mortgagor shall become or be deemed to constitute a part of the Mortgaged Property. Notwithstanding the foregoing, any building or improvement currently located on the Mortgaged Property or any part thereof may be removed or demolished without the prior written consent of the Mortgagee.

Section 10. Substitutions and Removals. If any item of personal property constituting a part of the Mortgaged Property becomes inadequate, obsolete, worn-out, unsuitable, undesirable or unnecessary or should be replaced, the Mortgagor may remove such item provided that the Mortgagor shall either:

(a) prior to or simultaneously with such removal, substitute and install as part of the Mortgaged Property property having equal or greater value (but not necessarily the same function) in the operation of the Mortgaged Property, which such substituted property shall be free from all liens and encumbrances (other than Permitted Prior Encumbrances) and shall become part of the Mortgaged Property; or

(b) In the case of removal of property without substitution, promptly pay to the Mortgagee an amount equal to (i) the proceeds of such sale or the scrap value thereof, if the removed property is sold or scrapped, or (ii) if the removed property is used as a trade in for property not to be installed as part of the Mortgaged Property, the trade in credit received by the Mortgagor, or (iii) in the case of the retention of such removed property by the Mortgagor for other purposes, the fair market value of such property, as determined by a licensed engineer satisfactory to Mortgagee.

The Mortgagor shall promptly report to the Mortgagee each such removal, sale or other disposition and shall pay to the Mortgagee such amounts as are required by the provisions of the preceding subsection (b) of this Section promptly after the sale, trade in or other disposition requiring such payment; provided that no such report and payment need be made until the amount to be paid to the Mortgagee on account of all such sales, trade ins or other dispositions not previously reported aggregates at least $5,000 in any consecutive twelve month period. The Mortgagee shall apply such moneys to the payment of principal installments on the Second Note as provided therein.

Section 11. Payment of Taxes and Other Governmental Charges. The Mortgagor shall pay promptly when due all taxes, assessments (whether general or special), and other governmental charges of any kind whatsoever, foreseen or unforeseen, ordinary or extraordinary, that now or may at any time hereafter be imposed, assessed or levied against or with respect to the Mortgaged Property or any part thereof (including, without limitation, any taxes levied upon or with respect to the revenues, income or profits of the Mortgagor from the Mortgaged Property) or upon the Mortgagee's interest therein (without regard to any law heretofore or hereafter enacted imposing payment of the whole or any part thereof upon the Mortgagee); provided, however, that as to real estate taxes, payment shall be made by Mortgagor not later than March 31 immediately following the date said taxes are due. Within five (5) Business Days (as defined herein) of the written request of Mortgagee and after receipt of evidence of payment of real estate taxes or assessments relating to the Mortgaged Property, Mortgagor shall deliver to Mortgagee evidence of such payment in form and substance satisfactory to Mortgagee. If at any time any agency of the State of Florida shall determine that the documentary stamps affixed to the Note or the intangible personal property taxes affixed to the Second Mortgage are insufficient or if no documentary stamps or intangible personal property taxes have been affixed and that such stamps or taxes should thereafter be affixed, the Mortgagor shall pay one-half of the same, together with one-half of any interest or penalties imposed in connection with such determination and the amount of one-half the money needed to pay for such stamps and taxes and penalties shall, until such stamps and taxes are purchased and affixed, be a portion of the indebtedness secured hereby and bear interest from the date of such determination at the rate set forth in the Note applicable to a period when default exists thereunder.

The Mortgagor may, at its expense and after prior notice to the Mortgagee, by appropriate proceedings diligently prosecuted, contest in good faith the validity or amount of any such taxes, assessments and other charges and, during the period of such contest, permit the items so contested to remain unpaid. However, if at any time the Mortgagee shall notify the Mortgagor that, in its reasonable opinion, by nonpayment of any such items the lien of the Mortgage as to any part of the Mortgaged Property will be adversely affected, or the nonpayment of any such items will result in the creation of a lien upon the Mortgaged Property, the Mortgagor shall promptly pay such taxes, assessments or charges. During the period when the taxes, assessments or other charges so contested remain unpaid, the Mortgagor shall deposit in escrow with the Mortgagee moneys equal in amount to the amount of such contested taxes, assessments or charges.

Section 12. Required Insurance Coverage.

(a) The Mortgagor shall keep any buildings, structures, additions, facilities, fixtures or other improvements included in the Mortgaged Property (collectively, the "Insurable Improvements"), continuously insured for the benefit of the Mortgagee against loss or damage by fire and other hazards included in a standard fire insurance policy with an extended coverage endorsement, including theft, vandalism, malicious mischief, collapse and debris removal coverage and such other coverage(s) as Mortgagee may reasonably require, duly endorsed to show the interest of the Mortgagee under a standard non contributing mortgagee clause, in an amount equal to the replacement value of the Insurable Improvements without regard to depreciation. If any of the Insurable Improvements are located within a hazardous flood area as designated by any governmental authority, Mortgagor shall obtain and continuously maintain flood insurance coverage to the maximum amount available under the National Flood Insurance Program with appropriate endorsements thereto providing for Mortgagee's interest in the same manner as the standard fire insurance.

(b) The Mortgagor shall obtain and continuously maintain single limit comprehensive general accident and public liability insurance in minimum amounts of $1,000,000 per occurrence and $2,000,000 in the aggregate, and naming the Mortgagee as an additional insured.

(c) All insurance required to be obtained and maintained pursuant to this Second Mortgage shall be obtained from generally recognized, responsible insurance companies qualified or licensed to transact such business in the State of Florida with an AM Best Rating of A-/VIII or better or with the same insurance companies as insured the Insurable Improvements as of the date of this Second Mortgage or otherwise satisfactory to the Mortgagee. Each policy of insurance shall not be subject to cancellation or substantial modification without at least thirty (30) days prior written notice to the Mortgagee. The loss deductible provision for any such insurance shall not exceed $10,000 (except with respect to any windstorm policy, for which the loss deductible shall not exceed 5%).

(d) Mortgagor shall deposit with the Mortgagee all such policies of insurance or, at the option of the Mortgagee, binders, certificates or other evidence satisfactory to the Mortgagee that (i) the insurance required hereby has been obtained and is in full force and effect, and (ii) all premiums thereon have been paid in full. Prior to the expiration of any such insurance, the Mortgagor shall furnish the Mortgagee with evidence satisfactory to the Mortgagee that such insurance has been renewed or replaced and that all premiums thereon have been paid in full, and all insurance policies required hereby are in full force and effect.

(e) Subject to the right of Original Lender under the Original Note and the Original Mortgage, and Subject to Section 17 hereof, Mortgagor hereby assigns to the Mortgagee all of the Mortgagor's right, title and interest in and to all such policies of insurance and in and to any insurance proceeds resulting therefrom to the full extent of the indebtedness secured hereby, authorizes the Mortgagee to collect, adjust and compromise any claims under any such insurance policies, and further authorizes and directs the insurer to pay any and all such proceeds directly to the Mortgagee. The Mortgagee may, at its option, collect, adjust and compromise any claims under any such insurance policies. In the event of a foreclosure of this Second Mortgage, the purchaser of the Mortgaged Property shall succeed to all the rights of the Mortgagor (including any right to unearned premiums) in and to all policies of insurance assigned to the Mortgagee pursuant hereto.

(f) Mortgagor shall maintain or cause to be maintained in connection with the Mortgaged Property any workers' compensation coverage required by the laws of the State of Florida. If the Mortgaged Property is used for (1) manufacturing purposes, or (2) any purpose involving the use of machinery, mobile or production equipment, tank storage, or the production of any gases, chemicals, or any use other than general office, apartment living or storage purposes only, Mortgagor shall also maintain liability insurance coverage to insure against any liability risks not covered by workers' compensation coverage.

Section 13. Taxes and Insurance Premiums. In order to more fully protect the security of this Second Mortgage, if the Mortgagee shall so elect at any time after the occurrence of an Event of Default, Mortgagor shall pay to Mortgagee, together with and in addition to each payment of principal and interest required by the Note, one twelfth (1/12th) of the amount (as estimated by the Mortgagee) of the annual taxes and annual insurance premiums next becoming due and payable with respect to the Mortgaged Property and the policies of insurance referred to in this Second Mortgage, and Mortgagor shall also pay to the Mortgagee within thirty (30) days of a written demand therefor the amount by which the actual taxes and insurance premiums exceed payments actually made pursuant hereto. Any unpaid balance of advances by Mortgagee for taxes and/or insurance premiums shall bear interest at the Default Rate (as hereinafter defined) and, together with such interest, shall be secured by this Second Mortgage. The Mortgagee shall not be considered to be a fiduciary with respect to any amounts paid to or received by it pursuant to the terms of this Section and shall not be liable for the payment of interest on all or any part of such funds.

Section 14. Disposition of Mortgaged Property; Liens and Encumbrances. Mortgagor shall not sell, convey, assign, transfer (other than Permitted Transfers), or dispose of all or any part of the Mortgaged Property, or any interest therein, in each case without the prior written consent of the Mortgagee, which shall not be unreasonably conditioned, delayed or denied. Mortgagor shall not directly or indirectly create or permit to remain, and will promptly discharge, any mortgage, lien, encumbrance or charge on, pledge of, security interest in or conditional sale or other title retention agreement with respect to all or any part of the Mortgaged Property, or any interest therein, or any revenues, income or profit or other sums arising from the Mortgaged Property or any part thereof (including, without limitation, any lien, encumbrance or charge as a result of operation of law) other than: (i) the first-position lien and security interest of Original Mortgage, (ii) the lien and security interest of this Second Mortgage; (iii) liens for taxes, assessments and other governmental charges which are not at the time required to be paid pursuant to Section 11 hereof; (iv) liens of mechanics', materialmen, suppliers or vendors or rights thereto to the extent permitted by Section 15 hereof; and (v) the Permitted Prior Encumbrances specified in Section 1 hereof, if any. "Permitted Transfers" means (a) gifts and other transfers for estate planning purposes of any direct or indirect interests in Mortgagor, to a spouse, parent, sibling or any lineal descendant of such individual or to a trust for the benefit of any one or more of such spouse, parent, sibling or lineal descendants (collectively, "Sponsor Transferees") so long as there is no change as to management of Mortgagor.

Section 15. Construction and Other Liens. The Mortgagor shall not permit any construction, mechanics' or other liens to be filed or to exist against the Mortgaged Property or any part thereof, and the Mortgagor shall, within thirty (30) days after notice of the filing of any

such lien, cause the same to be discharged of record by payment, deposit, bond, order of a Court of competent jurisdiction or otherwise.

Section 16. No Claims Against Mortgagee. Nothing contained in this Second Mortgage shall be construed as a request by the Mortgagee, expressed or implied, for the performance of any labor or services or the furnishing of any materials or other property with respect to the Mortgaged Property or any part thereof, or be construed to give the Mortgagee any right, power or authority to contract for or permit the performance of any labor or services or the furnishing of any materials or other property with respect to the Mortgaged Property or any part thereof, or be construed to give the Mortgagor any right, power or authority to contract for or permit the performance of any labor or services or the furnishing of any material or other property on behalf of Mortgagee, or in such manner as to provide the basis for any claim either against the Mortgagee or that any lien based on the performance of such labor or services or the furnishing of any such material or other property is prior to the lien of this Second Mortgage.

Section 17. Damage, Destruction, Eminent Domain.

(a) Mortgagor shall promptly notify Mortgagee in writing of any damage to or destruction of any part of the Mortgaged Property, including a description of the nature, extent and date of the damage, the estimated cost of repair, and estimated net proceeds of insurance. Mortgagor shall promptly notify Mortgagee in writing of any proposed, threatened or actual taking or injury to any part of the Mortgaged Property pursuant to use of the power of eminent domain, including a description of the nature, extent and date of the taking or proposed taking and the estimated net proceeds of the condemnation award, or price for conveyance under threat of condemnation.

(b) Mortgagor hereby assigns to Mortgagee all of Mortgagor's right, title and interest in and to any and all such proceeds of insurance and/or eminent domain awards (including any amount paid for a conveyance under threat of condemnation), and all such proceeds shall be paid to Mortgagee for application to the Mortgagee's costs of collection, any amounts then due pursuant to the Second Note or this Second Mortgage, and then to the prepayment without premium of principal; provided, however, that, subject to paragraph (c) below, and so long as no Event of Default, has occurred, the Mortgagee shall permit all or any part of such insurance proceeds to be used for the purpose of repairing, replacing, restoring and rebuilding the Mortgaged Property as nearly as practicable to the value, condition and character thereof immediately prior to such damage or destruction, with such changes or alterations, however, as the Mortgagor may deem necessary for proper use or operation of the Mortgaged Property and as may be approved by the Mortgagee, in accordance with Section 17(e) hereof.

(c) All prepayments of principal pursuant to paragraph (b) of this Section shall be made without premium or penalty in the inverse order of the maturity thereof.

(d) Mortgagor shall, regardless of the adequacy or availability of insurance proceeds, if any, promptly commence and complete the restoration, repair, replacement and rebuilding of the Mortgaged Property as nearly as practicable to the value, condition and character thereof immediately prior to such damage or destruction. Mortgagor shall, regardless of the adequacy or availability of proceeds of condemnation therefor, if any, promptly commence and complete the

restoration, repair, replacement and rebuilding of the Mortgaged Property as nearly as practicable to the value, condition and character thereof immediately prior to such taking. Subject to the satisfaction of the conditions set forth in paragraph (b) of this Section, Mortgagee shall make any insurance proceeds available for any such repair or restoration, and shall disburse such funds as work progresses in accordance with and subject to Mortgagee's then normal and customary construction loan disbursement practices and procedures, provided that Mortgagee may require Mortgagor either to deposit with Mortgagee, for disbursement prior to the disbursement of any such insurance proceeds, the amount in addition to such available net proceeds of insurance that will be required (in Mortgagee's judgment) to complete such repair or restoration, or to provide Mortgagee with evidence satisfactory to Mortgagee that such additional funds are available for such purposes.

Section 18. Leases. The Mortgagor shall not enter into any lease of all or any part of the Mortgaged Property ("Lease") except with the prior written consent of the Mortgagee, which consent may be withheld at the sole and absolute discretion of the Mortgagee, and pursuant to lease terms in form and substance satisfactory to the Mortgagee. Unless otherwise provided by written instrument signed by the Mortgagee, any and all Leases shall be subordinated to this Second Mortgage. This Second Mortgage constitutes an absolute and present assignment of all rentals, income and other revenues payable under or derived from any and all Leases, subject only to the conditional license granted by the Mortgagee to the Mortgagor to collect such rentals, income and revenues during such times as no Event of Default shall have occurred hereunder.

The Mortgagor will perform, fulfill, comply with and observe each and every covenant, agreement and condition to be performed, fulfilled, complied with and observed by the Mortgagor as lessor under the Leases, and will not suffer or permit any default of the Mortgagor as lessor thereunder to occur (except defaults which are duly cured within the time provided in the Leases for the curing thereof).

Section 19. Inspection. Mortgagee, its agents and employees shall have the right to enter upon and inspect the Mortgaged Property at any and all reasonable times for the protection of its interest in the Mortgaged Property and for such other purposes as may in Mortgagee's reasonable discretion be necessary or desirable in connection with the exercise of its rights hereunder or any other Loan Document.

Section 20. Reserved.

Section 21. Indemnification. The Mortgagor hereby protects, indemnifies and saves harmless the Mortgagee, its officers, directors, agents and employees, from and against any and all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation, reasonable attorneys' fees and expenses whether or not litigation has been commenced and in all trial, bankruptcy and appellate proceedings) imposed upon, incurred by or asserted against the Mortgagee or any of such persons by reason of (a) ownership of any interest in the Mortgaged Property or any part thereof, (b) any action or proceeding instituted pursuant to Chapter 697.10 Florida Statutes, (c) any accident, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property or any part thereof or the adjoining sidewalks, curbs, vaults and vault space, if any, streets or ways, (d) any use, disuse or condition of the Mortgaged Property or any part thereof, or the adjoining

sidewalks, curbs, vaults and vault space, if any, or any streets or ways, (e) any failure on the part of the Mortgagor to perform or comply with any of the terms hereof or any other Second Loan Document, or any inaccuracy in any representation or warranty made by Mortgagor herein or in any other Second Loan Document, (f) any defense of the right, title or interest conveyed by this Second Mortgage, (g) the performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof, (h) any subsidence or erosion of any part of the surface of the Mortgaged Premises, including any shoreline or any bank of any river, stream, creek, canal, lake, ocean or other water source, or (i) the location or existence of asbestos or any toxic or hazardous waste, chemicals, materials or substance on, at, in or under the Mortgaged Property or any part thereof. If any action, suit or proceeding is brought against the Mortgagee, or any of its officers, directors, agents or employees, for any such reason, the Mortgagor, upon the request of such party, will at the Mortgagor's expense, cause such action, suit or proceeding to be resisted and defended by counsel satisfactory to the Mortgagee or such person. Any amounts payable to an indemnified party under this Section which are not paid within thirty (30) days after written demand therefor shall bear interest at the Default Rate from the date which is thirty (30) days of such demand, and such amounts, together with such interest, shall be indebtedness secured by this Second Mortgage. The obligations of the Mortgagor under this Section shall survive any defeasance of the Mortgage.

Section 22. Events of Default. Any one or more of the following events shall be an "Event of Default" under this Second Mortgage:

(a) Failure by the Mortgagor to pay to Mortgagee any principal or interest under the Second Note or any other indebtedness secured hereby as and when the same becomes due and payable, or the entire indebtedness secured hereby upon the maturity of the Second Note;

(b) Failure by the Mortgagor to observe or perform any other term, covenant or agreement contained herein, in the Second Note or in any other Second Loan Document after any applicable notice and grace periods;

(c) The Mortgagor shall: (i) become insolvent or generally not pay, or be unable to pay, or admit in writing its inability to pay its debts generally as they become due; (ii) commence a proceeding under any Federal or state bankruptcy, insolvency, reorganization or other similar code or law, or have such a proceeding commenced against it and either have an order of insolvency or reorganization entered against it or have the proceeding remain undismissed for sixty (60) days; (iii) make an assignment for the benefit of its creditors; (iv) have a receiver or trustee or custodian appointed for it or for the whole or any substantial part of its property or for all or any part of the Mortgaged Property; or (v) adopt a plan of liquidation of its assets;

(d) If the Mortgagor shall cease to exist or to be qualified to do or transact business in the State of Florida or be dissolved or shall be a party to a merger or consolidation, shall issue stock of any type or series (if a corporation), or shall sell all or substantially all of its assets, or if any individual being Mortgagor should die, become incapacitated or adjudged incompetent;

(e) Excluding any Permitted Transfers, if Mortgagor is a corporation, any shares of stock of Mortgagor are issued, sold, transferred, conveyed, assigned, mortgaged, pledged, or otherwise disposed of, whether voluntarily or by operation of law, and whether with or without

consideration, or any agreement for any of the foregoing is entered into; or, if Mortgagor is a partnership, any general or limited partnership interest or other equity interest in such partnership is sold, transferred, assigned, conveyed, mortgaged, pledged or otherwise disposed of, whether voluntarily or by operation of law, and whether with or without consideration, or an agreement for any of the foregoing is entered into, or, if Mortgagor is a limited liability company, any membership or other equity interest in such limited liability company is sold, transferred, assigned, or conveyed or otherwise disposed of, whether voluntary or by operation of law, and whether with or without consideration;

(f) An action for foreclosure or marshalling of liens is commenced against all or any part of the Mortgaged Property; or

(g) A default occurs under Original Note and/or the Original Mortgage and the same is not cured within any applicable grace period.

Section 23. Mortgagee's Right to Cure. If the Mortgagor shall fail to make any payment or perform any act required to be made or performed under this Second Mortgage or any other Second Loan Document, the Mortgagee, without demand upon the Mortgagor and without waiving or releasing any obligation or default, may (but shall be under no obligation to) make such payment or perform such act for the account and at the expense of the Mortgagor and may enter upon the Mortgaged Property or any part thereof for such purpose and take all such action thereon as, in its sole opinion, may be necessary or appropriate therefor, all without prejudice to any other rights or remedies available to Mortgagee. All payments so made by the Mortgagee and all costs, fees and expenses incurred in connection therewith or in connection with the performance by the Mortgagee of any such act, together with interest thereon at the Default Rate from the date of payment or incurrence, shall constitute additional indebtedness secured by this Second Mortgage and shall be paid by the Mortgagor to the Mortgagee within thirty (30) days of a written demand, which demand shall contain documentation reasonably reflecting the expenditure of such payments, costs and expenses by Mortgagee.

Section 24. Remedies.

(a) If an Event of Default shall have occurred, subject to the first-position lien and security interest of Original Mortgage, the Mortgagee may exercise any or all or any combination of the remedies conferred upon or reserved to it under this Second Mortgage or any other Second Loan Document, or now or hereafter existing at law or in equity or by statute or other applicable law. Without limitation, the Mortgagee may (i) declare the entire unpaid principal balance of the indebtedness secured hereby to be immediately due and payable, without notice or demand, the same being expressly waived by the Mortgagor, and upon such declaration the entire indebtedness secured hereby shall become immediately due and payable and shall thereafter bear interest at the Default Rate (as such term is defined in the Second Note); (ii) proceed at law or equity to collect all indebtedness secured by this Second Mortgage then due hereunder, whether at maturity or by acceleration; (iii) subject to the first-position lien and security interest of Original Mortgage, foreclose the lien of this Second Mortgage as against all or any part of the Mortgaged Property; and (iv) subject to the first-position lien and security interest of Original Mortgage, exercise any rights, powers and remedies it may have as a secured party under the Uniform Commercial Code of the State of Florida, including, without limitation,

the option of proceeding as to both personal property and fixtures in accordance with the Mortgagee's rights with respect to real property. The Default Rate is and shall be the rate of interest which applies to any judgment debt upon the obligations contained in this Second Mortgage.

(b) Notwithstanding any contrary provisions contained in this Second Mortgage or any other Second Loan Document, if Mortgagor shall (i) file for protection with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 United States Code ("USC"), as amended, (ii) be the subject of any order for relief issued under said Title 11 USC, as amended, (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act, code, law or statute relating to bankruptcy, insolvency or other relief for debtors, (iv) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator or liquidator, or (v) be the subject of any other order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against Mortgagor for any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act, code, law or statute relating to bankruptcy, insolvency or relief for debtors, Mortgagee shall thereupon immediately be entitled to relief from any automatic stay (on or against the exercise of any rights and remedies otherwise available to Mortgagee) imposed by Section 362 of Title 11 USC, as amended, to commence or continue any action necessary to foreclose this Second Mortgage and otherwise assert any legal remedies available to Mortgagee pursuant to this Second Mortgage or any other Second Loan Document and as otherwise provided by law or equity. This entitlement shall be irrespective of any of the requirements of said Section 362 of Title 11 USC, as amended, and Mortgagee shall not be obligated to satisfy any such requirements in order to obtain stay relief. Mortgagor further agrees that it will not assert any defenses to or otherwise defend any motion brought by Mortgagee pursuant to this Section 24(b). Mortgagor agrees that this Section 24(b) is a material inducement to Mortgagee agreeing to make the Loan.

Section 25. Waiver of Appraisement, Valuation. The Mortgagor hereby waives, to the full extent that it may lawfully do so, the benefit of all appraisement, valuation, stay and extension laws now or hereafter in force and all rights of marshalling of assets in the event of any sale of the Mortgaged Property, any part thereof or any interest therein, and any court having jurisdiction to foreclose the lien hereof may sell the Mortgaged Property (real or personal, or both) as an entirety or in such parcels, lots, manner or order as the Mortgagee in its sole discretion may elect.

Section 26. Appointment of Receiver. If an Event of Default shall have occurred, the Mortgagee shall be entitled, to the extent permitted by law, as a matter of right and without regard to the value or condition of the Mortgaged Property or the adequacy thereof as security with notice to the Mortgagor, to seek the appointment of a receiver for all or any part of the Mortgaged Property, whether such receivership is incidental to a proposed sale of the Mortgaged Property or otherwise.

Section 27. Possession, Management and Income; Assignment. If an Event of Default shall have occurred, the Mortgagee, to the extent permitted under applicable law, and without notice to the Mortgagor, but subject to the first-position lien and security interest of Original

Mortgage, may enter upon and take possession of the Mortgaged Property or any part thereof by summary proceedings, ejectment or otherwise, and may remove Mortgagor and all other persons and any and all property therefrom and may hold, operate and manage the same and receive all revenues, income or profits accruing with respect thereto or any part thereof. The Mortgagee shall have no liability for or by reason of any such taking of possession, entry, removal or holding, operation or management, or for the failure to do so, except for grossly negligent or intentional misconduct.

Section 28. Remedies Cumulative. Each right, power and remedy of the Mortgagee provided for in this Second Mortgage, in the Second Note, in any other Second Loan Document or now or hereafter existing at law or in equity or by statute or otherwise, shall be cumulative and concurrent and shall be in addition to every other such right, power or remedy, and the exercise or beginning of the exercise or partial exercise by the Mortgagee of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise by the Mortgagee of any or all such other rights, powers or remedies.

Section 29. Provisions Subject to Applicable Law. All rights, powers and remedies provided herein may be exercised only to the extent that the exercise thereof does not violate any applicable law, and are intended to be limited to the extent necessary so that they will not render this Second Mortgage invalid, unenforceable or not entitled to be recorded, registered or filed under any applicable law.

Section 30. No Waiver by Mortgagee. No failure by the Mortgagee to insist upon the strict performance of any term hereof or to exercise any right, power or remedy consequent upon a breach thereof shall constitute a waiver of any such term or of any such breach. No waiver of any breach shall affect or alter this Second Mortgage, which shall continue in full force and effect with respect to any other then existing or subsequent breach.

Section 31. Right to Sue for Installments. Mortgagee shall have the right from time to time to sue for any sums required to be paid pursuant to the terms of this Second Mortgage (whether principal, interest, taxes, insurance premiums, or otherwise) as the same become due, without regard to whether or not the principal or any other sums secured hereby shall then be due and payable, and without prejudice to the right of the Mortgagee to accelerate the indebtedness secured hereby or to commence an action for foreclosure or any other action for a default or defaults by the Mortgagor existing at the time such earlier action was commenced.

Section 32. Additional Security. Without impairment of the lien and rights created by this Second Mortgage, the Mortgagee may accept additional security for the indebtedness secured by this Second Mortgage from the Mortgagor or (without notice to or the consent of the Mortgagor) from any other person or persons. Mortgagee may release or subordinate any part of the security for the indebtedness secured by this Second Mortgage without in any way impairing or affecting the validity or priority of this Second Mortgage as to the Mortgaged Property not specifically released. Mortgagee may resort to the security created by this Second Mortgage or to any such additional security in such manner and order as Mortgagee may elect, in each case without affecting the lien hereof and the rights conferred hereunder.

Section 33. Notices. Any notice, demand or request required or permitted by this Second Mortgage shall be in writing and shall be deemed to have been sufficiently given at the earlier of when personally delivered or at 5:00 P.M. on the second Business Day after deposit in the United States certified or registered mail, postage prepaid, and addressed to the address of the party to whom such notice is directed as such address as is set forth at the beginning of this Second Mortgage, or at such other address as any party may from time to time notify the other by notice in writing as aforesaid. A "Business Day" is any day other than a Saturday, Sunday or any day on which federal savings banks are authorized or required to be closed.

Section 34. Reimbursement of Attorneys' Fees and Expenses. If the Mortgagee becomes a party to any action wherein the Mortgagee must establish or defend the validity or priority of this Second Mortgage, or if the Mortgagee should incur expenses in connection with the collection or enforcement of this Second Mortgage, the Second Note, any other Second Loan Document or any other instrument or document collateral thereto, the Mortgagor shall reimburse the Mortgagee within thirty (30) days of a written demand for any and all such costs or expenses incurred by Mortgagee, including, without limitation, attorneys' fees in all trial, bankruptcy and appellate proceedings, and whether or not litigation has been commenced, together with interest thereon at the Default Rate from the date such costs and expenses are incurred, and all of said amounts, including interest, shall constitute indebtedness secured by this Second Mortgage to the extent permitted by law. Such written demand by Mortgagee shall contain documentation reasonably reflecting the expenditure of such payments, costs and expenses by Mortgagee.

Section 35. Discharge of Mortgage. If the Second Note and all other sums payable under this Second Mortgage and any other Second Loan Document shall have been fully paid and the Mortgagor shall have complied with all the terms, conditions and requirements hereof, and all other Second Loan Documents, then this Second Mortgage shall be null and void and of no further force and effect, except provisions herein or in any other Second Loan Document which expressly survive the satisfaction and release of this Second Mortgage. Thereupon, and upon the written request and at the expense of the Mortgagor, the Mortgagee will execute and deliver such proper instruments of release and discharge as may reasonably be requested to evidence such defeasance, release and discharge.

Section 36. Recordation. The Mortgagor, at its expense, shall cause this Second Mortgage, any instruments supplemental hereto, and financing statements, including all necessary amendments, supplements and appropriate continuation statements, to be recorded, registered and filed, and to be kept recorded, registered and filed, in such manner and in such places as may be required in order to establish, preserve and protect the lien of this Second Mortgage as a valid mortgage lien on all real property and fixtures included in the Mortgaged Property and a valid, security interest in all fixtures included in the Mortgaged Property (including in each such case, without limitation, any such properties acquired after the execution hereof).

Section 37. Further Assurances. Mortgagor will properly execute and deliver, or cause to be executed and delivered from time to time, at the request of Mortgagee, all such further instruments and documents as Mortgagee shall reasonably require to evidence this Mortgage, and to confirm unto the Mortgagee the mortgaging of the Mortgaged Property.

Section 38. Reserved.

Section 39. Amendments, Changes and Modifications. Except as otherwise provided in this Second Mortgage, this Second Mortgage may not be effectively amended, changed, modified, altered or terminated without the prior written consent of the Mortgagee. If the payment of the indebtedness secured by this Second Mortgage, or any part thereof, be extended or varied, or if any part of the security or guaranties therefor be released, then all persons now or at any time hereafter liable therefor, or interested in the Mortgaged Property, shall be held to assent to such extension, variation or release and their liability and the lien of this Second Mortgage and all provisions hereof shall continue in full force and effect. The right of recourse against all such persons is expressly reserved by Mortgagee, notwithstanding any such extension, variation or release. Any person, firm or corporation taking a junior mortgage, or other lien upon the Mortgaged Property or any part thereof or any interest therein, shall take said lien subject to the rights of Mortgagee to amend, modify, extend or release this Second Mortgage, the Loan Documents or any other document or instrument evidencing, securing or guarantying the indebtedness secured by this Second Mortgage, in each and every case without obtaining the consent of the holder of such junior lien and without the lien of this Second Mortgage losing its priority over the rights of any such junior lien. Any acceptance by the Mortgagee of part payment of any installment of principal or interest, or both, or part performance of any covenant, or delay by Mortgagee for any period of time in exercising the option to accelerate any indebtedness evidenced by the Note or secured by this Second Mortgage shall not operate as a waiver of the right to exercise such option to accelerate such indebtedness.

Section 40. Governing Law; Venue. This Second Mortgage shall be deemed to be made under the laws of the State of Florida and for all purposes shall be governed by and construed in accordance with the laws of the State of Florida. Mortgagor hereby irrevocably submits to the non-exclusive jurisdiction of any Florida or Federal court sitting in Alachua County, Florida (or any county in Florida where any portion of the Mortgaged Property is located) over any suit, action or proceeding arising out of or relating to this Agreement.

Section 41. Binding Effect. This Second Mortgage shall inure to the benefit of and be binding upon the Mortgagor, its successors and assigns, and the Mortgagee, its successors and assigns, provided that Mortgagor may not assign (a) any of Mortgagor's rights and benefits under this Second Mortgage; or (b) any of the Mortgaged Property, without the prior written consent of the Mortgagee.

Section 42. Severability. If any term or provision of this Second Mortgage, or the operation thereof, shall be held to be invalid, illegal or unenforceable, the validity of the remaining provisions hereof, and the operation thereof, shall in no way be affected thereby, each of which shall be deemed to be effective to the full extent permitted by law.

Section 43. Captions. The captions or headings herein shall be solely for convenience of reference and in no way define, limit or describe the scope or intent of any provisions or sections of this Second Mortgage.

Section 44. Counterparts. This Second Mortgage may be executed in any number of counterparts, each of which shall be regarded as an original and all of which shall constitute but

one and the same instrument; it shall not be necessary in proving this Second Mortgage to produce or account for more than one such counterpart, or a copy hereof certified by the appropriate recording officer.

Section 45. Joint and Several Liability. If Mortgagor consists of more than one party, each of the undersigned shall be jointly and severally liable for the performance of all of the obligations, covenants and agreements of the Mortgagor contained herein.

Section 46. No Setoffs. Mortgagor acknowledges that the indebtedness secured hereby was incurred in good faith for full value received, and the Mortgagor has no defenses, setoffs or counterclaims thereto.

Section 47. Definitions. Whenever in this instrument the context so admits or requires, the terms "Mortgagor" and "Mortgagee" shall be construed as including their respective heirs, legal representatives, successors and assigns, as the case may be (provided, however, that nothing herein shall be construed to permit the assignment of this Second Mortgage by Mortgagor); and the pronoun as used herein to refer to either Mortgagor or Mortgagee in the third person, singular number and masculine gender, shall be construed as meaning the person, number and gender appropriate to the first designation to the respective parties hereto.

Section 48. Subrogation. Mortgagee is hereby subrogated (a) to the lien(s) of each and every mortgage, lien or other encumbrance on all or any part of the Premises which is fully or partially paid or satisfied out of the proceeds of the Loan, and (b) to the rights of the owner(s) and holder(s) of any such mortgage, lien or other encumbrance. The respective rights under and priorities of all such mortgages, liens or other encumbrances shall be preserved and shall pass to and be held by Mortgagee as security for the Loan, to the same extent as if they had been duly assigned by separate instrument of assignment and notwithstanding that the same may have been cancelled and satisfied of record.

Section 49. Additional Financing. There shall be no additional, secondary, or junior financing on the Mortgaged Property or the direct or beneficial ownership interests in Mortgagor without the consent of Mortgagee, which consent may be withheld at the sole and absolute discretion of the Mortgagee. Notwithstanding anything in this Second Mortgage to the contrary, transfers of direct or indirect interests in the Mortgagor between the direct and indirect members of the Mortgagor shall be permitted.

Section 50. Waiver of Jury Trial. EACH OF THE UNDERSIGNED WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, ANY ASPECT OF THE TRANSACTION IN CONNECTION WITH WHICH THIS DOCUMENT IS BEING GIVEN OR ANY DOCUMENT EXECUTED OR DELIVERED IN CONNECTION WITH SUCH TRANSACTION. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY EACH OF THE UNDERSIGNED AND EACH OF THE UNDERSIGNED ACKNOWLEDGES THAT NO ONE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. EACH OF THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING BEEN REPRESENTED IN CONNECTION WITH THE TRANSACTION WITH RESPECT TO WHICH THIS

DOCUMENT IS BEING GIVEN AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED BY EACH OF THE UNDERSIGNED'S OWN FREE WILL, AND THAT EACH OF THE UNDERSIGNED HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL. EACH OF THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING READ AND UNDERSTOOD THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION.

[***The remainder of this page is intentionally left blank; Signature pages follow***]

IN WITNESS WHEREOF, the Mortgagor and the Mortgagee have executed and delivered this instrument as of the date first above written.

Signed, sealed and delivered in the presence of:

[signature]

Print Name: David Lopez

Address: 2504 NW 106 Way
Gainesville FL 32606

[signature]

Print Name: Tara Tams

Address: 19723 NW CR 236
High Springs FL 32643

**MORTGAGOR**:

NEWBERRY CHRISTIAN COMMUNITY SCHOOL, INC., a Florida not-for-profit corporation

By: [signature]

Print Name: MARTIN D. PICKARD

Title: Chairman, Board of Directors

STATE OF FLORIDA

COUNTY OF ALACHUA

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 3rd day of March, 2026, by ____________________, as ____________ of NEWBERRY CHRISTIAN COMMUNITY SCHOOL, INC., a Florida not for profit corporation, on behalf of such entity, who is personally known to me or produced N/A as identification.

(SEAL)

DEBORAH CASON
Notary Public
State of Florida
Comm# HH343516
Expires 1/15/2027

[signature]
Notary Public – State of Florida

Print Name: Deborah Cason

My Commission Expires: 1/15/2027

Signed, sealed and delivered in the presence of:

MORTGAGEE:

James R. Schrader, husband

Print Name: Tara Evans
Address: 19723 NW CR 236
High Springs FL 32643

**Print Name:** Benjamin Armstrong.
**Address:** 8720 SW 60th St.
Dunnellon, FL 34471

STATE OF FLORIDA

COUNTY OF ALACHUA

The foregoing instrument was acknowledged before me by means of [__] physical presence or [__] online notarization, this 3rd day of March, 2026, by JAMES R. SCHRADER, a resident of the State of Florida, who is personally known to me or produced N/A as identification.

(SEAL)

DEBORAH CASON
Notary Public
State of Florida
Comm# HH343516
Expires 1/15/2027

Notary Public – State of Florida
Print Name: Deborah Cason
My Commission Expires: 1/15/2027

Signed, sealed and delivered in the presence of:

[signature]

Print Name: Tara Iams

Address: 19723 NW CR 236
High Springs FL 32643

[signature]

**Print Name:** Benjamin J. Armstrong

**Address:** 18720 SW 60th St.
Dunnellon FL 34431

**MORTGAGEE**:

[signature]

Rachel E. Schrader, wife

STATE OF FLORIDA

COUNTY OF ALACHUA

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this 3rd day of March, 2026, by RACHEL E. SCHRADER, a resident of the State of Florida, who is personally known to me or produced N/A as identification.

(SEAL)

DEBORAH CASON
Notary Public
State of Florida
Comm# HH343516
Expires 1/15/2027

[signature]

Notary Public – State of Florida

Print Name: Deborah Cason

My Commission Expires: 1/15/2027

## Exhibit "A"

## Legal Description

**TPN: 06041-002-003 (A PORTION OF)**

A PARCEL OF LAND LYING IN SECTION 20, TOWNSHIP 9 SOUTH, RANGE 19 EAST, ALACHUA COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

**COMMENCE** AT THE NORTHWEST CORNER OF SAID SECTION 20 AND RUN SOUTH 00°40'50" EAST, ALONG THE WEST LINE OF SAID SECTION 20, A DISTANCE OF 2402.64 FEET TO A POINT LYING NORTH 00°40'50" WEST, A DISTANCE OF 647.33 FEET FROM THE SOUTHWEST CORNER OF PARCEL 3 AS DESCRIBED IN OFFICIAL RECORDS BOOK 5060, PAGE 2141, PUBLIC RECORDS OF ALACHUA COUNTY, FLORIDA; THENCE DEPARTING SAID WEST LINE OF SAID SECTION 20, RUN SOUTH 88°42'52" EAST, A DISTANCE OF 181.81 FEET; THENCE RUN NORTH 01°17'08" EAST, A DISTANCE OF 15.17 FEET TO THE **POINT OF BEGINNING**; THENCE RUN NORTH 01°17'08" EAST, A DISTANCE OF 95.82 FEET; THENCE RUN NORTH 73°53'50" EAST, A DISTANCE OF 101.79 FEET; THENCE RUN NORTH 16°09'39" WEST, A DISTANCE OF 33.59 FEET; THENCE RUN NORTH 73°50'21" EAST, A DISTANCE OF 47.63 FEET; THENCE RUN NORTH 56°58'52" EAST, A DISTANCE OF 231.63 FEET; THENCE RUN SOUTH 78°02'59" EAST, A DISTANCE OF 131.29 FEET; THENCE RUN SOUTH 11°56'57" WEST, A DISTANCE OF 202.52 FEET; THENCE RUN SOUTH 57°03'23" WEST, A DISTANCE OF 133.54 FEET; THENCE RUN NORTH 78°00'39" WEST, A DISTANCE OF 172.71 FEET; THENCE RUN SOUTH 76°05'02" WEST, A DISTANCE OF 140.18 FEET TO THE **POINT OF BEGINNING.**